BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar USA, Inc.*
*and Martifer Aurora Solar, LLC*

Electronically filed January 28, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br><br>MARTIFER SOLAR AURORA, LLC,<br>a Nevada limited liability company,<br><br><br>Debtor. | Case No.  BK-S-14-10355-abl<br><br>Chapter 11<br><br>**OMNIBUS REPLY TO OBJECTIONS OF CATHAY BANK TO DEBTORS' MOTIONS FOR ORDERS AUTHORIZING (I) USE OF CASH COLLATERAL; (II) DEBTOR-IN-POSSESSION FINANCING; (III) JOINT ADMINISTRATION; AND (IV) RELIEF RE: ADEQUATE PROTECTION FOR UTILITIES**<br><br>Hearing Date:   January 28, 2014<br>Hearing Time:  9:30 a.m. |

Martifer Solar USA, Inc. ("Martifer USA") and Martifer Aurora Solar, LLC ("Aurora", and collectively with Martifer Solar USA, the "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully submit this Omnibus Reply ("Reply") to the objections [Dkt #s 56, 61 and 66 in Case No. 14-10355 and Dkt#s 54, 56, 63, and 67 in Case No. 14-10357] (collectively, the "Objections") filed by Cathay Bank ("Cathay") to Debtors' motions  seeking authorization for (1) use of cash collateral [Dkt #25 in Case No. 14-10355 and Dkt# 24 in Case No. 14-10357] (the "Cash Collateral Motion"); (2) debtor-in-possession financing [Dkt #37 in Case No. 14-10355 and Dkt# 37 in Case No. 14-10357] (the "DIP Motion"); (3) joint administration

1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

of the Chapter 11 Cases [Dkt #10 in Case No. 14-10355 and Dkt# 9 in Case No. 14-10357] (the "Joint Administration Motion"); and (4) certain relief related to adequate protection for utility providers [Dkt# 14 in Case No. 14-10357] (the "Utility Motion", and collectively with the Cash Collateral Motion, the DIP Motion and the Utility Motion, the "Contested First Day Motions").  In further support of the Contest First Day Motions, Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

The Objections come at the heels of a long history of ultimatums and improper actions by Cathay that have long threatened to destroy the going concern value of Debtors' businesses, to the detriment of all creditors and equity holders.  For months prior to the Petition Date, Debtors attempted to negotiate a reasonable work-out of the Cathay debt.  As time went on, Debtors were met with increasingly strident and unreasonable demands by Cathay, which ultimately escalated into unilateral and unauthorized withdrawals of funds from Debtors' accounts maintained with Cathay.  See, e.g., **Exhibit "1"** attached hereto (9/7/2013 email from Cathay counsel to Debtors).  Debtors repeatedly advised Cathay that its actions were jeopardizing Debtors' ability to operate as a going concern, but Debtors' admonitions fell on deaf ears.  Indeed, only days before the Petition Date, Cathay imposed an improper freeze on an account maintained by Martifer USA, imperiling its ability to make payroll and satisfy other crucial expenses.

Cathay's strong-arm tactics have continued post-petition.  Despite Debtors' repeated efforts to engage Cathay in negotiations for the consensual use of cash collateral on eminently reasonable terms, Cathay has refused to provide any response to Debtors' proposed cash collateral stipulation.  Instead, Cathay objected to having the Cash Collateral Motion and the DIP Motion heard at an initial hearing nearly one full week after the Petition Date.  Cathay also filed its Objections to the Contested First Day Motions, which Objections are premised entirely on mischaracterizations of the relief requested and self-serving arguments that are contrary to fact and law.

