BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
          mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar Aurora, LLC
and Martifer Solar USA, Inc.*

Electronically Filed February 4, 2014

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,<br><br>☐ Affects Martifer Aurora Solar, LLC<br>☒ Affects Martifer Solar USA, Inc.<br>☐ Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under<br>Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR AN ORDER: (I) AUTHORIZING DEBTOR TO PAY PREPETITION EMPLOYEE SALARIES AND BENEFITS; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR CHECKS RELATED TO SUCH OBLIGATIONS**<br><br>Hearing Date: OST PENDING<br>Hearing Time: OST PENDING |

Martifer Solar USA, Inc. ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case"), by the within motion hereby moves the Court for an order substantially in the form attached hereto as **Exhibit A** (the "Order"), (I) authorizing, but not directing, Debtor to pay certain prepetition employee salaries and benefits, and (II) authorizing and directing financial

ACTIVE 24656106v1 00/00/0000                              1

institutions to honor checks and transfers related to said obligations pursuant to Bankruptcy Code[1] sections 105(a), 363(b) and 507(a), Bankruptcy Rules 6003 and 6004, and Local Rule 4001(e) (the "Motion").

The Motion is made and based upon the following memorandum of points and authorities, the Omnibus Declaration of Klaus Bernhart [Dkt #15] (the "Omnibus Declaration") filed in support of First Day Motions, the Declaration of Roland Kiser ("Kiser Declaration") filed in support hereof, the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

DATED this 4th day of February 2014.

**FOX ROTHSCHILD LLP**

By: _____/s/Brett A. Axelrod_____
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*[Proposed] Counsel for Martifer Solar Aurora, LLC and Martifer Solar USA, Inc.*

---

[1] All references to "chapter" and "section" herein shall be to the "Bankruptcy Code" appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

ACTIVE 24656106v1 00/00/0000     2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) & (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b) and 507(a), Bankruptcy Rules 6003 and 6004, and Local Rule 4001(e).

## II.

## FACTUAL BACKGROUND

4. On January 21, 2014 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. Debtor is continuing in possession of its property and is operating and managing its business, as debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108. See generally Chapter 11 Case Docket.

6. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed. See id.

7. The factual background relating to Debtor's commencement of this Chapter 11 Case is set forth in detail in the Omnibus Declaration is incorporated for all purposes herein by this reference.

## III.

## RELIEF REQUESTED

**A.  Salaries**

8. Debtor employs approximately 35 full-time employees (the "Employees") in the ordinary course of its business.[2] The majority of Employees are located in Debtor's headquarters in Los

---

[2] Of the 35 employees, two employees' salaries are 100% reimbursed by Debtor's affiliates, and one employee splits her time with Debtor's parent company and Debtor is reimbursed for that time at an hourly rate. One employee is currently on unpaid maternity leave. The employees include Raffi S. Agopian ("Agopian"), Chairman of the Debtor, who is employed pursuant to the "Employment Agreement" dated March 6, 2013, to provide services to Debtor in the form of "customer relationship
(footnote continued)

1  Angeles, California. One Employee each is located in each of the following states: Arizona, Colorado,
2  New Jersey, New York and Tennessee.

3       9.       Among other things, Debtor's Employees: (a) sell, design, and engineer commercial
4  solar panel installations; (b) procure raw materials; (c) provide legal guidance of state and federal
5  regulations impacting specific projects; and (d) oversee the construction and project management of the
6  installations; (e) manage the workmanship warranty of the installed projects; and (f) manage the
7  operations and maintenance of the install projects pursuant to specific contracts. Continued service by
8  the Employees is essential to Debtor's ongoing operations.

9       10.       All Employees are paid a salary and no Employee is paid an hourly wage. The
10  Employees are paid bi-weekly, the Friday following the end of the pay period. Any adjustments are
11  processed in the next pay period. Prior to each payroll date, the Debtor funds payroll[3] to its third-party
12  payroll processer, Automatic Data Processing, Inc. ("ADP"), approximately three business days prior to
13  the actual payroll date for the Employees. All of the Employees are paid through direct deposit.

