1  BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
2  MICAELA RUSTIA MOORE, ESQ.
   Nevada Bar No. 9676
3  **FOX ROTHSCHILD LLP**
4  3800 Howard Hughes Parkway, Suite 500
   Las Vegas, Nevada 89169
5  Telephone: (702) 262-6899
   Facsimile: (702) 597-5503
6  Email: baxelrod@foxrothschild.com
            mmoore@foxrothschild.com
7  *[Proposed] Counsel for Martifer Aurora Solar, LLC
8  and Martifer Solar USA, Inc.*

Electronically filed February 4, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,<br><br>☐ Affects Martifer Aurora Solar, LLC<br>☒ Affects Martifer Solar USA, Inc.<br>☐ Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under<br>Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**DECLARATION OF ROLAND KISER IN SUPPORT OF EMERGENCY MOTION FOR AN ORDER: (I) AUTHORIZING DEBTOR TO PAY PREPETITION EMPLOYEE SALARIES AND BENEFITS; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR CHECKS RELATED TO SUCH OBLIGATIONS**<br><br>Hearing Date:   OST PENDING<br>Hearing Time:   OST PENDING |

ROLAND KISER, being duly sworn, hereby deposes and declares under penalty of perjury:

1. I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so.

2. I am the Chief Executive Office of Martifer Solar USA, Inc. ("Martifer USA" or "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11

ACTIVE 24660138v1 02/04/2014                    1

Case"). I am authorized to submit this declaration in support of Debtor's emergency motion for an order (I) authorizing, but not directing, Debtor to pay certain prepetition employee salaries and benefits, and (II) authorizing and directing financial institutions to honor checks and transfers related to said obligations (the "Motion").[1]

3. In my capacity as Chief Executive Officer of Martifer USA, and in conjunction with the efforts of Martifer USA's other respective officers, executives and senior management, I am involved in a management role on a day-to-day basis over all aspects of Martifer USA's affairs, including business operations, strategic planning, financial reporting, human resources, legal affairs and other management activities, as well as Martifer USA's efforts to address its current financial difficulties.

4. As a consequence, I review and work extensively with the books and records of Martifer USA, including its business plans, financial statements and projections, business analyses and reports, contracts and other legal documents, notes and correspondence and similar items. On a regular basis, I witness, participate in or have had reported to me discussions and negotiations with vendors, other creditors and stakeholders of Martifer USA, and have worked closely with personnel from all aspects of Martifer USA's business operations.

5. Based on all of the foregoing, I have developed an intimate familiarity with: (a) Martifer USA's books and records, which are maintained in the ordinary course of business under my supervision and control (and under the control of officers of Martifer USA's respective executive and senior management); (b) Martifer USA's business and financial history, and its current business and financial situation; (c) the financial and operation details of Martifer USA's business operations; and (d) the solar panel and renewable energy industry, generally.

6. I hold a Bachelor of Arts degree in Economy and Computer Sciences from WISS (Wirtschaftsinformatikschule) in Switzerland, where I graduated in 1991. I obtained my Masters of

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

ACTIVE 24660138v1 02/04/2014                                      2

Business Administration, Management degree from Pace University in 1998. I have over 20 years of senior executive experience in the energy and financing sectors. I served as the Chief Operating Officer of UBS Americas from 1991 to 2001. I subsequently served as the General Manager and Chief Operating Officer of HSH Nordbank where I spearheaded the startup of U.S. operations for €151B German merchant bank and grew the U.S. unit to $1.3 billion in revenue and $550M net profit before taxes. I facilitated the growth of HSH Nordbank's energy business to become a $6 billion leader in renewable energy financing, funding more than 4.5 GW (gigawatts) of wind and solar projects. In 2011, I served as President and CEO of Kenyon Energy, a leading startup solar energy company. On or about late November of 2012, I was brought on as Martifer USA's new Chief Financial Officer.

7. Except as otherwise stated herein, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

8. Debtor employs approximately 35 full-time employees (the "Employees") in the ordinary course of its business.[2] The majority of Employees are located in Debtor's headquarters in Los Angeles, California. One Employee each is located in each of the following states: Arizona, Colorado, New Jersey, New York and Tennessee.

