1  MICHAEL GERARD FLETCHER
   California State Bar No. 070849
2  REED S. WADDELL
   California State Bar No. 106644
3  **FRANDZEL ROBINS BLOOM & CSATO, L.C.**
   6500 Wilshire Boulevard, Seventeenth Floor
4  Los Angeles, California  90048-4920
   Telephone:  (323) 852-1000
5  Facsimile:  (323) 651-2577
   E-Mail:   rwaddell@frandzel.com
6          mfletcher@frandzel.com
   and
7  NATALIE M. COX, ESQ.
   Nevada Bar No. 007662
8  RANDOLPH L. HOWARD, ESQ.
   Nevada Bar No. 006688
9  **KOLESAR & LEATHAM**
   400 South Rampart Boulevard
10 Suite 400
   Las Vegas, Nevada  89145
11 Telephone:  (702) 362-7800
   Facsimile:  (702) 362-9472
12 E-Mail:  ncox@klnevada.com
           rhoward@klnevada.com
13
14 Attorneys for Creditor
   CATHAY BANK

15            **UNITED STATES BANKRUPTCY COURT**

16                   **DISTRICT OF NEVADA**

17 IN RE:                                  Case No. BK-S-14-10355-abl
                                           and BK-S-14-10357-abl
18 MARTIFER AURORA SOLAR, LLC, a
   Nevada limited liability company,       Jointly Administered under
19                                         Case No. BK-S-14-10355-abl
   ⊠ Affects Martifer Aurora Solar, LLC
20 ⊠ Affects Martifer Solar USA, Inc.      Chapter 11
   ☐ Affects All Debtors
21                                         **SECURED CREDITOR CATHAY
                                           BANK'S STATEMENT OF
22                                         OBJECTIONS TO DEBTORS'
                                           PROPOSED INTERIM ORDER
23                                         PURSUANT TO 11 U.S.C. §§ 361, 362
                                           AND 363 AND FED. R. BANKR. P.
24                                         4001(b) and 4001(d): (I)
                                           AUTHORIZING DEBTORS TO USE
25                                         CASH COLLATERAL AND
                                           PROVIDE ADEQUATE
26                                         PROTECTION; (II) GRANTING
                                           RELATED RELIEF; AND (III)
27                                         SCHEDULING FINAL HEARING**

28    Pursuant to Local Rule 9021(b)(2)(A), secured creditor Cathay Bank (the "Bank") hereby

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

files the following objections and proposed alternatives to the Debtors' Martifer Aurora Solar, LLC's ("Aurora") and Martifer Solar USA, Inc.'s Interim Order Pursuant to 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection; (II) Granting Related Relief; and (III) Scheduling Final Hearing (the "Proposed Order"):

## A.    PERTINENT PROCEDURAL AND FACTUAL HISTORY

1.    On January 24, 2014, Debtor Martifer Aurora Solar, LLC filed its Motion for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate Protection; (III) Granting Related Relief; and (III) Scheduling Final Hearing [Dkt. 25] and on January 23, 2014, Debtor Martifer Solar USA, Inc. filed its Motion for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate Protection; (III) Granting Related Relief; and (III) Scheduling Final Hearing [Dkt. 24] (the "Motions").

2.    On January 28, 2014, the Court held a hearing on the Motions on order shortening time.

3.    Subsequently thereafter, at 6:52 p.m. on Wednesday, January 29, 2014, Debtors' counsel transmitted a proposed order for review (the "Proposed Order"). *See* the Declaration of Natalie Cox filed concurrently herewith (the "Cox Declaration") and a copy of the transmission email attached thereto as Exhibit 1.

4.    After numerous email exchanges between the Bank's counsel and the Debtors' counsel as to the form of the proposed order, counsel were unable to resolve their differences as to whether the proposed order accurately reflected the ruling of the Court. *See* copies of the emails attached to the Cox Declaration.

## B.    OBJECTIONS

Local Rule 9021 provides a party who disagrees that a proposed order accurately reflects the ruling of the Court to have such disapproval noted on the lodged proposed order and five (5) business days from the date of receipt of the proposed order to submit to the Court a detailed

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

1  statement of objections and an alternate proposed order.  *See* LR 9021(b)(2) and (3).  Having

2  received the Debtors' Proposed Order on January 29, 2014, Cathay Bank has up to and including

3  February 5, 2014 to submit its detailed objections to the Proposed Orders and to submit its'

4  proposed alternate.  Each of the Bank's objections are set forth below.

5  **1.    THE DEBTORS' SUBMISSION OF A BUDGET NOT IN EVIDENCE IS
   INAPPROPRIATE AND WAS NOT PART OF THE COURT'S ORDER.**

6

7      The Bank objects to the Debtors' surreptitious incorporation of, and reliance upon, a

8  revised, joint budget attached to the Debtors' Proposed Order as Exhibit A.  Specifically, the

9  Bank objects to the Debtors' suggestion at pgs. 6-7, paragraph 4 of the Proposed Order that the

10 Court's decision is supported by a budget not previously submitted into evidence or even

11 referenced in the Debtors' moving papers prior to the January 28, 2014 hearing.  Paragraph four

12 of the Order states:

13        4. All use of the Pre-Petition Lender's Cash Collateral shall
          be subject to compliance with, in addition to this Interim Order, the
14        **Initial Cash Budget, as modified at the hearing and attached
          hereto as Exhibit A (the "Interim Cash Budget");** provided,
15        however, that compliance with the Interim Cash Budget shall be
          deemed satisfied if the actual aggregate expenditures the period
16        comprising weeks two through eight (the "Interim Period") do not
          exceed the aggregate budgeted amount for such Interim Period as
17        set forth in the Interim Cash Budget. The Interim Cash Budget may
          be modified with the written consent of both Debtors and the Pre-
18        Petition Lender, respectively, without the need for Court
          approval.(Emphasis added).

19

20     The budget attached as Exhibit A to the Proposed Order **is not** the 13-week budget

21 submitted with the Debtors' moving papers or submitted into evidence at the January 28, 2014

22 hearing, nor the budget upon which the Court relied in granting the Debtors' use of the Bank's

23 cash collateral.  The 13-week budget did not include any line items for Debtor Aurora, and more

24 importantly, included two (2) payments of $57,768 to the Bank.  A copy of the 13-week Budget

25 is attached hereto as **Exhibit 1** for reference and also appears in the docket at [Dkt. 24, Exhibit 2

26 and Dkt. 25, Exhibit 2].  The "new budget" attached to Debtors' Proposed Order purports to be a

27 joint budget and cuts in nearly half (1/2) the budgeted amount of payments to the Bank to just

28 $26,258 each.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

It is apparent from the Court's own statements from the January 28, 2014 hearing, that the Court was relying on the 13-week budget, not the newly submitted budget. In fact, the Court specifically limited the Debtors' use of the Bank's cash collateral to that stated in the 13-week budget as follows:

> Third, the amount of cash collateral authorized to be used during the interim period shall not exceed the total operating disbursements in weeks 2 through 8 of the debtor's 13-week cash flow projection budget.

*See* Transcript of January 28, 2014 hearing attached hereto as **Exhibit 2**, pg. 8, lns. 22-25. To include a completely different budget that adds a line item for Aurora and alters payments to the Bank is inappropriate and should not included in the Court's written Order.