When considered in concert with Cathay's pre-petition actions, the Objections strongly suggest that what Cathay wants is to force a shutdown of Debtors' operations to the extreme prejudice of the estates.  If this is truly Cathay's desire, then Cathay can file a motion seeking this relief, which will be emphatically opposed by Debtors.  The salient purpose of chapter 11 is to guard against this very type

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

of single-minded effort to realize immediate benefit by one creditor at the expense of all other creditor and equity constituents.  The Court should reject Cathay's attempt to commandeer this proceeding, and instead grant the relief requested in the Contested First Day Motions in order to give Debtors the opportunity to reorganize that chapter 11 was designed to provide.

**REPLY**

**A. Cathay's Objection to the Cash Collateral Motion Finds No Support in the Record or Applicable Law.**

Cathay makes only two arguments in opposition to the Cash Collateral Motion: (1) Debtors' cash on hand as of the Petition Date is not property of the estate, notwithstanding that such cash is not held in a Cathay account, and (2) Cathay is not adequately protected by the Debtors' proposed use of cash collateral to fund operations, notwithstanding that such use would redound principally to the benefit of Cathay.

Cathay's first argument is completely unsupported by the evidentiary record and any legal authority.  Instead, Cathay makes entirely conclusory allegations that it is owed a fiduciary duty by Debtors in connection with the purported diversion of funds to an account at California Bank & Trust ("CB&T").  However, Cathay offers absolutely no evidence to prove that it had any interest in funds deposited or held in the CB&T account.  To the contrary, deposits in a debtor's bank account become property of the estate under section 541(a)(1).  See, e.g., Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, 100 F.3d 53, 55 (7th Cir. 1996); In re Mwangi, 432 B.R. 812, 818 (B.A.P. 9th Cir. 2010); 5 COLLIER ON BANKRUPTCY ¶ 541.08, at p. 541–48 (Alan N. Resnick & Henry J. Sommer, eds., 16th rev. ed. 2013).  Indeed, even property that has been seized by a creditor pre-petition retains its status as property of the debtor's estate upon commencement of a chapter 11 case.  See In United States v. Whiting Pools, Inc., 462 U.S. 198, 209 103 S. Ct. 2309 (1983) (debtor entitled to turnover, pursuant to section 542(a), of property essential to its reorganization that had been seized by the IRS to satisfy a tax lien).  Here, Cathay cannot even allege its holds a properly perfected lien on the funds in the CB&T account because it does not have possession of such funds or a control agreement applicable to such account.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Moreover, Cathay offers absolutely no legal authority to support its contention that Debtors owed any fiduciary duty to Cathay, which Cathay acknowledges is prequisite for relief under Section 1450 of the California Financial Code.  (See Dkt #66 in Case No. 14-10355 and Dkt# 67 in Case No. 14-10357 at p. 3).  Thus, the record before the Court demonstrates that Cathay improperly sought to impose a freeze on the CB&T account without any legal or factual basis for doing so, and to the extreme prejudice of Debtors' ability to maintain operations for the benefit of creditor and equity constituencies.  Cathay's behavior demonstrates how critical it is for Debtors to obtain authorization from this Court for the use of cash collateral.

Cathay's second argument in opposition to the Cash Collateral Motion completely ignores the realities of Debtors' businesses (as evidenced by declarations submitted in support of the Contested First Day Motions), and the proposed terms for the use of cash collateral set forth in the Cash Collateral Motion.  Debtors filed their petitions commencing these Chapter 11 Cases on January 21, 2014. Debtors have active and operating businesses, which require the ability to pay employees, subcontractors, vendors and various other key expenses in order to remain operational and to preserve their going concern value for the benefit of the estates.  (See Declaration of Klaus Bernhart in support of Cash Collateral Motion [Dkt #26 in Case No. 14-10355 and Dkt #25 in Case No. 14-10357] ("Bernhart Declaration"); Supplemental Omnibus Declaration of Klaus Bernhart [Dkt #40 in Case No. 14-10355 and Dkt #40 in Case No. 14-10357] ("Supplemental Omnibus"), ¶¶ 9, 11).  Absent the use of cash collateral and DIP Financing, Debtors do not have a source of funding to satisfy the expenses required for them to remain operational.  (See Bernhart Declaration, ¶¶ 13, 15; Declaration of James Wong [Dkt #38 in Case No. 14-10355 and Dkt #38 in Case No. 14-10357] ("Wong DIP Declaration"), ¶¶ 9-12; Supplemental Omnibus, ¶¶ 9-10)).  If Debtors do not receive interim agreement or authorization to use cash collateral, then Debtors would be forced to shut down operations. (See Supplemental Omnibus, ¶ 18).  Particularly given the key importance of Debtors' ability to finish projects to collect accounts receivable, as well as the high degree to which the Debtors' going concern value is dependent on the human capital invested in Debtors' workforce, the record amply demonstrates that Debtors would suffer immediate and irreparable harm absent the authorization to use cash collateral.  (See, e.g.  Declaration of James Wong in support of Cash Collateral Motion [Dkt #38 in