14       11.       Debtor's first post-petition payroll was scheduled for January 24, 2014, and relates to the
15  period January 6, 2014 through and including January 19, 2014. The amount associated with the
16  payroll was $139,002.38.[4] Debtor's next payroll is scheduled for February 7, 2014 and relates to the
17  period January 20, 2014 through and including February 2, 2014. Approximately $13,900.24 of the
18  next payroll is for compensation relating to the prepetition date of January 20, 2014. Approximately

---

development and support of sales to key customers in coordination with Company executives" ("Agopian Services"). Under the Employment Agreement, Agopian is entitled to annual salary of $175,000 ("Agopian Salary"), together with medical, dental and life insurance benefits ("Agopian Benefits"), as compensation both for the Agopian Services and for his agreement to restrain from competing with Debtor under the "Settlement Agreement and Mutual Release," dated March 6, 2013. As Chairman, Agopian is entitled to attend (solely as an observer and not as a director) all Debtor board meetings; Agopian has no further duties, powers or rights, and is not entitled to any compensation or expense reimbursement, in connection with the office of Chairman. By this motion, Debtor seeks authority to pay Agopian $1,346.15 in Agopian Salary owing prepetition, plus continuance of the Agopian Benefits.

[3] Each payroll includes the Employee Deductions described in Section III.B herein.

[4] The payment of the payroll for January 24, 2014 was made via an advance from the DIP financing for which Debtor will be seeking approval.

ACTIVE 24656106v1 00/00/0000                 4

1  $111,201.90 of the next payroll is for postpetition salaries. Employees are paid for the current period

2  plus any adjustment in their compensation relating to a prior period that was not received.

3      12.    The Debtor estimates that approximately $152,902.62 in total salaries was earned by and

4  owing to Employees that relate to the period prior to the Petition Date (collectively, the "Employee

5  Salary Obligations").[5]

6      13.    As of the Petition Date, no Employee is owed more than $12,475 in Employee Salary

7  Obligations on an individual basis.[6]

8  **B.    Payroll Deductions and Withholdings**

9      14.    In the ordinary course of its business, the Debtor takes deductions from its Employees'

10 paychecks (as applicable) (collectively, the "Employee Deductions") that include: (a) payroll taxes and

11 the Employees' portion of FICA and unemployment taxes (aggregating approximately $111,000 per

12 month); and (b) Employee contributions to health and disability related benefits aggregating

13 approximately $5,200 per month for 35 employees. The Debtor forwards amounts equal to the

14 Employee Deductions from its operating account to the appropriate third-party recipients. To the extent

15 Debtor has withheld amounts pertaining to said taxes, Debtor seeks authorization to continue to deduct

16 these funds and pay them to such governmental entities in the ordinary course of business. Debtor also

17 seeks authorization to continue withholding amounts from Employees' paychecks for state and federal

18 unemployment insurance, and to continue remitting such withholdings to the applicable state and

19 federal taxing authorities.

20 **C.    Employee Benefits**

21     15.    In the ordinary course of its business, and as is customary for most large companies,

22 Debtor has established various employee benefit plans and policies that provide certain Employees with

23 medical, vacation, employee savings, and other similar benefits (collectively, the "Employee Benefits").

---

[5] The Employee Salary Obligations include salaries for the two employees' salaries are 100% reimbursed by Debtor's affiliates, and one employee's salary which is 50% reimbursed by Debtor's parent company. Debtor invoices the affiliates and is paid in cash.

[6] As discussed below, Bankruptcy Code section 507(a)(4) affords priority distribution for up to $12,475 in wages, salaries, and commissions earned by an individual. 11 U.S.C. § 507(a)(4).

ACTIVE 24656106v1 00/00/0000    5

The Employee Benefits and their cost to Debtor (collectively, the "Employee Benefits Contributions") are generally described below.

16.  Health Insurance.  An important element of the Employee Benefits is medical and prescription drug insurance.  Debtor maintains a medical plan for its eligible Employees (the "Health Plan") administered by Anthem Blue Cross (the "Health Plan Administrator").  This Employee Benefit is made available to those Employees that meet the minimum employee eligibility requirements consisting of: (a) working a minimum of 40 hours per work week; and (b) having been employed by Debtor for the previous two months.  The cost of the Health Plan is approximately $120,000 per year and is paid in monthly installments after the first week of each current month.  Pursuant to the Health Plan, Debtor pays the majority of the cost for coverage of each enrolled Employee and any enrolled dependents.  The Employee is responsible for the remainder of the Health Plan cost and that amount is deducted from each enrolled Employee's paycheck.  Debtor's average monthly Health Plan expense is $10,000.