---

[2] Of the 35 employees, two employees' salaries are 100% reimbursed by Debtor's affiliates, and one employee splits her time with Debtor's parent company and Debtor is reimbursed for that time at an hourly rate. One employee is currently on unpaid maternity leave. The employees include Raffi S. Agopian ("Agopian"), Chairman of the Debtor, who is employed pursuant to the "Employment Agreement" dated March 6, 2013, to provide services to Debtor in the form of "customer relationship development and support of sales to key customers in coordination with Company executives" ("Agopian Services"). Under the Employment Agreement, Agopian is entitled to annual salary of $175,000 ("Agopian Salary"), together with medical, dental and life insurance benefits ("Agopian Benefits"), as compensation both for the Agopian Services and for his agreement to restrain from competing with Debtor under the "Settlement Agreement and Mutual Release," dated March 6, 2013. As Chairman, Agopian is entitled to attend (solely as an observer and not as a director) all Debtor board meetings; Agopian has no further duties, powers or rights, and is not entitled to any compensation or expense reimbursement, in connection with the office of Chairman. By this motion, Debtor seeks authority to pay Agopian $1,346.15 in Agopian Salary owing prepetition, plus continuance of the Agopian Benefits.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

9. Among other things, Debtor's Employees: (a) sell, design, and engineer commercial solar panel installations; (b) procure raw materials; (c) provide legal guidance of state and federal regulations impacting specific projects; and (d) oversee the construction and project management of the installations; (e) manage the workmanship warranty of the installed projects; and (f) manage the operations and maintenance of the install projects pursuant to specific contracts. Continued service by the Employees is essential to Debtor's ongoing operations.

10. All Employees are paid a salary and no Employee is paid an hourly wage. The Employees are paid bi-weekly, the Friday following the end of the pay period. Any adjustments are processed in the next pay period. Prior to each payroll date, the Debtor funds payroll[3] to its third-party payroll processer, Automatic Data Processing, Inc. ("ADP"), approximately three business days prior to the actual payroll date for the Employees. All of the Employees are paid through direct deposit.

11. Debtor's first post-petition payroll was scheduled for January 24, 2014, and relates to the period January 6, 2014 through and including January 19, 2014. The amount associated with the payroll was $139,002.38.[4] Debtor's next payroll is scheduled for February 7, 2014 and relates to the period January 20, 2014 through and including February 2, 2014. Approximately $13,900.24 of the next payroll is for compensation relating to the prepetition date of January 20, 2014. Approximately $111,201.90 of the next payroll is for postpetition salaries. Employees are paid for the current period plus any adjustment in their compensation relating to a prior period that was not received.

---

[3] Each payroll includes the Employee Deductions described in Section III.B of the Motion and paragraph 14 herein.

[4] The payment of the payroll for January 24, 2014 was made via an advance from the DIP financing for which Debtor will be seeking approval.

ACTIVE 24660138v1 02/04/2014         4

12. Debtor estimates that approximately $152,902.62 in total salaries was earned by and owing to Employees that relate to the period prior to the Petition Date (collectively, the "<u>Employee Salary Obligations</u>").[5]

13. As of the Petition Date, no Employee is owed more than $12,475 in Employee Salary Obligations on an individual basis.

14. In the ordinary course of its business, the Debtor takes deductions from its Employees' paychecks (as applicable) (collectively, the "<u>Employee Deductions</u>") that include: (a) payroll taxes and the Employees' portion of FICA and unemployment taxes (aggregating approximately $111,000 per month); and (b) Employee contributions to health and disability related benefits aggregating approximately $5,200 per month for 35 employees. The Debtor forwards amounts equal to the Employee Deductions from its operating account to the appropriate third-party recipients. To the extent Debtor has withheld amounts pertaining to said taxes, Debtor seeks authorization to continue to deduct these funds and pay them to such governmental entities in the ordinary course of business. Debtor also seeks authorization to continue withholding amounts from Employees' paychecks for state and federal unemployment insurance, and to continue remitting such withholdings to the applicable state and federal taxing authorities.

15. In the ordinary course of its business, and as is customary for most large companies, Debtor has established various employee benefit plans and policies that provide certain Employees with medical, vacation, employee savings, and other similar benefits (collectively, the "<u>Employee Benefits</u>"). The Employee Benefits and their cost to Debtor (collectively, the "<u>Employee Benefits Contributions</u>") are generally described below.