**2.      THE COURT DID NOT GRANT THE DEBTORS A $2 MILLION CARVE-OUT THAT WOULD ALLOW THE DEBTORS TO PAY THE PROFESSIONALS EXCLUSIVELY DURING THE INTERIM PERIOD AND THAT WOULD PRIME CATHAY BANK'S REPLACEMENT AND SUPERPRIORITY LIENS.**

The Bank objects to the Debtors' assertions that the Court granted the $2 million "Carve-Out." In particular, the Bank objects to the language set forth in the following sections of the Proposed Order:

     a.      pg. 6, paragraph 2:

> 2.      From the Petition Date through the Termination Date (as hereinafter defined), Debtors shall be permitted to use the Pre-Petition Lender's Cash Collateral according to the terms of this Interim Order. Debtors shall have no right to use the Pre-Petition Lender's Cash Collateral after the occurrence and during the continuance of any Event of Default (as hereinafter defined), **except as provided herein with respect to the Carve-Out (as hereinafter defined).** (emphasis added).

     b.      pg. 7, paragraph 5, subsections (b) and (c):

> (5)(b) replacement liens to secure the amount of any Value Diminution (the "Replacement Liens"), [ ]which Replacement Liens shall: (i) **be subject and junior only to the Carve-Out (defined below),** and any Prior Liens, [ ] (ii) attach to the Cathay Collateral as of the Petition Date and any other assets of Debtors that are subject to a valid and perfected lien as of the Petition Date, any other previously unencumbered assets of Debtors, and any proceeds of the foregoing, and (iii) be in addition to the Pre-Petition Lender's Claims and liens; and

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

(c) to the extent permitted by Bankruptcy Code section 507(b), a superpriority claim (the "Pre-Petition Lender's Superpriority Claim") against Debtors' estates, **subject and junior only to the Carve-Out.** (Emphasis added).

d.    pg. 8, paragraph 6 in its entirety:

6.    All claims and liens of the Pre-Petition Lender, including, without limitation, the Replacement Liens and the Pre-Petition Lender's Superpriority Claims, shall be subject to carve-out(the "Carve-Out") from its liens and claims, including, without limitation, the Replacement Liens, the Pre-Petition Lender's Claims, and the Pre-Petition Lender's Superpriority Claim, for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 § U.S.C. 1930, and (ii) only to the extent the amounts are not available under the Cash Budget, an amount not exceeding two million dollars ($2,000,000) in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default (defined below), to pay the fees and expenses of professionals retained by Debtors and any statutory committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses the Pre-Petition Lender waives any right to seek disgorgement); provided, however, that (x) Debtors shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Interim Cash Budget; (y) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (z) the Pre-Petition Lender waive any right to seek disgorgement thereof; and provided, further, that nothing herein shall be construed to impair the ability of the Pre-Petition Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtors or any statutory committee.

e.    pg. 10, paragraph 10:

10.    Notwithstanding an Event of Default, any amounts that have been disbursed in accordance with the Interim Cash Budget and/**or the Carve-Out** shall not be subject to disgorgement in favor of the Pre-Petition Lender absent a finding of mistaken payment, bad faith or fraud.  (Emphasis added).

The Debtors' refusal—despite repeated requests and objections by Cathay Bank and the US Trustee—to remove the language from the proposed Order imposing a $2 million "carve-out" (surcharge) which results in the forcible subordination of Cathay Bank's prepetition liens and post-petition replacement liens to $ 2 Million in future estate administrative expenses

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

1    (attorney's fees) is tantamount to bad faith. The Court did NOT order such a "surcharge/carve-

2    out" regarding the replacement liens granted for the use of the Bank's cash collateral, and the

3    concept of a subordination of the Bank's Pre-Petition liens to $2 Million in administrative

4    expenses (attorneys' fees) was never even discussed at the hearing.

5    Regardless, the Court should not (indeed cannot) subordinate the Bank's prepetition

6    security interests and post-petition replacement liens to administrative expenses that have not yet

7    been incurred or allowed, and which have not been the subject of a duly noticed "surcharge"

8    motion under section 506(c) of the Bankruptcy Code, or a duly noticed request for a "priming

9    lien" under section 364(d), in favor of "future" administrative expenses to be incurred by

10   professionals who have not yet even filed employment applications with the Court. Cathay Bank

11   objects to the inclusion of any language whatsoever regarding the proposed "carve-out"

12   (surcharge) discussed in the Motion.

13   The inappropriateness of the Carve-Out language in the Proposed Orders is magnified by

14   the literal reading of the Debtors' proposed Carve-Out language which would entitle the Debtors

15   to use the Bank's cash collateral to pay the entire amount budgeted for weeks 2-8, up to $2

16   million, on professionals – not necessarily on any of the specific items, such as utilities, cited in

17   the 13-week budget. Such a result certainly does not satisfy the requirements of Federal Rule of

18   Bankruptcy Procedure 4001(b)(2) which limits the interim relief to such relief as is necessary to

19   avoid immediate and irreparable harm to the estate pending a final hearing. *See* BR 4001(b)(2)

20   and the Transcript of the 3 pm hearing on January 28, 2014, pg. 5, lns. 11-17, ("However, if the

21   Court does authorize the use of cash collateral, it may authorize the use only of that amount -- try

22   again -- it may authorize the use of only that amount of such cash collateral as is necessary to

23   avoid immediate and irreparable harm to the estate pending a final hearing. Federal Rule of

24   Bankruptcy Procedure 4001(b)(2) says so. That's how I know."). As drafted, the carve-out

25   sections ensures that the Debtors' professionals will be the only parties receiving payment before

26   the Debtors' go out of business and liquidation ensues. There is no doubt from the record that

27   this is not the Court's intended result.

28   Likewise, the record does not reflect that the Court also intended to subordinate the

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL: (702) 362-7800 / FAX: (702) 362-9472

KOLESAR & LEATHAM

400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

1   Bank's adequate protection in the form of replacement and superpriority liens to the $2 million

2   Carve-Out.   In fact, the Court ruled (at transcript p. 8, line 1) that there would be "no priming"

3   resulting from the Court's Order.  There simply is nothing in the Court's oral pronouncement, the

4   record, or pertinent law that support such harsh treatment of the Bank.  Thus, such language

5   should not be included in the Court's written Order.

6       **3.     PROPOSED ORDER**

7           The Bank proposes as an alterative, the proposed order attached hereto as **Exhibit 3 (the**

8   **"Alternative Order").**  The form and substance of this alternative Order has been approved by

9   the Office of the United States Trustee as reflective of the Court's rulings from the bench on

10  January 28, 2014.  *See* the Cox Declaration.

11  **C.    CONCLUSION**

12          For each of the foregoing reasons, the Bank respectfully requests that the Alternative

13  Order be entered instead of the Order proposed by the Debtor.

14          DATED this 5th day of February, 2014.

15                          **KOLESAR & LEATHAM.**

16

17                  By:*/s/ Natalie M. Cox, Esq.*
                    _____
18                      MICHAEL GERARD FLETCHER
                          (CA State Bar No. 070849)
19                      mfletcher@frandzel.com
                        REED S. WADDELL (CA State Bar No. 106644)
20                      rwaddell@frandzel.com
                        **FRANDZEL ROBINS BLOOM & CSATO, L.C.**
21                      6500 Wilshire Boulevard, Seventeenth Floor
                        Los Angeles, California  90048-4920
22                      and
                        NATALIE M. COX, ESQ.
23                      Nevada Bar No. 007662
                        RANDOLPH L. HOWARD, ESQ.
24                      Nevada Bar No. 006688
                        400 South Rampart Boulevard, Suite 400
25                      Las Vegas, Nevada  89145

26                      Attorneys for Creditor
                        CATHAY BANK
27

28

EXHIBIT 1

Unaudited                                                                                                                          Draft- Subject to Modification