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Case No. 14-10355 and Dkt #38 in Case No. 14-10357] ("Wong Cash Collateral Declaration"), ¶ 9; Bernhart Declaration, ¶ 14). **[1]**

In its objection to the Cash Collateral Motion, Cathay focuses entirely on (a) a mis-characterization of the Debtors' proposed cash budget, and (b) the Carve-Out proposed by Debtors to cover the entire duration of the Chapter 11 Cases.  Cathay argues that a projected cash burn in the Debtors' budget would "deteriorate [Cathay's] collateral by a net of $1.3 million just through the initial 13-week period." (See Dkt #66 in Case No. 14-10355 and Dkt# 67 in Case No. 14-10357 at p. 4)  This statement is patently false.  The Initial Cash Budget submitted by Debtors in connection with the Cash Collateral Motion is premised on obtaining over $2 million in "new money" financing pursuant to the DIP Motion, which would be completely subordinate to Cathay.  (See § B, infra.).  Moreover, Debtors' Initial Cash Budget provides for over $170,000 in adequate protection payments to Cathay, which offsets the majority of any cash deficit (net of post-petition financing) that is contemplated by the Initial Cash Budget.

Indeed, the only way to reconcile Cathay's interpretation of the Initial Cash Budget would be to presume that (i) Debtors' operations were shut down entirely as of the Petition Date, but (ii) Debtors were nonetheless able to completely realize their operational collections projections thereafter. Common sense and the testimony submitted in support of the Contested Frist Day Motions proves that this simply is not so—in order for Debtors to generate cash proceeds from their accounts receivable (the primary component of Cathay's collateral), Debtors must be able to continue to complete projects with

---

**[1]** Cathay makes conclusory allegations that it has a blanket security interest in Debtors' assets. However, Cathay has the burden of establishing the existence and extent of its interest in any collateral. See In re Premier Golf Properties, LP, 477 B.R. 767, 772 (B.A.P. 9th Cir. 2012). Moreover, section 552 of the Bankruptcy Code limits the extent of Cathay's security interest in post-petition collateral, which is particularly relevant for businesses like Debtors' where the going concern value is dependent not on fixed assets or the sale of inventory but instead on human capital and services.  See, e.g., id.; In re Bering Trader, Inc., 944 F.2d 500, 502 (9th Cir. 1991); In re Northview Corp., 130 B.R. 543, 548 (B.A.P. 9th Cir. 1991); In re Skagit Pacific Corp., 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004); In re Cafeteria Operations, L.P., 299 B.R. 400, 409-10 (Bankr. N.D. Tex. 2003).  Debtors reserve all rights with respect to the value of Cathay's security interest as of the Petition Date.  (See, e.g. Declaration of James Wong in support of Cash Collateral Motion [Dkt #38 in Case No. 14-10355 and Dkt #38 in Case No. 14-10357], ¶ 9; Bernhart Declaration, ¶ 14).

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

the benefit of their valuable human capital.  (See id.)  Thus, Debtors' ability to maintain operations is critical to adequately protecting the interests of Cathay, which in turn requires the use of cash collateral.