17.  Dental.  The Debtor offers a dental program to its eligible and participating Employees that is also administered by the Health Plan Administrator.  Approximately 25 Employees are covered under the dental program.  As with the medical coverage, all premiums are paid on a cost-sharing basis.  For dental coverage, the division is generally 75% from the Debtor and 25% from the employee, depending on benefit election.  Debtor pays about $377 monthly for the dental program on the first of each month for the same month, with appropriate adjustments in subsequent months, as part of the Debtor's payments for general health care coverage. As of the Petition Date, the Debtor estimates that it owes $377 for dental service fees relating to the period prior to the Petition Date.

18.  Vision.  The Debtor offers a vision program to its eligible and participating Employees that is likewise administered by the Health Plan Administrator.  Employees are covered under the vision program as part of Debtor's health care programs.  As with the medical coverage, all premiums are paid on a cost-sharing basis.  For vision coverage, the division is approximately 75% from the Debtor and 25% from the employee, depending on benefit election.  Debtor pays about $170 monthly for the vision program on the first of each month for the same month, with appropriate adjustments in subsequent months, as part of the Debtor's payments for general health care coverage.  As of the Petition Date, the

1 Debtor estimates that it owes $170 for vision service fees relating to the period prior to the Petition Date.

19. <u>COBRA</u>. The Debtor seeks to continue to perform any obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) ("<u>COBRA</u>") in respect to former Employees. The Health Plan Administrator is also the administrator for COBRA. Currently, three Employees and/or dependents whose Health Plan coverages have ended have elected to enroll in COBRA. The Debtor estimates that the service fee owed to Anthem Blue Cross as of the Petition Date is $1,500 relating to the period prior to the Petition Date. To maintain employee morale and ensure the orderly administration of the estate, the Debtor requests authority to pay in its discretion any such prepetition costs.

20. <u>Employee Life and Other Insurance Benefits</u>. The Debtor has recently begun offering its Employees premium-based long-term disability ("<u>LTD</u>"), short-term disability ("<u>STD</u>"), accidental death and dismemberment ("<u>AD&D</u>") insurance and life insurance coverage through Principal Life Insurance. Coverage is expected to begin February 1, 2014, and Debtor is currently taking applications from its Employees. As of the Petition Date, no Employees have any of these coverages.

**D.    Paid Time Off**

21. In addition to paying, making and/or honoring the Employee Salary Obligations, the Employee Deductions, and the Employee Benefits Contributions, Debtor seeks authority to honor Employees' accrued vacation time, personal time, sick, bereavement and other leave in the ordinary course of business (collectively, "<u>Employee Paid Time Off</u>").

22. The Debtor generally does not allow Employees to "cash-out" any accrued Employee Paid Time Off, including any vacation time, except in the case of termination.

23. All Employees earn up to 120 hours of Employee Paid Time Off, on a pro rata basis per pay period, during their first 12 months of employment. Employees earn 12 additional hours of Employee Paid Time Off for each additional 12 months of employment. Accrual of Employee Paid Time Off is capped at 160 hours per Employee.

24. Unpaid but accrued Employee Paid Time Off as of the Petition Date for current Employees is approximately $110,000. The Debtor seeks authority to honor its Employee Paid Time

Off policies for unpaid but accrued prepetition Employee Paid Time Off up to its particular vacation Employee Paid Time Off cap in the ordinary course of business. In the event an Employee is terminated, the Debtor seeks authorization to pay such Employee Paid Time Off, as and to the extent required by law, but only to the extent of the $12,475 cap on priority wages and compensation as limited by section 507(a)(4) of the Bankruptcy Code.

25. Any Employee Paid Time Off exceeding the cap would be paid in accordance with authorized distributions from the estate.

**E.    Reimbursable Expenses.**

26. In the ordinary course of their employment, certain authorized Employees may have used their own personal credit cards or expended their own personal funds on behalf of and for the benefit of Debtor (the "Employee Reimbursable Business Expenses"). For example, sales Employees travel throughout the country to meet with potential clients and to assess projects and operations Employees frequently visit project sites. Employees rendered services and incurred Employee Reimbursable Business Expenses in anticipation of receiving their standard compensation and reimbursements; however, as of the Petition Date, such obligations may remain unpaid and unreimbursed. Debtor cannot provide a definitive amount of Employee Reimbursable Business Expenses as of the Petition Date, but based upon prior business practices, would estimate that amount does not exceed $10,000. Debtor seeks authorization to pay such Employee Reimbursable Business Expenses in the ordinary course of business.