16. <u>Health Insurance</u>. An important element of the Employee Benefits is medical and prescription drug insurance. Debtor maintains a medical plan for its eligible Employees (the

---

[5] The Employee Salary Obligations include salaries for the two employees' salaries are 100% reimbursed by Debtor's affiliates, and one employee's salary which is 50% reimbursed by Debtor's parent company. Debtor invoices the affiliates and is paid in cash.

ACTIVE 24660138v1 02/04/2014      5

"Health Plan") administered by Anthem Blue Cross (the "Health Plan Administrator"). This Employee Benefit is made available to those Employees that meet the minimum employee eligibility requirements consisting of: (a) working a minimum of 40 hours per work week; and (b) having been employed by Debtor for the previous two months. The cost of the Health Plan is approximately $120,000 per year and is paid in monthly installments after the first week of each current month. Pursuant to the Health Plan, Debtor pays the majority of the cost for coverage of each enrolled Employee and any enrolled dependents. The Employee is responsible for the remainder of the Health Plan cost and that amount is deducted from each enrolled Employee's paycheck. Debtor's average monthly Health Plan expense is $10,000.

17. <u>Dental</u>. The Debtor offers a dental program to its eligible and participating Employees that is also administered by the Health Plan Administrator. Approximately 25 Employees are covered under the dental program. As with the medical coverage, all premiums are paid on a cost-sharing basis. For dental coverage, the division is generally 75% from the Debtor and 25% from the employee, depending on benefit election. Debtor pays about $377 monthly for the dental program on the first of each month for the same month, with appropriate adjustments in subsequent months, as part of the Debtor's payments for general health care coverage. As of the Petition Date, the Debtor estimates that it owes $377 for dental service fees relating to the period prior to the Petition Date.

18. <u>Vision</u>. The Debtor offers a vision program to its eligible and participating Employees that is likewise administered by the Health Plan Administrator. Employees are covered under the vision program as part of Debtor's health care programs. As with the medical coverage, all premiums are paid on a cost-sharing basis. For vision coverage, the division is approximately 75% from the Debtor and 25% from the employee, depending on benefit election. Debtor pays about $170 monthly for the vision program on the first of each month for the same month, with appropriate adjustments in subsequent months, as part of the Debtor's payments for general health care coverage. As of the Petition Date, the Debtor estimates that it owes $170 for vision service fees relating to the period prior to the Petition Date.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

19. <u>COBRA</u>. The Debtor seeks to continue to perform any obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) ("<u>COBRA</u>") in respect to former Employees. The Health Plan Administrator is also the administrator for COBRA. Currently, three Employees and/or dependents whose Health Plan coverages have ended have elected to enroll in COBRA. The Debtor estimates that the service fee owed to Anthem Blue Cross as of the Petition Date is $1,500 relating to the period prior to the Petition Date. To maintain employee morale and ensure the orderly administration of the estate, the Debtor requests authority to pay in its discretion any such prepetition costs.

20. <u>Employee Life and Other Insurance Benefits</u>. The Debtor has recently begun offering its Employees premium-based long-term disability ("<u>LTD</u>"), short-term disability ("<u>STD</u>"), accidental death and dismemberment ("<u>AD&D</u>") insurance and life insurance coverage through Principal Life Insurance. Coverage is expected to begin February 1, 2014, and Debtor is currently taking applications from its Employees. As of the Petition Date, no Employees have any of these coverages.

21. In addition to paying, making and/or honoring the Employee Salary Obligations, the Employee Deductions, and the Employee Benefits Contributions, Debtor seeks authority to honor Employees' accrued vacation time, personal time, sick, bereavement and other leave in the ordinary course of business (collectively, "<u>Employee Paid Time Off</u>").

22. The Debtor generally does not allow Employees to "cash-out" any accrued Employee Paid Time Off, including any vacation time, except in the case of termination.

23. All Employees earn up to 120 hours of Employee Paid Time Off, on a pro rata basis per pay period, during their first 12 months of employment. Employees earn 12 additional hours of Employee Paid Time Off for each additional 12 months of employment. Accrual of Employee Paid Time Off is capped at 160 hours per Employee.