**Martifer Solar USA, Inc.**
**13 Week Cash Flow Projections**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning Date | 1/21/14 | 1/27/14 | 2/3/14 | 2/10/14 | 2/17/14 | 2/24/14 | 3/3/14 | 3/10/14 | 3/17/14 | 3/24/14 | 3/31/14 | 4/7/14 | 4/14/14 | | [1] |
| Cash Receipts (Legacy) | $      - | $ 8,721 | $      - | $ 47,547 | $ 283,151 | $ 910,741 | $      - | $      - | $      - | $      - | $ 1,647,404 | $      - | $      - | $ 2,897,564 | [2] |
| Cash Receipts (New Busi ) | - | - | - | - | - | - | - | - | - | - | 615,000 | - | 60,000 | 675,000 | [3] |
| _Total Cash Receipts_ | - | 8,721 | - | 47,547 | 283,151 | 910,741 | - | - | - | - | 2,262,404 | - | 60,000 | 3,572,564 | |
| Direct Materials + Subs (Legacy) | - | 55,000 | 38,038 | 133,151 | - | 1,009,886 | - | - | - | - | 741,669 | - | - | 1,977,743 | [2] |
| Direct Materials + Subs (New Busi.) | - | 350,000 | - | - | - | 114,350 | - | 10,000 | 5,000 | 25,000 | 630,000 | 15,000 | 5,000 | 1,154,350 | [3] |
| _Total Dir. Mat. Disbursements_ | - | 405,000 | 38,038 | 133,151 | - | 1,124,236 | - | 10,000 | 5,000 | 25,000 | 1,371,669 | 15,000 | 5,000 | 3,132,093 | |
| Payroll | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | 1,128,234 | [4] |
| Commissions | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Insurance | - | 43,500 | - | - | - | 43,500 | - | - | - | 43,500 | - | - | - | 130,500 | |
| Expense Reimbursements | - | 36,000 | - | - | - | 36,000 | - | - | - | 36,000 | - | - | - | 108,000 | |
| Fuel | - | - | 3,700 | - | - | - | 3,700 | - | - | - | 3,700 | - | - | 11,100 | |
| Rent | - | 22,050 | - | - | - | 22,050 | - | - | - | 22,050 | - | - | - | 66,150 | |
| Utilities | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 36,000 | |
| Other Expenses | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | 36,000 | |
| IT Services | - | 10,300 | - | - | - | 10,300 | - | - | - | 10,300 | - | - | - | 30,900 | |
| Outside Services | - | - | 38,000 | - | - | - | 38,000 | - | - | - | 38,000 | - | - | 114,000 | |
| Vehicle Leases | - | - | 8,250 | - | - | - | 8,250 | - | - | - | 8,250 | - | - | 24,750 | |
| Contingency | - | 7,500 | 7,500 | 132,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 215,000 | [5] |
| _Total Operating Disbursements_ | 161,176 | 131,350 | 230,626 | 132,500 | 168,676 | 131,350 | 230,626 | 7,500 | 168,676 | 131,350 | 230,626 | 7,500 | 168,676 | 1,900,634 | |
| Net Operating Cash Flows | (161,176) | (527,629) | (268,664) | (218,104) | 114,475 | (344,845) | (230,626) | (17,500) | (173,676) | (156,350) | 660,109 | (22,500) | (113,676) | (1,460,164) | |
| Debtor's Legal Fees (Ch.11) | - | - | - | - | - | - | - | - | - | - | - | 370,000 | - | 370,000 | |
| Debtor's FA Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | 75,000 | - | 75,000 | |
| Debtor's IB Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | [6] |
| Debtor's Legal Fees (Other) | - | - | - | - | - | - | - | - | - | - | - | 245,000 | - | 245,000 | |
| Committee's Fees | - | - | - | - | - | - | - | - | - | - | - | 50,000 | - | 50,000 | |
| Chapter 11 UST Fees | - | - | - | - | - | - | - | - | - | - | - | 6,500 | - | 6,500 | |
| _Total Professional Fees_ | - | - | - | - | - | - | - | - | - | - | - | 746,500 | - | 746,500 | [7] |
| Interest Expense- Secured Debt | - | 57,768 | - | - | - | 57,768 | - | - | - | 57,768 | - | - | - | 173,305 | [8] |
| Net Cash Flow Before DIP Draws | (161,176) | (585,398) | (268,664) | (218,104) | 114,475 | (402,613) | (230,626) | (17,500) | (173,676) | (214,118) | 660,109 | (22,500) | (860,176) | (2,379,969) | |
| Beginning Cash | 505,700 | 505,700 | 220,302 | 211,638 | 268,534 | 383,009 | 264,746 | 264,119 | 256,619 | 262,943 | 263,825 | 923,934 | 901,434 | 505,700 | [9] |
| DIP Facility Draws | 161,176 | 300,000 | 260,000 | 275,000 | - | 284,350 | 230,000 | 10,000 | 180,000 | 215,000 | - | - | 160,000 | 2,075,526 | [10] |
| Net Ending Cash | $ 505,700 | $ 220,302 | $ 211,638 | $ 268,534 | $ 383,009 | $ 264,746 | $ 264,119 | $ 256,619 | $ 262,943 | $ 263,825 | $ 923,934 | $ 901,434 | $ 201,257 | $ 201,257 | |

**Notes:**
[1] All dates represent the beginning Monday, except for Week 1, the beginning of which is the Petition Date
[2] Martifer restructured its sales team in December 2013 with a mandate that all new contracts generate positive cash flows. "Legacy" business represents those contracts in place prior to this restructuring
[3] While all new business has been calculated as cash flow positive, contracts typically require initial cash outlays up to several months prior to recognition of cash receipts, as is common industry practice
[4] Week 1 payroll is assumed to be paid through the DIP Facility (i.e. Martifer Solar, Inc. as DIP Lender) in advance of finalization of the DIP Facility loan agreement
[5] Assumes amounts due to critical vendors of approximately $125,000 are paid by Week 4 pursuant to Section 105 or other provisions of the Bankruptcy Code
[6] Investment Banking fees of $300,000 contemplates a potential exit financing transaction. Should this transaction not materialize within this budget period, such corresponding fees will not be paid
[7] Professionals' monthly invoices are assumed to be paid at 80% of fees and 100% of expenses (for January 2014 through March 2014 invoices). The 20% holdbacks are assumed to be paid upon Plan Confirmation.
[8] Assumes default interest rate at 11% per annum based on a principal balance of $6.3 million
[9] Beginning cash balance per the Debtor cash balance as of 1/21/14.
[10] DIP Facility draws relate to a pending Debtor in Position facility. All related interest is accrued. Draws on the DIP Facility are projected for any week in which the cash balance is projected to drop below $200,000