Finally, Cathay's histrionics regarding the Carve-Out proposed in the Cash Collateral Motion are belied by Cathay's own behavior.  Debtors have made every effort to reach a consensual agreement with Cathay for the use of cash collateral.  As acknowledged by Cathay, Debtors immediately forwarded a draft cash collateral stipulation on the morning of January 22 (the day after the Petition Date).  As confirmed by the email exchange attached as Exhibit "4" to the Declaration of Michael Fletcher [Dkt #53 in Case No. 14-10355, Dkt #51 in Case No. 14-10357 and Dkt #11 in Case No. 14-01014] (the "Fletcher Declaration"), not only did Debtors' counsel provide immediate responses to the requests made by counsel for Cathay, but Debtors' counsel also repeatedly attempted to initiate discussions with Cathay regarding Debtors' emergency need to use cash collateral.  (See also Exhibit "B" to Axelrod Declaration [Dkt#68 in Case No. 14-10355, Dkt #69 in Case No. 14-10357] (the "Axelrod Declaration"), which are additional emails from the exchange).  Notwithstanding these repeated requests, Cathay has refused to provide any response to the proposed consensual use of cash collateral in over five days since receiving Debtors' draft stipulation.  (See Fletcher Declaration, Ex. 4; see Axelrod Declaration, Ex. B).

Debtors have made every effort to propose a reasonable framework for the use of cash collateral, which will adequately protect Cathay and also serve the best interests of the estates and all of their creditor and equity constituents.  Debtors have been met with nothing but stonewalling from Cathay, which behavior extends well in advance of the Petition Date and is the primary reason for Debtors' need to resort to protection under chapter 11 of the Bankruptcy Code.  Cathay has failed to provide any factual or legal basis to refute the adequacy of protection offered by Debtors for the proposed use of Cathay's cash collateral.  Therefore, the Court should grant the Cash Collateral Motion on an interim basis in order to avoid immediate and irreparable harm to Debtors' estates.

**B.  Cathay's Objection to the DIP Motion Ignores the Proposed DIP Financing Terms.**

Cathay's objection to the DIP Motion is premised entirely on the misguided assertion that the post-petition financing ("DIP Financing") proposed therein would somehow violate a pre-petition subordination agreement between Cathay and the proposed DIP Lender.  (See Dkt#61 in Case No. 14-

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

10355 and Dkt #63 in Case No. 14-10357, at pp. 4-10).  What Cathay ignores is that the terms of the proposed DIP Financing provide for the claims and liens of the DIP Lender to be <u>completely subordinate</u> to the claims and liens of Cathay.  (<u>See</u> DIP Agreement attached to Supplemental Omnibus as Exhibit "1" at §§ 2.10 and 2.11).  Debtors are not proposing for the DIP Financing to prime Cathay's interests in any respects.  (<u>See</u> id. at *passim*.)  To the contrary, Debtors' proposed use of DIP Financing will provide additional adequate protection to Cathay by funding crucial expenses of Debtors' operations, which will in turn enhance the value of Cathay's collateral (consisting primarily of accounts receivable).  (<u>See</u>, <u>e.g.</u>  Wong Cash Collateral Declaration, ¶ 9; Bernhart Declaration, ¶ 14).

Moreover, the DIP Motion does not purport to affect any contractual relations between Cathay and the proposed DIP Lender that may arise by way of any subordination agreement.  The DIP Motion is solely concerned with the terms of the proposed DIP Financing for the benefit of Debtors to be provided by the DIP Lender.  To the extent necessary, the Court could obviate the entire concern raised by Cathay in opposition to the DIP Motion simply by clarifying that any relief granted therein is subject to the subordination agreement between Cathay and the DIP Lender.

Therefore, the Court should grant the DIP Motion on an interim basis to avoid immediate and irreparable harm to Debtors' estates.