27. Also, Debtor provides company credit cards with American Express for 21 of its Employees and pays for the business expenses incurred thereon. The Debtor's sales and operations teams are required to travel across the country for the purposes of, among other things, meeting with new clients, inspecting new project sites, conducting general project due diligence, and completing the construction and maintenance of projects. The Debtor's operations are fluid, requiring its workforce to be flexible and agile in its travel schedules. The constant mobility of the Debtor's workforce makes it impractical for the Debtor to burden its employees with the costs of these travels, even if such costs are promised to be reimbursed after the fact. For this reason, Debtor provided its employees company credit cards which the employees use to, among other things, book their travel and accommodations.

Likewise, the Debtor's management has similar need for use of the company cards for client relation and other business purposes.

28. Employees have personally guaranteed the payment of the company credit cards. Company credit card expenses average $36,000 per month. Prepetition, Debtor owed $65,617.94 to American Express. This amount comprises of $33,282.21 for the period of November 29, 2013 through December 28, 2013 ("December 2013 Billing Period"), and $32,335.73 from December 29, 2013 through January 27, 2014 ("Stub Period"). (The standard billing cycle is from the 29th of the end of the prior month to the 28th of the current month.) On January 27, 2014, American Express suspended the credit lines associated with the Company credit cards. As such, additional unprocessed charges by merchants may be added during this Stub Period. Debtor seeks authorization to pay the amount owing to American Express. Debtor also seeks authorization to pay such authorized company credit card expenses in the ordinary course of business. Debtor maintains a payroll account (the "Account") through which it provides various payroll services to its Employees, including services related to the providing of signed checks, direct deposit of Salary Obligations, and the withholdings of various sums from Employee paychecks for taxes, garnishments, and health care deductions, among other things. These payroll services are provided by ADP (the "Payroll Account Servicer"). Debtor seeks an order authorizing and directing financial institutions to honor checks related to the various Employee Salary Obligations and Employee Benefit obligations identified above.

29. Debtor submits that it is essential for the morale and maintenance of trust of the Employees that necessary steps are taken to protect the employment compensation described above (collectively, the "Employee Compensation"), including the Debtor's payment of the Employee Salary Obligations, the Employee Benefits Contributions, and the Employee Reimbursable Business Expenses, and the honoring of the Employee Deductions and the Employee Paid Time Off.

30. By this Motion, Debtor seeks authority to pay and/or honor the Employee Compensation described herein for its Employees. As set forth in the Kiser Declaration, the aggregate of the Employee Compensation to be paid to or for the benefit of the Employees pursuant to this Motion will not exceed $12,475 per Employee per the cap provided in Bankruptcy Code section 507(a)(4).

31. Debtor intends to file a separate motion seeking, among other things, authority to assume employment agreements with key management Employees and to pay other Employee-related expenses not included herein, as well as to assume shared services employment agreements with two of the 35 employees whose salaries are 100% reimbursed by Debtor's affiliates, and one of the 35 employees whose salary is 50% reimbursed by Debtor's parent company (the "<u>Assumption Motion</u>"). The Assumption Motion will be set for hearing on regular notice.

## IV.

## LEGAL ARGUMENT

Payment of the Employee Compensation is essential to preserve Employee morale and to maintain positive relations between Debtor and its Employees. If the relief requested herein is not granted, the success of Debtor's reorganization will be placed in substantial jeopardy. Thus, the relief requested in this Motion is in the best interests of Debtor, the Estate and creditors. Sections 105(a)[7] and 363(b)[8] of the Bankruptcy Code, in conjunction with sections 507(a)(4)[9] and 507(a)(5)[10] of the Bankruptcy Code, enable this Court to authorize Debtor to make payments on prepetition Employee Compensation. Further, section 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." <u>Walls v. Wells Fargo Bank, N.A.</u>, 276 F.3d 502, 506 (9th Cir. 2002).

---

[7] Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

[8] Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).

[9] Section 507(a)(4) of the Bankruptcy Code provides, in pertinent part, a fourth priority claim for "allowed unsecured claims, but only to the extent of $12,475 for each individual . . . earned within 180 days before the date of filing of the petition . . . for - (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; . . ." 11 U.S.C. § 507(a)(4).