24. Unpaid but accrued Employee Paid Time Off as of the Petition Date for current Employees is approximately $110,000. The Debtor seeks authority to honor its Employee Paid Time Off policies for unpaid but accrued prepetition Employee Paid Time Off up to its particular vacation Employee Paid Time Off cap in the ordinary course of business. In the event an Employee

is terminated, the Debtor seeks authorization to pay such Employee Paid Time Off, as and to the extent required by law, but only to the extent of the $12,475 cap on priority wages and compensation as limited by section 507(a)(4) of the Bankruptcy Code.

25. Any Employee Paid Time Off exceeding the cap would be paid in accordance with authorized distributions from the estate.

26. In the ordinary course of their employment, certain authorized Employees may have used their own personal credit cards or expended their own personal funds on behalf of and for the benefit of Debtor (the "Employee Reimbursable Business Expenses"). For example, sales Employees travel throughout the country to meet with potential clients and to assess projects and operations Employees frequently visit project sites. Employees rendered services and incurred Employee Reimbursable Business Expenses in anticipation of receiving their standard compensation and reimbursements; however, as of the Petition Date, such obligations may remain unpaid and unreimbursed. Debtor cannot provide a definitive amount of Employee Reimbursable Business Expenses as of the Petition Date, but based upon prior business practices, would estimate that amount does not exceed $10,000. Debtor seeks authorization to pay such Employee Reimbursable Business Expenses in the ordinary course of business.

27. Also, Debtor provides company credit cards with American Express for 21 of its Employees and pays for the business expenses incurred thereon. The Debtor's sales and operations teams are required to travel across the country for the purposes of, among other things, meeting with new clients, inspecting new project sites, conducting general project due diligence, and completing the construction and maintenance of projects. The Debtor's operations are fluid, requiring its workforce to be flexible and agile in its travel schedules. The constant mobility of the Debtor's workforce makes it impractical for the Debtor to burden its employees with the costs of these travels, even if such costs are promised to be reimbursed after the fact. For this reason, Debtor provided its employees company credit cards which the employees use to, among other things, book their travel and accommodations. Likewise, the Debtor's management has similar need for use of the company cards for client relation and other business purposes.

28. Employees have personally guaranteed the payment of the company credit cards. Company credit card expenses average $36,000 per month. Prepetition, Debtor owed $65,617.94 to American Express. This amount comprises of $33,282.21 for the period of November 29, 2013 through December 28, 2013 ("December 2013 Billing Period"), and $32,335.73 from December 29, 2013 through January 27, 2014 ("Stub Period"). (The standard billing cycle is from the 29th of the end of the prior month to the 28th of the current month.) On January 27, 2014, American Express suspended the credit lines associated with the Company credit cards. As such, additional unprocessed charges by merchants may be added during this Stub Period. Debtor seeks authorization to pay the amount owing to American Express. Debtor also seeks authorization to pay such authorized company credit card expenses in the ordinary course of business.

29. Debtor maintains a payroll account (the "Account") through which it provides various payroll services to its Employees, including services related to the providing of signed checks, direct deposit of Salary Obligations, and the withholdings of various sums from Employee paychecks for taxes, garnishments, and health care deductions, among other things. These payroll services are provided by ADP (the "Payroll Account Servicer"). Debtor seeks an order authorizing and directing financial institutions to honor checks related to the various Employee Salary Obligations and Employee Benefit obligations identified above.

30. Debtor submits that it is essential for the morale and maintenance of trust of the Employees that necessary steps are taken to protect the employment compensation described above (collectively, the "Employee Compensation"), including the Debtor's payment of the Employee Salary Obligations, the Employee Benefits Contributions, and the Employee Reimbursable Business Expenses, and the honoring of the Employee Deductions and the Employee Paid Time Off.

31. By the Motion, Debtor seeks authority to pay and/or honor the Employee Compensation for its Employees. The aggregate of the Employee Compensation to be paid to or for the benefit of the Employees pursuant to this Motion will not exceed $12,475 per Employee per the cap provided in Bankruptcy Code section 507(a)(4).

1  I verify under penalty of perjury that the foregoing statement is true and correct to the best
2  of my information, knowledge and belief.
3  Executed this 4th day of February 2014.

_____
ROLAND KISER

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899