Printed: Jan 23, 2014

Unaudited

Draft- Subject to Modification

**Martifer Solar USA, Inc.**
**13 Week Cash Flow Projections**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Totals | [1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning Date | 1/21/14 | 1/27/14 | 2/3/14 | 2/10/14 | 2/17/14 | 2/24/14 | 3/3/14 | 3/10/14 | 3/17/14 | 3/24/14 | 3/31/14 | 4/7/14 | 4/14/14 | | |
| Cash Receipts (Legacy) | $ - | $ 8,721 | $ - | $ 47,547 | $ 283,151 | $ 910,741 | $ - | $ - | $ - | $ - | $ 1,647,404 | $ - | $ - | $ 2,897,564 | [2] |
| Cash Receipts (New Busi.) | - | - | - | - | - | - | - | - | - | - | 615,000 | - | 60,000 | 675,000 | [3] |
| *Total Cash Receipts* | - | 8,721 | - | 47,547 | 283,151 | 910,741 | - | - | - | - | 2,262,404 | - | 60,000 | 3,572,564 | |
| Direct Materials + Subs (Legacy) | - | 55,000 | 38,038 | 133,151 | - | 1,009,886 | - | - | - | - | 741,669 | - | - | 1,977,743 | [2] |
| Direct Materials + Subs (New Busi.) | - | 350,000 | - | - | - | 114,350 | - | 10,000 | 5,000 | 25,000 | 630,000 | 15,000 | 5,000 | 1,154,350 | [3] |
| *Total Dir. Mat. Disbursements* | - | 405,000 | 38,038 | 133,151 | - | 1,124,236 | - | 10,000 | 5,000 | 25,000 | 1,371,669 | 15,000 | 5,000 | 3,132,093 | |
| Payroll | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | 1,128,234 | [4] |
| Commissions | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Insurance | - | 43,500 | - | - | - | 43,500 | - | - | - | 43,500 | - | - | - | 130,500 | |
| Expense Reimbursements | - | 36,000 | - | - | - | 36,000 | - | - | - | 36,000 | - | - | - | 108,000 | |
| Fuel | - | - | 3,700 | - | - | - | 3,700 | - | - | - | 3,700 | - | - | 11,100 | |
| Rent | - | 22,050 | - | - | - | 22,050 | - | - | - | 22,050 | - | - | - | 66,150 | |
| Utilities | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 36,000 | |
| Other Expenses | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | 36,000 | |
| IT Services | - | 10,300 | - | - | - | 10,300 | - | - | - | 10,300 | - | - | - | 30,900 | |
| Outside Services | - | - | 38,000 | - | - | - | 38,000 | - | - | - | 38,000 | - | - | 114,000 | |
| Vehicle Leases | - | - | 8,250 | - | - | - | 8,250 | - | - | - | 8,250 | - | - | 24,750 | |
| Contingency | - | 7,500 | 7,500 | 132,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 215,000 | [5] |
| *Total Operating Disbursements* | 161,176 | 131,350 | 230,626 | 132,500 | 168,676 | 131,350 | 230,626 | 7,500 | 168,676 | 131,350 | 230,626 | 7,500 | 168,676 | 1,900,634 | |
| Net Operating Cash Flows | (161,176) | (527,629) | (268,664) | (218,104) | 114,475 | (344,845) | (230,626) | (17,500) | (173,676) | (156,350) | 660,109 | (22,500) | (113,676) | (1,460,164) | |
| Debtor's Legal Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | - | 370,000 | 370,000 | |
| Debtor's FA Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | - | 75,000 | 75,000 | |
| Debtor's IB Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | [6] |
| Debtor's Legal Fees (Other) | - | - | - | - | - | - | - | - | - | - | - | - | 245,000 | 245,000 | |
| Committee's Fees | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 | 50,000 | |
| Chapter 11 UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | 6,500 | 6,500 | |
| *Total Professional Fees* | - | - | - | - | - | - | - | - | - | - | - | - | 746,500 | 746,500 | [7] |
| Interest Expense- Secured Debt | - | 57,768 | - | - | - | 57,768 | - | - | - | 57,768 | - | - | - | 173,305 | [8] |
| Net Cash Flow Before DIP Draws | (161,176) | (585,398) | (268,664) | (218,104) | 114,475 | (402,613) | (230,626) | (17,500) | (173,676) | (214,118) | 660,109 | (22,500) | (860,176) | (2,379,969) | |
| Beginning Cash | 505,700 | 505,700 | 220,302 | 211,638 | 268,534 | 383,009 | 264,746 | 264,119 | 256,619 | 262,943 | 263,825 | 923,934 | 901,434 | 505,700 | [9] |
| DIP Facility Draws | 161,176 | 300,000 | 260,000 | 275,000 | - | 284,350 | 230,000 | 10,000 | 180,000 | 215,000 | - | - | 160,000 | 2,075,526 | [10] |
| Net Ending Cash | $ 505,700 | $ 220,302 | $ 211,638 | $ 268,534 | $ 383,009 | $ 264,746 | $ 264,119 | $ 256,619 | $ 262,943 | $ 263,825 | $ 923,934 | $ 901,434 | $ 201,257 | $ 201,257 | |

**Notes:**
[1] All dates represent the beginning Monday, except for Week 1, the beginning of which is the Petition Date
[2] Martifer restructured its sales team in December 2013 with a mandate that all new contracts generate positive cash flows. "Legacy" business represents those contracts in place prior to this restructuring
[3] While all new business has been calculated as cash flow positive, contracts typically require initial cash outlays up to several months prior to recognition of cash receipts, as is common industry practice
[4] Week 1 payroll is assumed to be paid through the DIP Facility (i.e. Martifer Solar, Inc. as DIP Lender) in advance of finalization of the DIP Facility loan agreement
[5] Assumes amounts due to critical vendors of approximately $125,000 are paid by Week 4 pursuant to Section 105 or other provisions of the Bankruptcy Code
[6] Investment Banking fees of $300,000 contemplates a potential exit financing transaction. Should this transaction not materialize within this budget period, such corresponding fees will not be paid
[7] Professionals' monthly invoices are assumed to be paid at 80% of fees and 100% of expenses (for January 2014 through March 2014 invoices). The 20% holdbacks are assumed to be paid upon Plan Confirmation.
[8] Assumes default interest rate at 11% per annum based on a principal balance of $6.3 million
[9] Beginning cash balance per the Debtor cash balance as of 1/21/14.
[10] DIP Facility draws relate to a pending Debtor in Position facility. All related interest is accrued. Draws on the DIP Facility are projected for any week in which the cash balance is projected to drop below $200,000

Printed: Jan 23, 2014

EXHIBIT 2

1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

LAS VEGAS, NEVADA

| | | |
|---|---|---|
| In re:  MARTIFER SOLAR USA, INC., | ) | E-Filed:  01/30/14 |
| | ) | |
| Debtor. | ) | Case No. |
| | ) | BK-S-14-10357-ABL |
| _____ | ) | Chapter 11 |
| | ) | |
| In re:  MARTIFER AURORA SOLAR, LLC, | ) | |
| | ) | |
| Debtor. | ) | Case No. |
| | ) | BK-S-14-10355-ABL |
| _____ | ) | Chapter 11 |
| MARTIFER AURORA SOLAR, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Adversary No. |
| CATHAY BANK, | ) | BK-S-14-01014-ABL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

PARTIAL TRANSCRIPT OF PROCEEDINGS
OF
JUDGE'S RULING
VOLUME 1
BEFORE THE HONORABLE AUGUST B. LANDIS
UNITED STATES BANKRUPTCY JUDGE

Tuesday, January 28, 2014

9:30 a.m.

Court Recorder:        Helen Smith

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

```
 1    APPEARANCES:

 2    For Martifer Solar        BRETT A. AXELROD, ESQ.
      USA, Inc., and           NATHAN SCHULTZ, ESQ. (phonetic)
 3    Martifer Aurora          Fox Rothschild, LLP
      Solar, LLC:              3800 Howard Hughes Parkway
 4                             Suite 500
                               Las Vegas, Nevada 89169
 5
      For Cathay Bank:         NATALIE M. COX, ESQ.
 6                             Kolesar & Leatham
                               400 South Rampart Boulevard
 7                             Las Vegas, Nevada 89145

 8                             REED S. WADDELL, ESQ.
                               MICHAEL G. FLETCHER, ESQ.
 9                             Frandzel Robins Bloom & Csato, L.C.
                               6500 Wilshire Boulevard
10                             17th Floor
                               Los Angeles, California 90048
11
      For U.S. Trustee:        MICHAL J. BLOOM, ESQ.
12                             Office of the United States Trustee
                               300 South Las Vegas Boulevard
13                             Suite 4300
                               Las Vegas, Nevada 89101
14
      For Martifer Solar,      SAMUEL A. SCHWARTZ, ESQ.
15    Inc.:                    Schwartz Law Firm
                               6623 Las Vegas Boulevard South
16                             Suite 300
                               Las Vegas, Nevada 89119
17
      Also Present:            KLAUS BERNHARDT (phonetic)
18                             ROLAND KISER (phonetic)
                               AVI MUNTAR (phonetic)
19                             JAMES WONG (phonetic)
                               PEDRO PEREIRA (phonetic)
20

21

22

23

24

25
```

3

```
1              (Court reconvened at 03:02:16 p.m.)

2                   THE CLERK:  Bankruptcy court is back in session.

3                   THE COURT:  Have a seat.

4              (Colloquy not on the record.)

5                   THE COURT:  We're back on the record in the

6     matters of in re Martifer Solar USA, Inc., Chapter 11

7     Case No. 14-10357, and I'll try my best to say USA when I refer

8     to that case.

9         The second is in re Martifer Aurora Solar, LLC,

10    Chapter 11 No. 14-10355 -- I'll refer to that case as Aurora --

11    and Martifer Aurora Solar, LLC, versus Cathay Bank,

12    Adversary No. 14-01014, and I'll talk about that as the

13    adversary.

14        We had arguments and evidence presented this morning.  The

15    matters before the Court remaining for resolution are the

16    following:  Debtors' separate motions for interim and final

17    order pursuant to 11, USC, Section 361, 362, and 363, and

18    Federal Rule of Bankruptcy Procedure 4001(b) and 4001(d),

19    Roman numeral I, authorizing debtors to use cash collateral and

20    provide adequate protection, Roman numeral II, granting related

21    relief, and Roman number III, scheduling final hearing -- I'll

22    refer to those in the collective as the cash collateral

23    motions -- and opposition thereto by Cathay Bank and the

24    United States Trustee for Region 17.

25             Second, USA's motion for an order, one, prohibiting utility
```

4

1    providers from altering, refusing, or discontinuing service,

2    two, authorizing ordinary course payments to utility providers,

3    three, deeming utility providers adequately assured of future

4    performance, and, four, establishing procedures for determining

5    requests for additional adequate assurance and the limited

6    oppositions thereto.  I'll call that the utilities motion.