**C. Cathay's Limited Objection to the Joint Administration Motion and the Utility Motion is not Germane to the Relief Requested Therein.**

Cathay filed a limited objection to the Joint Administration Motion purportedly to reserve rights in connection with a putative motion to transfer venue.  Because Cathay's speculative allegations are not relevant to the relief requested in the Joint Administration Motion, and because venue of the Chapter 11 Cases is properly situated in this Court based upon the fact that Aurora is a Nevada entity, the Court should overrule Cathay's objection to the Joint Administration Motion.  <u>See</u> 28 U.S.C. § 1408.  Similarly, Cathay's limited objection to the Utility Motion is solely addressed to Debtors' use of cash collateral, which is the subject of the Cash Collateral Motion.  Therefore, so long as the Court authorizes Debtors' use of cash collateral pursuant to the Cash Collateral Motion, Cathay's objection to the Utility Motion should be overruled as irrelevant and inapposite.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**CONCLUSION**

WHEREFORE, for the reasons set forth herein and the in the Contested First Day Motions,

Debtors respectfully request that the Court (1) overrule the Objections, (2) grant the Contested First

Day Motions (on an interim basis for the DIP Motion and the Cash Collateral Motion), and (3) grant

such other and further relief as is just and proper.

DATED this 28th day of January, 2014.

**FOX ROTHSCHILD LLP**

By    */s/ Brett A. Axelrod*
      BRETT A. AXELROD, ESQ.
      Nevada Bar No. 5859
      MICAELA RUSTIA MOORE, ESQ.
      Nevada Bar No. 9676
      3800 Howard Hughes Parkway, Suite 500
      Las Vegas, Nevada 89169
      *[Proposed] Counsel for Martifer Solar USA*
      *and Martifer Aurora Solar, LLC*

1

# EXHIBIT 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| From: | Michael Fletcher |
|---|---|
| To: | Michael Fletcher; Avi Muhtar; "jose.n.oliveira@martifer.com" |
| Cc: | "Greg Badura"; "Eileen Lewis" |
| Subject: | RE: Martifer Example of a Cash Flow Projection 1267092_1 |
| Date: | Saturday, September 07, 2013 8:32:47 AM |

Avi: take another look at the example of the cash flow projection that I sent to you. You will see that the Bank is receiving payments, something, **EVERY WEEK**.

From our discussions yesterday, you can see how your cash flow projection, which seems to be bouncing around a lot, is not going to impress the Bank as a serious effort, with most of the payments not being made until the end.

Martifer should be paying the Bank something **EVERY WEEK**. It is the Bank's cash collateral that is being used by Martifer to operate, and that cash flow should be used first to keep the Bank satisfied with the process before the Bank's collateral is used to pay anyone else.

**Michael Fletcher**
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard, 17th Floor
Los Angeles, CA  90048-4920
Phone:          323-852-1000
Facsimile:      323-651-2577
E-mail:         mfletcher@frandzel.com
Web:            www.frandzel.com
 **GO GREEN: Please consider the environment before you print.**

This electronic message contains information which may be confidential and privileged and is intended only for the named addressee.  Unless you are the addressee of this message you may not use, copy or disclose the contents of this message to anyone.  If you have received this message in error, please delete the message and advise the sender by reply e-mail or by calling (323) 852-1000.   Thank you.

To ensure compliance with Internal Revenue Service Circular 230, we inform you that any U.S. Federal Tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.



**From:** Michael Fletcher
**Sent:** Friday, August 30, 2013 9:28 AM
**To:** Avi Muhtar; jose.n.oliveira@martifer.com
**Cc:** Greg Badura; Eileen Lewis
**Subject:** Martifer Example of a Cash Flow Projection 1267092_1

The exemplar cash flow projection from a current case is on page 9. This one is only 8 weeks long for reasons that are not very clear at the moment. These are usually 13-weeks long, but this will give you a sense of what the Bank will looking to receive. Please call with any questions.