[10] Section 507(a)(5) of the Bankruptcy Code provides, in pertinent part, a fifth priority claim for "allowed unsecured claims for contributions to an employee benefit plan - (A) arising from services rendered within 180 days before the date of the filing of the petition . . . but only (B) for each such plan, to the extent of - (i) the number of employees covered by each such plan multiplied by $12,475; less (ii) the aggregate amount paid to such employees [for wages], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan." 11 U.S.C. § 507(a)(5).

The immediate payment of prepetition Employee Salary Obligations is necessary to retain Debtor's skilled Employees; therefore, such payments are critical to maintaining Debtor's ongoing business and its reorganization efforts. As a result, courts have held that pursuant to sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code, prepetition wage claims may be payable outside of a plan of reorganization by virtue of their necessity, as well as their priority. See In re CEI Roofing, Inc., 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004); In re CoServ, LLC, 273 B.R. 487, 494 n. 10 (Bankr. N.D. Tex. 2002); In re The Colad Group, Inc., 324 B.R. 208, 214 (Bankr. W.D.N.Y. 2005); see also In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir. 1987) (acknowledging the "doctrine of necessity," and noting that cases have permitted unequal treatment of prepetition debts when necessary for rehabilitation, including specifically within the context of prepetition wages); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (approving payment of prepetition wages to current employees where it was necessary to pay such claims "in order to preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"); In re Gulf Air, Inc., 112 B.R. 152 (Bankr. W.D. La. 1989) (approving the payment of certain prepetition wages, health insurance premiums, life insurance premiums, and workers' compensation premiums).

Moreover, the payment of the payroll taxes included in the Employee Deductions will not prejudice general unsecured creditors of Debtor's Estate because the relevant tax claims are generally entitled to priority under section 507(a)(8) of the Bankruptcy Code.[11] Moreover, the portion of the payroll taxes withheld from Employees' wages on behalf of the applicable taxing authority is held in

---

[11] Section 507(a)(8) of the Bankruptcy Code provides a priority claim for "allowed unsecured claims of governmental units, only to the extent that such claims are for -(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the filing of the petition —(i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; (ii) assessed within 240 days before the date of the filing of the petition, exclusive of—(I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and (II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days." 11 U.S.C. § 507(a)(8).

trust by Debtor. As such, these payroll taxes are not property of the Estate under section 541 of the Bankruptcy Code. See Beiger v. IRS, 496 U.S. 53 (1990).

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against Debtor; (ii) a waiver of Debtor's or any party in interest's rights to dispute any claim; or (iii) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment authorized pursuant to the Court's order is not intended and should not be construed as an admission to any claim's validity or a waiver of Debtor's rights to dispute such claim subsequently.

## V.
## NOTICE

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to Debtor's operations if Debtor cannot pay its Employees, a fourteen-day stay of the relief sought herein is impractical. Accordingly, Debtor requests that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

Bankruptcy Rule 6003(b) provides "except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding ... a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition. . . ." As described herein and in the Omnibus Declaration, if the outstanding Employee Obligations are not immediately satisfied, Debtor will experience immediate and irreparable harm. To ensure Debtor's chances of successfully reorganizing and maximizing value for its creditors, this Court should find that the exception set forth in Bankruptcy Rule 6003 applies here.[12]

---

[12] To the extent any of the relief requested herein is not granted at an emergency hearing on shortened time, in the alternative, and out of an abundance of caution, Debtor requests that the Court set a final hearing on any remaining matters on the earliest available date that is more than 21 days after the Petition Date pursuant to Bankruptcy Rule 6003.

ACTIVE 24656106v1 00/00/0000       12

Given the emergency nature of the relief requested herein, and the potential disruption to Debtor's business that will ensue if such relief requested is not granted, Debtor submits that no further notice need be given prior to granting the relief sought herein.

No previous motion for the relief sought herein has been made to this or any other court.

## VI.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter an order in the form as attached hereto as **Exhibit A** as follows: (A) authorizing, but not requiring, Debtor, in its sole discretion (i) to pay the Employee Salary Obligations to its Employees and to make the Employee Benefits Contributions to or for the benefit of its Employees with respect to the Employee Benefit Plans; (ii) to pay all costs incident to the Employee Salary Obligations and the Employee Benefits Contributions, such as payroll-related taxes and processing costs; (iii) to make the Employee Deductions and remit the withholdings to the applicable state and federal taxing authorities; (iv) to honor the Employee Paid Time Off; and (v) to reimburse Employees for the Employee Reimbursable Business Expenses, all in accordance with the stated policies with respect thereto; and (B) authorizing and directing all applicable banks and other financial institutions to receive, process, honor and pay any and all checks related to the foregoing, whether presented prior to or after the Petition Date in accordance with the stated policies with regard thereto, provided sufficient funds exist to cover such payments. Debtor also requests such other and further relief as is just and proper.