7         Third, Debtors' separate motions for order pursuant to

8    11, USC, Section 364 and Federal Rule of Bankruptcy Procedure

9    4001(c), Roman numeral I, authorizing debtors to obtain

10   postpetition financing, Roman numeral II, granting related

11   relief, and, Roman numeral III, scheduling final hearing.  I'll

12   refer to those in the collective as the DIP financing motions.

13        And last, a motion for temporary restraining order and

14   order to show cause why a preliminary injunction should not

15   issue the TRO motion.

16        The Court has concluded that it has jurisdiction over the

17   debtors' Chapter 11 reorganization cases and the adversary

18   proceeding pursuant to 28, USC, Section 1334, 28, USC,

19   Section 157(a), and U.S. District Court Local Rule 1001(b)(1).

20        As to the motions pending before the Court, the Court

21   concludes that the cash collateral motions are core proceedings

22   pursuant to 28, USC, Section 157(b)(2)(A) and (M).

23        The utilities motion is a core proceeding pursuant to

24   28, USC, Section 157(b)(2)(A) and (O).  The DIP financing

25   motions are core proceedings pursuant to 28, USC,

1    Section 157(b)(2)(A) and (D), and the TRO motion is a core

2    proceeding pursuant to 28, USC, Section 157(b)(2)(A) and (O).

3        We'll address the cash collateral motions first.  The

4    cash collateral motions were filed on January 23rd in the USA

5    case, Docket Entry No. 24, and January 24th in Aurora,

6    Docket Entry No. 25.

7        Today's preliminary hearing was held at the debtors'

8    request less than 14 days from the date when the cash

9    collateral motions were served.

10       Today's preliminary hearing is authorized pursuant to

11   Federal Rule of Bankruptcy Procedure 4001(b)(2).  However, if

12   the Court does authorize the use of cash collateral, it may

13   authorize the use only of that amount -- try again -- it may

14   authorize the use of only that amount of such cash collateral

15   as is necessary to avoid immediate and irreparable harm to the

16   estate pending a final hearing.  Federal Rule of Bankruptcy

17   Procedure 4001(b)(2) says so.  That's how I know.

18       As debtors in possession, the debtors are authorized to

19   operate their respective businesses under the bankruptcy code,

20   under Section 1108 of the bankruptcy code.

21       The bankruptcy code provides that a debtor in possession

22   may use cash collateral only with the secured creditor's

23   consent or if the Court after notice and hearing authorizes

24   such use, and you can see there at Section 363(c)(2) of the

25   bankruptcy code.

1    Absent consent, Courts look to whether a secured creditor

2    has adequate protection of its interest in cash collateral as

3    the condition to authorizing its use.  Section 363(e) provides

4    that.

5    You can also read United Savings Association versus

6    Timbers of Inwood Forest Association, 484 U.S. 365 at 369

7    through 73 back in 1988.

8    In addition, Section 362(d)(1) enables a party with an

9    interest in property of the estate such as cash collateral

10    to obtain relief from the automatic stay if there ultimately

11    proves to be a lack of adequate protection.  See

12    Section 362(d)(1).

13    Based upon the record that was presented at the hearings

14    this morning, the arguments of counsel, the Court concludes

15    that the debtors have carried their burden of proving the need

16    to use cash collateral due to the scope of the secured claim

17    held by Secured Creditor Cathay Bank.

18    The Court finds that the record before it establishes

19    plainly that Secured Creditor Cathay Bank does not consent to

20    the use of its cash collateral.  As a result, debtors can only

21    use Cathay Bank's cash collateral if the Court authorizes the

22    debtors to do so.

23    So the crux of the issue today is a straightforward one

24    almost.  It's whether Cathay Bank's interest in cash collateral

25    has been afforded adequate protection through the proposal

1    embodied in the cash collateral motions and the proposed order.

2        The term "adequate protection" is not defined in the

3    bankruptcy code, but Section 361 does provide three

4    nonexclusive examples of how adequate protection may be

5    provided in a cash collateral context.

6        First, requiring the debtor in possession to make a cash

7    payment or periodic cash payments to the affected secured

8    creditor to the extent the use of cash collateral results in a

9    decrease in the value of the secured creditor's interest.

10       Second, providing the secured creditor with an additional

11   replacement lien to the affected secured creditor to the extent

12   the use of cash collateral results in a decrease in the value

13   of the secured creditor's interest.

14       And last, otherwise fashioning a method of providing a

15   creditor with the indubitable equivalent of its interest in

16   cash collateral.

17       Based upon the record before it developed in the hearing

18   this morning, the Court concludes that the debtors' cash

19   collateral motions do afford sufficient adequate protection to

20   Cathay Bank to allow the debtors to use cash collateral on an

21   interim basis pending a final hearing.

22       The Court finds that the motions provide for adequate

23   protection payments as detailed in the budget.  The Court finds

24   that the motion provides for replacement liens.  The Court

25   finds that the cash collateral motions provide for the

1    prepetition lender's superpriority claim.  No priming here.

2         Most importantly, Cathay's secured claim is protected by a

3    substantial equity cushion of not less than 20 percent

4    depending on the valuation method that you use.  Those findings

5    are substantiated by the declarations that were admitted into

6    evidence this morning.

7         Case law has almost uniformly held that an equity cushion

8    of 20 percent or more constitutes adequate protection.

9    Suntrust Bank versus Den-Mark Construction, Inc., in re

10   Den-Mark Construction, Inc., 406 Bankruptcy Reporter 683,

11   700 at note 24 from the Eastern District of North Carolina at

12   2009, citing James River Associates, 148 Bankruptcy Reporter

13   790, 796, out of the Eastern District of Virginia, 1992.

14        The Court therefore concludes that the relief requested in

15   the cash collateral motions is appropriate and will be granted

16   on an interim basis pending a final hearing with the following

17   restrictions:  First, the final hearing shall be held on

18   March 10th, 2014, at 9:30 a.m.

19        Second, the debtors' authorization to use cash collateral

20   pursuant to this interim order shall expire on March 10th

21   of 2014.

22        Third, the amount of cash collateral authorized to be used

23   during the interim period shall not exceed the total operating

24   disbursements in weeks 2 through 8 of the debtor's 13-week cash

25   flow projection budget.

9

1        Fourth, the replacement liens afforded to Cathay Bank shall
2    not extend to avoidance actions.  Fifth, neither the debtor nor
3    any creditor committee is restricted from using cash collateral
4    to challenge perfection, validity, priority, amount, or
5    enforceability of any secured claim.
6        Counsel for the debtor will prepare the order.  It will
7    modify the order that was uploaded with the motion.  You will
8    circulate it for review by parties in interest who have
9    appeared at this hearing in connection with the -- as required
10    by our local rules.
11        That's my ruling with respect to the cash collateral
12    motion.  Next up is the utilities motion.  We took the
13    utilities motion and heard argument this morning.
14        We trailed the decision with respect to the utilities
15    motion until we resolved the question of cash collateral and
16    debtor-in-possession financing.  As the debtor is now
17    authorized to cash collateral, USA's utility motion is also
18    granted.
19        Counsel, you will prepare -- debtors' counsel will prepare
20    the appropriate order and again will comply with local rules.
21        That takes us to debtor-in-possession financing.  The
22    debtor-in-possession financing motions are difficult.  The
23    debtors have proven that they are unable to obtain secured
24    credit under Section 503(b)(1).
25        As a result, the Court may authorize obtaining credit in

10

1    certain circumstances established by the code under 364(c)(2)

2    and (c)(3).

3        More particularly, the proof that was submitted in the

4    form of the declarations show that the debtor has talked to

5    numerous -- 20 or more -- proposed lenders who are not willing

6    to lend and the parent refused to lend interest free.  So the

7    question then becomes, well, can we, in fact, borrow money on a

8    postpetition basis.

9        Pursuant to 11, USC, Section 364(c)(2), you can borrow

10   money -- the debtors could -- secured by a lien on property of

11   the estate that is not otherwise subject to a lien.

12       The problem here is Cathay has a primary lien on all of the

13   assets, so that section isn't available to allow the debtors to

14   borrow money on a postpetition basis which leaves us only with

15   Section 364(c)(3), obtaining secured credit in the form of a

16   junior lien on property of the estate that is subject to a

17   lien.  That has to be the focus of what we're talking about in

18   this particular instance under the facts before the Court.

19       The elements with respect to obtaining Section 364(c)(3)

20   financing are as follows:  First, the relief sought must be

21   necessary, essential, and appropriate.  This is the debtors'

22   burden.

23       Based on the hearing this morning, it is not clear that

24   this is necessary.  And when I say this, I'm talking about

25   postpetition financing.

11

1       The Aurora project funds are not included in the budget.

2    As a result, this Court is unable to say that, in fact,

3    borrowing money is necessary if perhaps -- and the Court simply

4    doesn't know because there's a pilosity of evidence -- the

5    Aurora project funds are sufficient to provide financing for

6    some or all of the debtor's needs postpetition.  It is not

7    clear that it was appropriate either.  The budget isn't

8    accurate.

9       With the admission of the Aurora revenues, the Court is

10   left in a quandary.  And, candidly, I think counsel for

11   Cathay Bank said it best.  I'm confused.

12       Second, the best interest of the estate.  It may or may not

13   be in the best interest of the estate to allow borrowing under

14   the terms that are proposed by the debtor's motions here.

15       Again, it's almost impossible without knowing the financial

16   condition and wherewithal of Debtor Aurora to determine

17   whether, in fact, it's in the best interest of the estate.

18       Third, the terms and conditions are reasonable.  The

19   debtors did a good job here.  The terms are not unreasonable.

20   And, fourth, the loan agreement was negotiated in good faith

21   and at arm's length.

22       Here, the lien -- or excuse me -- the debtor in possession

23   proposed financing was negotiated with a parent who had

24   previously lent money to the subsidiary with no interest.  It's

25   not clear that the negotiations were at arm's length given the

1    current parent/subsidiary relationship.

2         It's also a question as to the good faith given the absence

3    of financial information with respect to Debtor Aurora and its

4    financial condition.

5         The four factors that I've identified for you are laid out

6    in in re World Com, Inc., (phonetic) 2002 Westlaw 1732646 at

7    star 3 (phonetic), out of the Southern District of New York

8    in 2002.  You can also look at Mid-State Raceway, Inc.,

9    323 Bankruptcy Reporter 40 at 60 out of the bankruptcy court

10   for the Northern District of New York in 2005.

11        As a result when you consider each of the four factors that

12   are required to authorize and permit there to be postpetition

13   financing pursuant to Section 364(c)(3), I find that the debtor

14   has failed to carry its burden of establishing that it is

15   entitled to such financing in this particular case.

16        This is an interim finding.  It is without prejudice to the

17   debtors' ability to renew the motion and seek a final order

18   with respect to debtor-in-possession financing at a future

19   time.  And if the debtor chooses to pursue such an avenue, the

20   March 10 hearing date would be available.

21        It leaves us then with the question regarding the motion

22   for a temporary restraining order.  Here the plaintiffs

23   requested that Defendant Cathay Bank be enjoined from

24   prosecuting a lawsuit denominated Case No. SC-121853 (phonetic)

25   -- I'll call that the state court action -- in the

1    Superior Court of California for the County of Los Angeles in

2    the Western District.

3        More specifically, the plaintiffs seek to prevent Cathay

4    from taking action against nondebtor guarantors on a debt owed

5    by the plaintiffs to Cathay.

6        The guarantors, Martifer Solar, Inc., and Martifer Solar

7    USA, are corporate parents and proposed postpetition are debtor

8    in possession lenders to the plaintiffs.

9        Essentially, Plaintiffs argue that the guarantors will not

10    be able to defend themselves in the state court action while

11    simultaneously providing financial support during the

12    plaintiffs' reorganization.

13        According to the plaintiffs' complaint and the TRO motion,

14    a prerequisite of the guarantors debtor-in-possession financing

15    is the granting of a stay of the state court action against

16    them.

17        Thus, the requested relief in the TRO motion is dependant

18    on the ruling regarding the plaintiffs' motion for an order

19    authorizing debtors to obtain postpetition financing.

20        Since the Court has denied the plaintiffs' postpetition

21    financing motions without prejudice, the Court will also deny

22    the TRO motion without prejudice.

23        More specifically, the Court finds the plaintiffs have

24    failed to carry their burden for a preliminary injunction.  The

25    standard for granting a preliminary injunction balances a

```
1    plaintiff's likelihood of success against the relative hardship
2    to the parties.
3         The Ninth Circuit has recognized two different sets of
4    criteria for preliminary injunctive relief.  Under the
5    traditional test, a plaintiff must show, first, a strong
6    likelihood of success on the merits, second, the possibility of
7    irreparable injury to Plaintiff if preliminary relief is not
8    granted, third, the balance of hardships favoring the
9    plaintiffs, and, fourth, the advancement of the public interest
10   in certain cases.
11        The alternative test requires a plaintiff demonstrate
12   either a combination of probable success on the merits and the
13   possibility of irreparable injury or that serious questions are
14   raised and the balance of hardships tips sharply in its favor.
15        These two formulations represent two points on a sliding
16   scale in which the required degree of irreparable harm
17   increases as the probability of success decreases.
18        They are not separate tests, but rather outer reaches of a
19   single continuum.  You can read Taylor versus Westly,
20   488 F .3d 1197 at 1200, Ninth Circuit, 2007.
21        As to the plaintiffs' likelihood or probability of success,
22   the record is deficient regarding successful reorganization.
23   The plaintiffs assert that they have one impaired consenting
24   creditor, General Freight Service, LLC, are planning to pay
25   Cathay in full, and are anticipating business that will allow
```

1  them to prosper in the future if given the opportunity.

2      These few assertions even if taken as true do not weigh in

3  favor of the plaintiffs when viewing the holes in the record.

4  At this juncture of the case -- and we are at the first-day

5  stage -- there are no schedules providing specific information

6  on the plaintiffs' finances to gain perspectives as to

7  liabilities and assets.

8      The only financial document the Court has on record is a

9  13-week cash flow projection for USA which does not include any

10  income from Aurora and shows a significant loss of

11  net-operating cash flow when eliminating the denied DIP

12  financing.

13      Based on the limited information available at this time,

14  the Court cannot begin to evaluate the chances of Plaintiffs'

15  successful reorganization and therefore the element of success

16  weighs against the requested relief.

17      Regarding the possibility of irreparable harm, there has

18  been insufficient showing of imminent action in the state court

19  action or steps to attach the assets of guarantors.

20      In addition, the plaintiffs' allegations that the

21  guarantors must choose between two forums is not an irreparable

22  harm because the Court has denied the DIP financing and so any

23  contribution to the plaintiffs would be voluntary.

24      Based on the available information, the status quo will

25  remain the same in the state court action for the time being.

16

1    Inconsistency of judgment has not been shown to be an issue

2    because Plaintiffs acknowledge that their obligation to Cathay

3    is 6.4 million dollars.  And even if held responsible for

4    indemnification, this is the amount that would be owed to the

5    guarantors.

6         The costs of the guarantors' defense in the state court

7    action have not been estimated or projected, and so the record

8    is deficient as to whether or not those expenses would result

9    in the defeat of a reorganization effort.  There's been no

10   demonstration of risk to property or rights that cannot be

11   remedied.

12        The balance of hardships does not favor the plaintiffs

13   because they have been permitted to use cash collateral

14   mitigating the risk of an imminent shutdown of operations.  The

15   plaintiffs have an opportunity to move for DIP financing

16   approval in the future if it becomes necessary.

17        Preventing Cathay from pursuing its rights against

18   nondebtor guarantors does create a hardship that the Court

19   acknowledges.  However, the public interest is served by

20   reorganization through maximized payment to creditors and

21   preservation of businesses and jobs.

22        Bankruptcy code protection, however, is extended to

23   debtors, and guarantors here are not debtors.  The plaintiffs'

24   argument for preventing Cathay from pursuing its rights against

25   the nondebtor guarantors is not persuasive.  This factor is

1    neutral in the preliminary-injunction analysis.

2         The question presented through the TRO motion are not

3    serious in that they are common in bankruptcy, funding issues

4    and litigation to enforce debts.  The balance of hardships as

5    previously noted does not tip strongly in favor of the

6    plaintiffs.

7         When viewed as a whole under the four-factor test, the

8    plaintiffs have not met their burden at this juncture for a

9    preliminary injunction.

10        In addition, considering the sliding scale of harm and

11   success or serious questions of hardships a temporary

12   restraining order enjoining the bank is not warranted at this

13   time.

14        Therefore, the TRO motion is denied without prejudice, and

15   that is the Court's ruling with respect to the final matter

16   before it.  Those will be the Court's orders.

17        With respect to the orders regarding debtor-in-possession

18   financing and the TRO, the way that we do it in this district,

19   Counsel, is the prevailing party prepares the proposed orders.

20        As a result with respect to the motions for

21   debtor-in-possession financing and for the TRO, counsel for

22   Cathay Bank is directed to draft the appropriate orders, comply

23   with the local rules regarding circulation, and upload them for

24   the Court to enter.

25        With that, there being nothing further pending before the

1    Court at this point in time, I think we've made it all the way

2    through all of the first-day motions that were filed within the

3    last roughly 96 hours in this district.

4        The parties at this point in time should have a sense of

5    the direction that the case can go and whether or not they need

6    to take appropriate action in the future.

7        I'm sure you know how to find me, and I'm sure you know how

8    to get the Court's attention in the event that there are

9    subsequent hearings that we need to address.

10              MR. WADDELL:  Question --

11              THE COURT:  Counsel?

12              MR. WADDELL:  -- your Honor.  Did the Court -- well,

13   the Court didn't make any -- or read any finding --

14              THE COURT RECORDER:  I'm sorry.  Would you state your

15   appearance, please.

16              MR. WADDELL:  Oh, sorry.  Reed Waddell,

17   Franzel Robins Bloom & Csato on behalf of Cathay Bank.  Did the

18   Court draw any distinction between the money that was deposited

19   in the California Bank & Trust account which was a claim of not

20   property of the estate and the collections that come in for

21   legacy collections or otherwise to the debtor?

22              THE COURT:  No.

23              MR. WADDELL:  Thank you.

24              THE COURT:  Anything further?  Ms. Axelrod.

25              MS. AXELROD:  Your Honor, I promised you earlier

1    today a preview of what would be coming forward prior to the

2    next omnibus hearing date that the debtor finds the need to

3    file.

4         One will be, you know, either a renewed motion or a motion

5    for reconsideration to set forth the Aurora evidence for the

6    Court.

7         And we apologize and it will be, of course, you know, in

8    the moving papers, but it did not push the needle in

9    materiality, so we'll get that for the Court.

10              THE COURT:  Okay.

11              MS. AXELROD:  I did have one question regarding the

12   DIP financing for USA because it was filed in that separate

13   case and just adopt the findings as to Aurora regarding the

14   necessity that the Court made?

15              THE COURT:  Run that by me again, Counsel.  I'm

16   sorry.  I lost track of what you were trying to get you me to

17   do for you.

18              MS. AXELROD:  Sure, your Honor.  When you were

19   reading your findings when it came to the DIP financing --

20              THE COURT:  Um-h'm.

21              MS. AXELROD:  -- the Court had mentioned Aurora

22   specifically and that lack of financial information dealing

23   with Aurora but had not mentioned regarding the USA.  And just

24   for my clarity that it was -- should I adopt it to both of the

25   cases, your Honor?

```
1              THE COURT:  Yes.

2              MS. AXELROD:  And then will be coming up, your Honor,

3    is the wage motion since that is a necessity that we will be

4    filing, and we anticipate to file that in the next day.

5              THE COURT:  Okay.

6              MS. AXELROD:  And then we also have for new

7    construction we'll be filing a procedures motion on how to deal

8    with contracts going forward and doing it more as a global

9    procedure to be approved by the Court and for parties in

10   interest to weigh in.

11             THE COURT:  Very well, Counsel.  Thank you for the

12   advance sort of foreshadowing.  I think that's helpful.  We'll

13   plan accordingly, and we'll be prepared in order to address the

14   needs of the debtors and parties in interest as those matters

15   come up.

16        We're at first-day motions here.  I think we're at a point

17   now where probably things will become a little more clear with

18   respect to what needs to be done, but I'll leave that in your

19   capable hands.

20             MS. AXELROD:  Thank you, your Honor.

21             THE COURT:  Counsel?

22             MR. WADDELL:  Your Honor, at the risk of asking for

23   an advisory opinion, do I need to file a pro hac vice

24   application for the adversary?  Do you know?  Does anybody here

25   know?
```

21

1        THE COURT:  Counsel, the answer is is that if you
2   were admitted in the main case --
3        MR. WADDELL:  That's what I thought.
4        THE COURT:  -- I am confident that there will not be
5   a problem with respect to appearing in the adversary.  That
6   having been said, out of an abundance of caution just do it.
7   It's easy and it will be granted in the ordinary course as the
8   one in the main case was I'm sure.
9        MR. WADDELL:  That's fine.  Thank you, your Honor.
10       THE COURT:  Any other matters pending before the
11  Court at this time?  Seeing none, we're adjourned.
12       THE CLERK:  Thank you, your Honor.
13     All rise.
14     (Court concluded at 03:28:40 p.m.)
15
16
17
18
19
20
21
22
23
24
25

22

1          I certify that the foregoing is a correct transcript

2     from the electronic sound recording of the proceedings in

3     the above-entitled matter.

4

5

6     /s/ Jennie Ellis                          01/30/14

7     Jennie Ellis, Transcriptionist               Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 3

1

2

3

4

5

6

7

8   MICHAEL GERARD FLETCHER
    California State Bar No. 070849
9   REED S. WADDELL
    California State Bar No. 106644
10  **FRANDZEL ROBINS BLOOM & CSATO, L.C.**
    6500 Wilshire Boulevard, Seventeenth Floor
11  Los Angeles, California  90048-4920
    Telephone:  (323) 852-1000
12  Facsimile:  (323) 651-2577
    E-Mail:  rwaddell@frandzel.com
13            mfletcher@frandzel.com
    and
14  NATALIE M. COX, ESQ.
    Nevada Bar No. 007662
15  RANDOLPH L. HOWARD, ESQ.
    Nevada Bar No. 006688
16  **KOLESAR & LEATHAM**
    400 South Rampart Boulevard, Suite 400
17  Las Vegas, Nevada  89145
    Telephone:  (702) 362-7800
18  Facsimile:  (702) 362-9472
    E-Mail:  ncox@klnevada.com
19            rhoward@klnevada.com

20  Attorneys for Creditor
    CATHAY BANK
21                    **UNITED STATES BANKRUPTCY COURT**

22                           **DISTRICT OF NEVADA**

23  IN RE:                                    Case No. BK-S-14-10355-abl
                                              and BK-S-14-10357-abl
24  MARTIFER AURORA SOLAR, LLC, a
    Nevada limited liability company,         Jointly Administered under
25                                            Case No. BK-S-14-10355-abl
    ☒ Affects Martifer Aurora Solar, LLC
26  ☒ Affects Martifer Solar USA, Inc.        Chapter 11
    ☐ Affects All Debtors
27                                                    **[PROPOSED] ORDER RE:**

28  1580756_2 (7479-14)               - 1 -

*[Proposed] Order Re: Debtors' Motion for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b)
and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate Protection; (II) Granting Related Relief; and (III)
Scheduling Final Hearing*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL: (702) 362-7800 / FAX: (702) 362-9472

1
2
3
4
5
6

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND FED. R. BANKR. P. 4001(b) and 4001(d): (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION; (III) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING**

7    The Court, having reviewed and considered Debtor Martifer Aurora Solar, LLC's Motion

8   for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P.

9   4001(b) and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate

10   Protection; (III) Granting Related Relief; and (III) Scheduling Final Hearing [Dkt. 25] and

11   Debtor Martifer Solar USA, Inc.'s Motion for Interim and Final Order Pursuant To 11 U.S.C. §§

12   361, 362 and 363 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing Debtors To Use

13   Cash Collateral and Provide Adequate Protection; (III) Granting Related Relief; and (III)

14   Scheduling Final Hearing [Dkt. 24] (collectively the "Motions"), all other papers and pleadings

15   and evidence submitted in connection with the Motions, the oral arguments of counsel at the

16   hearing held on January 28, 2014, with appearances as noted in the record and with all other

17   findings set forth in the record at the hearing incorporated herein, pursuant to Fed. R. Civ. P. 52,

18   made applicable to these proceedings by Fed. R. Bankr. P. 7052; and for good cause appearing

19   therefore:

20   **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motions are

21   granted in part, on an interim basis, pending a final hearing of the Court and with the following

22   restrictions:

23    1.    The final hearing shall be held on March 10th, 2014, at 9:30 a.m.;

24    2.    The debtors' authorization to use cash collateral pursuant to this interim order

25   shall expire on March 10, 2014;

26    3.    The amount of cash collateral authorized to be used by the Debtors during the

27   interim period shall not exceed the total operating disbursements in weeks 2 through 8 of the

28   1580756_2 (7479-14)                                    - 2 -

debtor's 13-week cash flow projection budget found at [Dkt. 24, Exhibit 2 and Dkt. 25, Exhibit 2], a true and correct copy of which is attached hereto as **Exhibit "A"** and incorporated herein by reference ("Budget");

4.    As partial adequate protection for the use of Cathay Bank's cash collateral, Cathay Bank shall be granted a replacement lien in the Debtor's post-petition assets to secure any diminution in value of Cathay Bank's secured claim caused by the Debtors' use of Cathay Bank's cash collateral in accordance herewith; the replacement liens afforded to Cathay Bank shall not extend to avoidance actions;

5.    As partial adequate protection for the use of Cathay Bank's cash collateral, Cathay Bank shall be granted a super-priority administrative claim as additional security for any diminution in value of Cathay Bank's secured claim cause by the Debtor's use of Cathay Bank's cash collateral in accordance herewith;

6.    As partial adequate protection for the use of Cathay Bank's cash collateral, the Debtors shall make the interest payments to Cathay Bank set forth in the Budget which are reflected as due during weeks 2 – 8 of the Budget;

7.    Neither the debtor nor any creditor committee is restricted from using cash collateral to challenge perfection, validity, priority, amount, or enforceability of any secured claim; and

8.    All findings of fact and conclusions of law set forth in the record with respect to this interim order are interim and all parties shall have the right to challenge these finding and conclusions for purposes of the hearing on the final order.

**IT IS SO ORDERED.**

Submitted by,

By:_____

MICHAEL GERARD FLETCHER
    (CA State Bar No. 070849)
mfletcher@frandzel.com
REED S. WADDELL (CA State Bar No. 106644)
rwaddell@frandzel.com

1580756_2 (7479-14)                - 3 –

*[Proposed] Order Re: Debtors' Motion for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate Protection; (II) Granting Related Relief; and (III) Scheduling Final Hearing*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL.: (702) 362-7800 / FAX: (702) 362-9472

1  **FRANDZEL ROBINS BLOOM & CSATO, L.C.**
   6500 Wilshire Boulevard, Seventeenth Floor
2  Los Angeles, California 90048-4920
   and
3  NATALIE M. COX, ESQ.
   Nevada Bar No. 007662
4  RANDOLPH L. HOWARD, ESQ.
   Nevada Bar No. 006688
5  **KOLESAR & LEATHAM**
   400 South Rampart Boulevard, Suite 400
6  Las Vegas, Nevada 89145

7  *Attorneys for Creditor*
   *Cathay Bank*
8

9  APPROVED/DISAPPROVED:                    APPROVED/DISAPPROVED:

10

11 By:_____    By: */s/ J. Michal Bloom, Esq.*
12   BRETT A. AXELROD, ESQ.             J. MICHAL BLOOM, ESQ.
     Nevada Bar No. 5859                Nevada Bar No. 004706
13   MICAELA MOORE, ESQ.               **UNITED STATES DEPARTMENT OF**
     Nevada Bar No. 9676               **JUSTICE**
14   **FOX ROTHSCHILD LLP**            Office of the United States Trustee
15   3800 Howard Hughes Parkway, Suite 500    300 Las Vegas Boulevard, So., Suite 4300
     Las Vegas, Nevada 89169           Las Vegas, Nevada 89101
16   Telephone: (702) 262-6899
     Facsimile: (702) 597-5503
17                                      *Attorneys for the United States Trustee*
                                        *for Region 17, Tracy Hope Davis*
18   *[Proposed] Counsel for Martifer Solar*
     *USA, Inc.and Martifer Aurora Solar, LLC*
19

20 APPROVED/DISAPPROVED:

21

22 By:_____
     Samuel A. Schwartz, Esq.
23   Nevada Bar No. 010985
     The Schwartz Law Firm, Inc.
24   6623 Las Vegas Boulevard, South,
     Suite 300
25   Las Vegas, Nevada 89119

26
   *Attorneys for Interested Party Martifer*
27 *Solar, Inc.*

28 1580756_2 (7479-14)                  - 4 -

*[Proposed] Order Re: Debtors' Motion for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b)*
*and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate Protection; (II) Granting Related Relief; and (III)*
*Scheduling Final Hearing*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL: (702) 362-7800 / FAX: (702) 362-9472

LR 9021(c) Certification:

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____    The court has waived the requirement set forth in LR 9021(b)(1).

_____    No party appeared at the hearing or filed an objection to the motion.

___X___    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

J. Michal Bloom, Esq.                      Samuel A. Schwartz, Esq.
*Trial Attorney for Acting U.S. Trustee,*   The Schwartz Law Firm, Inc.
*Tracy Hope Davis*                          *Attorneys for Interested Party Martifer Solar, Inc.*

Micaela Rustia Moore, Esq.
Fox Rothschild LLP

*[Proposed] Counsel for Martifer Solar USA, Inc. and Martifer Aurora Solar, LLC*

_____    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

### # # #

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL: (702) 362-7800 / FAX: (702) 362-9472

*[Proposed] Order Re: Debtors' Motion for Interim and Final Order Pursuant To 11 U.S.C. §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing Debtors To Use Cash Collateral and Provide Adequate Protection; (II) Granting Related Relief; and (III) Scheduling Final Hearing*