DATED this 4th day of February 2014.

**FOX ROTHSCHILD LLP**

By: ___*/s/Brett A. Axelrod*___
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*[Proposed] Counsel for Martifer Solar Aurora, LLC and Martifer Solar USA, Inc.*

**EXHIBIT A**
**PROPOSED ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway. Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar Aurora, LLC
and Martifer Solar USA, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,<br><br>☐ Affects Martifer Aurora Solar, LLC<br>☒ Affects Martifer Solar USA, Inc.<br>☐ Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**ORDER GRANTING DEBTOR'S MOTION (I) AUTHORIZING DEBTOR TO PAY PREPETITION EMPLOYEE SALARIES AND BENEFITS; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR CHECKS RELATED TO SUCH OBLIGATIONS**<br><br>Hearing Date: OST PENDING<br>Hearing Time: OST PENDING |

ACTIVE 24656106v1 00/00/0000                1

The Court, having reviewed and considered Debtor's[1] Motion (the "Motion") for an order pursuant to 11 U.S.C. sections 105(a), 363(b) and 507(a), Bankruptcy Rules 6003 and 6004, and Local Rule 4001(e) to pay prepetition Employee Salary Obligations and Employee Benefits Contributions, as more fully set forth in the Motion; and upon consideration of the Bernhart Declaration and the Omnibus Declaration of Klaus Bernhart; and Debtor having appeared by and through its proposed counsel, Fox Rothschild LLP, and all other appearances having been noted on the record, the Court having stated its findings of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Federal Rule of Civil Procedure 52, as made applicable by Bankruptcy Rule 9014, and it appearing that the relief requested is necessary to preserve Debtor's ongoing business operations and to avoid immediate and irreparable harm; and in the best interests of Debtor, the estate and creditors, given the emergency nature of the relief requested; after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED** that the Motion is GRANTED; and

**IT IS FURTHER ORDERED** that

1.  Debtor is authorized, but not required, in its sole discretion: (i) to pay the Employee Salary Obligations to its Employees and to make the Employee Benefits Contributions to or for the benefit of its Employees with respect to the Employee Benefit Plans; (ii) to pay all costs incident to the Employee Salary Obligations and the Employee Benefits Contributions such as payroll-related taxes and processing costs; (iii) to make the Employee Deductions and remit the withholdings to the applicable state and federal taxing authorities; (iv) to honor the Employee Paid Time Off; and (v) to reimburse Employees for the Employee Reimbursable Business Expenses, all in accordance with the stated policies with respect thereto;

2.  Debtor may pay the prepetition amounts owing to American Express and authorized company credit card expenses in the ordinary course of business;

3.  Debtor is excepted from the operation of Bankruptcy Rule 6003(b);

---

[1] All capitalized, undefined terms shall have the meaning ascribed to them in the Motion.

ACTIVE 24656106v1 00/00/0000                2

    4.    Any stay pursuant to Bankruptcy Rule 6004(h) or otherwise is hereby waived, and this Order shall be effective immediately;

    5.    All applicable banks and other financial institutions are authorized and directed to receive, process, honor and pay any and all checks related to the foregoing, whether presented prior to or after the Petition Date in accordance with the stated policies with regard thereto, provided sufficient funds exist to cover such payment;

    6.    The payments authorized by this Order are not exempt from subsequent operation of sections 547, 548, 549 and 550 of the Bankruptcy Code; and

    7.    This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Prepared and Respectfully Submitted by:

**FOX ROTHSCHILD LLP**

By _____
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*[Proposed] Counsel for Martifer Solar Aurora, LLC and Martifer Solar USA, Inc.*

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

BY: _____
    J. Michal Bloom
    Trial Attorney for Acting United States Trustee,
    Tracy Hope Davis

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24656106v1 00/00/0000    3

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

J. MICHAL BLOOM , OFFICE OF
THE UNITED STATES TRUSTEE

  Approved / Disapproved  

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #