BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar USA, Inc.*

Electronically Filed February 13, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,<br><br>☐ Affects Martifer Aurora Solar, LLC<br>☐ Affects Martifer Solar USA, Inc.<br>☒ Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under<br>Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**DECLARATION OF KLAUS BERNHART IN SUPPORT OF APPLICATIONS FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF PROFESSIONALS EFFECTIVE AS OF THE PETITION DATE**<br><br>Hearing Date:    March 10, 2014<br>Hearing Time:   9:30 a.m. |

KLAUS BERNHART, being duly sworn, hereby deposes and declares under penalty of perjury:

1.      I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so.

2.      I am the Chief Financial Officer of Martifer Solar USA, Inc. ("Martifer USA"). Martifer USA holds no less than 99% of the membership interests in Martifer Aurora Solar, LLC ("Aurora"). Martifer USA and Aurora are the debtors and debtors in possession (collectively, the "Debtors"), in the

above captioned chapter 11 cases (the "Chapter 11 Cases"). I am a Manager of Aurora. I am authorized to submit this declaration in support of the following applications:[1]

      a.      Application for Order Authorizing Employment and Retention of Armory Consulting Co. as Financial Advisor to Debtors Effective as of the Petition Date ("Armory Application").

      b.      Application for Order Authorizing Employment and Retention of Fox Rothschild LLP as Debtors' Counsel *Nunc Pro Tunc* to the Petition Date ("Fox Application").

      c.      Application for Order Authorizing Employment and Retention of Foley Hoag LLP as Special Massachussetts Litigation Counsel *Nunc Pro Tunc* to the Petition Date ("Foley Hoag Application").

      d.      Application for Order Authorizing Employment and Retention of Foley & Lardner LLP as Special Solar Counsel *Nunc Pro Tunc* to the Petition Date ("Foley & Lardner Application").

      e.      Application for Order Authorizing Employment and Retention of Wolf, Rifkin, Shapiro, Schulman & Rabkin LLP as Special California Litigation Counsel *Nunc Pro Tunc* to the Petition Date ("Wolf Rifkin Application").

3.      In my capacity as Chief Financial Officer of Martifer USA and Manager of Aurora, and in conjunction with the efforts of the Debtors' other respective officers, executives and senior management, I am involved in a management role on a day-to-day basis over all aspects of the Debtors' affairs, including business operations, strategic planning, financial reporting, human resources, legal affairs and other management activities, as well as the Debtors' efforts to address their current financial difficulties.

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the respective applications.

4.  As a consequence, I review and work extensively with the books and records of the Debtors, including their respective business plans, financial statements and projections, business analyses and reports, contracts and other legal documents, notes and correspondence and similar items. On a regular basis, I witness, participate in or have had reported to me discussions and negotiations with vendors, other creditors and stakeholders of the Debtors, and have worked closely with personnel from all aspects of the Debtors' business operations.

5.  Based on all of the foregoing, I have developed an intimate familiarity with: (a) the Debtors' books and records, which are maintained in the ordinary course of business under my supervision and control (and under the control of officers of the Debtors' respective executive and senior management); (b) the Debtors' respective business and financial histories, and their current business and financial situations; (c) the financial and operation details of the Debtors' business operations; and (d) the solar panel and renewable energy industry, generally.

6.  Except as otherwise stated herein, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

7.  On January 21, 2014 (the "Petition Date"), the Debtors initiated the Chapter 11 Cases by concurrently filing voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

8.  The Debtors intend to operate their businesses and manage their properties as debtors-in-possession under section 1107(a) and 1108 of the Bankruptcy Code.

9.  No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.

10. The factual background relating to the Debtor's commencement of the Chapter 11 Case is set forth in detail in the Omnibus Declarations of Klaus Bernhart in Support of First Day Motions [Aurora Dkt ##15, 40] and the Omnibus Declarations of Klaus Bernhart in Support of First Day

Motions [Martifer USA Dkt ##15, 40] (together, the "Omnibus Declarations"), which are incorporated herein by this reference.

**EMPLOYMENT OF ARMORY CONSULTING CO. AS FINANCIAL ADVISOR TO DEBTOR**

11.     Debtors have determined that they require financial and restructuring advisory services. On or about November 14, 2013, Debtors duly selected and engaged Armory to provide such financial and restructuring advisory services.

12.     Debtors submit that it is necessary to employ Armory as financial advisor in order to ensure that the interests of Debtors are adequately represented in an efficient and effective manner. Debtors believe that, in light of Armory's involvement in corporate restructuring in many similar matters and their provision of prepetition services to Debtor, Armory is best suited to continue to provide financial advisory services to Debtors, and Debtors will rely on Armory in that regard.

13.     Debtors selected Armory because of its excellent qualifications and its reasonable fee structure.

14.     In providing prepetition services to Debtors in connection with this matter, Armory's professionals have worked closely with Debtors' management and other professionals and have become well-acquainted with Debtors' debt structure, creditors, businesses and operations, and other related matters.

15.     Accordingly, Armory has developed significant relevant experience and expertise regarding Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.

16.     The Debtors believe this institutional experience and knowledge will be valuable to the Debtors in efforts to reorganize and will reduce the cost of administration of its estate.

17.     In anticipation of the commencement of these Chapter 11 Cases, Armory, in its capacity as restructuring advisor, advised Debtors with respect to all of the documentation necessary for an early

Chapter 11 filing and a seamless transition into bankruptcy. Armory's pre-petition involvement has provided Debtors with continuity throughout the Chapter 11 process.

18. Armory has assisted Debtors in connection with their restructuring efforts through, among other things, the following:

    (a) Acted as a liaison between Debtors and their secured lender, including:

        i. Negotiating any new terms and conditions proffered for the loan balance;

        ii. Providing historical information or reports;

        iii. Developing financial projections, variance analysis, or other reports to support negotiating with its secured lender;

        iv. Engaging in any other dialogue or meetings as requested by Debtors or their secured lender; and

    (b) Assisted with refinancing the loan balance;

    (c) Evaluated and identified Debtors' cost structure for potential expense savings, including:

        i. Leases and contracts;

        ii. Capital expenditures budgeting;

        iii. Alternative options for any critical vendors; and

        iv. Other key administrative costs.

    (d) Provided additional services as mutually agreed upon in writing between Debtors and Armory.

19. An experienced restructuring advisor such as Armory fills a critical need that complements the services offered by Debtors' other restructuring professionals. Debtors believe they require the services of a capable and experienced advisory firm such as Armory because, *inter alia*,

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Armory's resources and capabilities, together with its experience advising Debtors prepetition, are crucial to Debtors' success in these Chapter 11 Cases.

20. Accordingly, Armory is well qualified and positioned to provide the services being sought by Debtors and have developed significant relevant experience and knowledge that will assist in dealing with potential issues that may arise in context of Debtors' Chapter 11 Cases. Debtors respectfully submit that the employment and retention of Armory is in the best interests of Debtors and their estates.

21. As more fully set forth in the Armory Engagement Agreement, Debtors propose to employ and retain Armory to render all necessary financial and restructuring advisory services to Debtors that may be required, including, but not limited to:

    (a)    assist with the scope of services described in paragraph 1 of the Original Agreement, as applicable;

    (b)    assist with developing a plan of reorganization or liquidation;

    (c)    manage and oversee asset sales, if any;

    (d)    manage Debtors' reporting requirements pertaining to the Bankruptcy Court and the U.S. Trustee's office;

    (e)    serve as a liaison with Debtors' creditors or their representatives;

    (f)    provide testimony before the Bankruptcy Court on matters within Armory's expertise and consistent with Armory's scope of services herein;

    (g)    oversee analysis of creditors' claims;

    (h)    assist in the evaluation and analysis of avoidable actions, including fraudulent transfers and preferential transfers;

    (i)    providing guidance in developing and updating of cash flow budgets;

  (j) evaluate the possible rejection of any executory contracts and unexpired leases; and

  (k) assist in such matters as may be mutually agreed upon in writing between Debtors and Armory.

22. In light of Armory's expertise in all of these areas, Armory is well-qualified to perform these services and assist Debtors in these Chapter 11 Cases.

23. To the best of Debtors' knowledge, Armory is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and does not hold or represent an interest materially adverse to Debtors' estates.

24. Armory has informed Debtors that, except with respect to its proposed representation of Debtors and as may be set forth herein, the Armory Application and the Wong Verified Statement, Armory and those of its personnel to be employed by the Debtors:

  (a) are not a creditor, equity holder or insider of Debtors;

  (b) are not, and were not, within the two years before the petition date, directors officers or employees of the Debtors;

  (c) does not hold or represent an interest adverse to Debtors;

  (d) is a "disinterested person," as defined by section 101(14), modified by section 1107(b), and used in section 328(c) of the Bankruptcy Code;

  (e) does not represent any other creditor, party in interest, or entity in these Chapter 11 Cases; and

  (f) have no connection with Debtors, their creditors, or other parties in interest in these Chapter 11 Cases, except as set forth in the Wong Verified Statement.

<u>provided, however</u> that Armory has billed the Debtors and received payments from Debtors prepetition in respect of prepetition services.

25.     Armory's willingness to continue with this engagement to advise and assist Debtors is contingent upon its ability to be retained in accordance with its customary terms and conditions of employment, including without limitation the indemnity provisions stated in the Armory Engagement Agreement, and compensation for its services and reimbursement for the expenses it incurs in accordance with its customary billing practices.

26.     Debtors seek to employ and retain Armory on an hourly basis at rates consistent with those Armory routinely charges in comparable matters. Specifically, Armory's current and customary rates to be rendered in these Chapter 11 Cases are as follows:

（a）    James Wong, Principal           $375.00

（b）    Senior Consultants              $185.00

27.     Prior to the Petition Date, Debtors provided Armory with a retainer in the amount of $7,500.00 per month, as payment for Debtors' prepetition services. A total of $22,500.00 in fees for three months of services rendered, and $517.43 in reimbursable expenses deemed earned and applied to prepetition fees and expenses incurred by Armory. There is no balance of any unearned retainers.

28.     Debtors respectfully submit that the proposed fee arrangement with Armory is (i) similar to fee arrangements that have been authorized in other Chapter 11 cases in which Armory has rendered services, (ii) reasonable in light of industry practice, is similar to market rates both in and out of Chapter 11 proceedings, (iii) reasonable in light of Armory's experience in reorganizations, and (iv) reasonable in light the scope of work to be performed pursuant to its retention. Debtors believe that, given the nature of the financial and restructuring advisory services to be provided by Armory, the proposed compensation arrangement is both fair and reasonable.

29.     As set forth in the Armory Engagement Agreement and subject to the terms and conditions therein, Debtors have agreed to indemnify Armory in accordance with the indemnity provisions set forth therein (the "Indemnity Provisions") except to the extent of negligence or the wilful misconduct of Armory. Debtors believe the Indemnity Provisions are customary and reasonable terms

for Armory's engagement. Unlike the market for other professionals that Debtors may retain, indemnification is a standard term of the market for financial advisors. Armory and Debtors believe that the Indemnity Provisions are comparable to those generally obtained by financial advisory firms and for comparable engagements, both in and out of court. Accordingly, Debtors request that the Court approve the Indemnity Provisions.

30. Debtors believe the compensation contained in the Armory Engagement Agreement and the Indemnity Provisions are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The retention of Armory is a sound exercise of the Debtors' business judgment. The compensation in the Armory Engagement Agreement and the Indemnity Provisions adequately reflect: (a) the nature of the services to be provided by Armory; and (b) compensation structures and indemnification provisions typically utilized by Armory and other financial advisory and investment banking firms, which are generally compensated on a transactional basis. In particular, Debtors believe the proposed compensation creates a proper balance between the hourly rates and a deferred fee based on the consummation of plan of reorganization. Moreover, Armory's substantial experience with respect to financial advisory services, coupled with the nature and scope of work already performed by Armory before the Petition Date, further suggest the reasonableness of the Armory Engagement Agreement and Indemnity Provisions.

**EMPLOYMENT OF FOX ROTHSCHILD LLP AS DEBTORS' COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE**

31. Debtors are seeking to retain Fox Rothschild *nunc pro tunc* to the Petition Date, as counsel for the Debtors in connection with the commencement and prosecution of these Chapter 11 Cases.

32. Debtors selected Fox Rothschild as their counsel because of Fox Rothschild's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code and familiarity with the facts and circumstances surrounding these Chapter 11 Cases given Fox Rothschild's prepetition representation of Debtors as described in

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

paragraphs 37 and 38 below.

33. Debtors seek Court approval to retain Fox Rothschild at the expense of Debtors' estates to provide the legal services described herein that will be required to represent Debtors in these Chapter 11 Cases.

34. Accordingly, Debtors believe that Fox Rothschild is both well qualified and able to represent their interests in these Chapter 11 Cases in an efficient and timely manner and that such representation is in the best interests of Debtors, their estates, and constituents.

35. Debtors anticipate filing applications to retain various other estate professionals as special counsel. Rather than resulting in extra expense to Debtors' estates, it is anticipated that the efficient coordination of efforts of Debtors' attorneys and other professionals will greatly add to the progress and efficient administration of these Chapter 11 Cases.

36. The Debtors may, from time to time, request that Fox Rothschild undertake specific matters beyond the scope of the responsibilities set forth in the Fox Application. Should Fox Rothschild agree, in its sole discretion, to undertake any such specific matters, the Debtors seek authority to employ Fox Rothschild for such matters, in addition to those set forth in the Fox Application, without further order of this Court.

37. The Debtors require knowledgeable counsel to render these essential professional services. As described below, Fox Rothschild has substantial expertise in each of these areas. As a result, Fox Rothschild is well-qualified to perform these services and represent Debtors' interests in these Chapter 11 Cases.

38. Prior to the Petition Date, Debtors retained Fox Rothschild to advise them on corporate, litigation and restructuring matters. Among other things, Fox Rothschild assisted Debtors in pursuing its legal rights and remedies to recover certain receivables and was recently awarded $1.7 million after binding arbitration to recover a receivable of equal amount, advised Debtors in connection with various labor and employment issues, and engaged in discussions and negotiations with key stakeholder positions as part of restructuring efforts. Therefore, Fox Rothschild is intimately familiar with Debtors, their business operations and their financial condition. As such, Fox Rothschild is uniquely qualified to represent Debtors' interests with respect to Debtors' businesses and financial affairs and the potential

legal issues that may arise in these Chapter 11 Cases.

39. Fox Rothschild is well suited for the type of representation required by Debtors. Fox Rothschild has a national practice and has experience in all aspects of the law that may arise in these Chapter 11 Cases including, among others, bankruptcy, financial restructuring, corporate, labor and employment, tax and litigation matters.

40. A summary of the qualifications and experience of those attorneys who are expected to render services to Debtors are attached to the Axelrod Verified Statement as **Exhibit 3**. Fox Rothschild is well qualified to represent Debtors.

41. Accordingly, Debtors believe that the appointment of Fox Rothschild as Debtor's counsel is in the best interest of Debtors and their estates. To the best of Debtors' knowledge, information and belief, other than as may be set forth in the Fox Application or in the Axelrod Verified Statement and exhibits attached thereto, Fox Rothschild does not hold or represent any interest adverse to Debtors or Debtors' estates, and Fox Rothschild is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and used in Bankruptcy Code section 327(a).

42. Since March 2012, Fox Rothschild provided Debtors with a variety of legal services. Significant corporate, labor and employment, litigation, arbitration and secondment services were provided (collectively, the "General Services"), as well as significant services surrounding and relating to Debtors' restructuring efforts and preparation for the chapter 11 filings (collectively, "Restructuring Services"). Fox Rothschild was paid for these services in the ordinary course of business. According to Fox Rothschild's books and records, since March 2012 and prior to the Petition Date, Fox Rothschild received $1,019,274.82 from Debtors or its parent, Martifer Solar, Inc. ("US Parent"), on behalf of Debtors. Approximately $177,473.47 of that amount was in connection with the Restructuring Services. In the 90 days prior to the Petition Date, Fox Rothschild received $200,000 from the US Parent, on behalf of Debtors, in connection with the General Services. Over the course of its employment prior to the Petition Date, Fox Rothschild wrote off $101,862.50 in fees and costs in the exercise of its billing discretion.

43. On January 2, 2014, the US Parent, on behalf of Debtors, provided Fox Rothschild with

an advance payment of $350,000 to establish a retainer to pay for legal services rendered or to be rendered in connection with the Restructuring Services.  Additionally, Debtors provided Fox Rothschild with the filing fees of $1,213.00 each to file these Chapter 11 Cases.

44. Debtors have agreed to pay Fox Rothschild's professional fees on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm.

45. In addition, Debtors understand that Fox Rothschild, from time to time, utilizes the services of outside attorneys employed on a contract basis.  Debtors understand that Fox Rothschild anticipates continuing to utilize the services of the Schultz Firm on the same contract basis in connection with its representation of Debtors in these Chapter 11 Cases.

**EMPLOYMENT OF FOLEY HOAG LLP AS SPECIAL LITIGATION COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE**

46. Foley Hoag has been counsel for Martifer USA since September 2013 and has handled various litigation matters pending in Massachusetts.

47. As of the Petition Date, Foley Hoag was handling seven pending actions for Martifer USA.  Foley Hoag is aware of the factual and legal issues in each of the pending actions and, if necessary, is the firm best suited to handle any issues related therein.  The background related to the pending litigation are convoluted and complex.  The events giving rise to the litigation evolved over the course several years and are, in fact, continuously evolving.  As such, Foley Hoag possesses an understanding of the pending actions that cannot be duplicated without considerable time and expense to Martifer USA's estate.

48. Foley Hoag has represented Martifer USA in matters relating to *EPG Solar, LLC v. Bith Energy, Inc., Martifer Solar USA, Inc., Martifer Solar, SA and Washington Gas Energy Systems, Inc.*, Middlesex Superior Court No. MICV2013-03990 (the "EPG Litigation").  The EPG Litigation concerns four solar projects in Massachusetts, located in Brookfield, Maynard, Orange and Southbridge (collectively, the "Projects").  Generally, the developer for the projects, EPG Solar, LLC ("EPG"), brought together three other parties to this transaction: (a) Washington Gas Energy Systems, Inc. ("WGES"), to serve as the final purchaser of the projects; (b) Bith Energy, Inc. ("Bith"), to serve as the consultant for the projects under direct contract with WGES; and (c) Martifer USA, to serve as

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

the turn-key contractor for the projects under direct contract with Bith. The allocation of proceeds as between Bith, EPG, and Martifer USA is the subject of the dispute; the allocation of these proceeds is made more difficult by the fact that no complete set of documents was executed by all parties related to allocation of proceeds. Moreover, the allocation of proceeds depends on the project development and construction costs, which costs were generally to be determined only after a final cost audit. The course of the parties' dealings throughout the construction and development to these projects has given rise to multiple alleged claims by and among the parties.

49. In connection with an injunction issued by the Middlesex Superior Court in the EPG Litigation, payments to subcontractors on the Projects were frozen, and certain subcontractors placed liens on project properties and/or filed lawsuits against Martifer USA as a result (collectively, the "Related Matters;" the EPG Litigation and the Related Matters, collectively, the "Pending Litigation"). Foley Hoag has represented Debtor in the Related Matters as well.

50. Foley Hoag has acted as counsel for Martifer USA in the EPG Litigation as well as the following Related Matters, each of which are currently pending:

   a. *Northern Land Clearing v. Martifer Solar USA, Inc., et al.*, Middlesex Superior Court No. MICV2013-04673;

   b. *Northern Land Clearing v. Martifer Solar USA, Inc., et al.*, Worcester Superior Court No. WOCV2013-01931;

   c. *Patriot Solar Group, LLC v. Martifer Solar USA, Inc., et al.*, Worcester Superior Court No. WOCV2013-02126;

   d. *R B Arello, Inc. v. Martifer Solar USA, Inc., et al.*, Worcester Superior Court No. WOCV2013-02371.

In each of the foregoing Related Matters, Foley Hoag has filed Suggestions of Bankruptcy.

51. Additionally, there were two other suits filed by Professional Electrical Contractors of CT, Inc. ("PEC") which did not require an answer because PEC was paid by third parties and the cases were dismissed with prejudice pursuant to a stipulation. Foley Hoag has recorded the dissolution of PEC's liens.

52. Foley Hoag has also filed, on Martifer USA's behalf, various lien documents in connection with all of the Projects. In order to preserve those liens, Martifer USA will need to

commence legal action by April 2, 2014 for the Maynard project and by April 4, 2014 for the Southbridge, Orange and Brookfield projects.

53. Although the Pending Litigation are currently stayed, Martifer USA and Foley Hoag anticipate representation in connection with instituting actions to preserve the liens on the Projects and representation in any other matters that may arise from or relate to the EPG Litigation. If EPG were allowed to move forward with its claims against the other parties, there may be issues relating to discovery from Martifer USA.

54. Accordingly, Martifer USA believes that the appointment of Foley Hoag as Martifer USA's special Massachusetts litigation counsel is in the best interest of Martifer USA and its estate.

55. Martifer USA is seeking to retain Foley Hoag *nunc pro tunc* to the Petition Date. Such relief is warranted by the extraordinary circumstances presented by this case. Foley Hoag prepared and filed suggestions of bankruptcy in each of the Pending Litigation, effectively staying such actions so as to provide Martifer USA with the breathing room to reorganize its business. Foley Hoag's services have also been necessary to preserve Martifer USA's liens. Accordingly, *nunc pro tunc* employment is appropriate under the circumstances and should be approved.

56. Martifer USA proposes to employ and retain Foley Hoag as special litigation counsel to Martifer USA in with respect to the Pending Litigation. Specifically, Debtor anticipates Foley Hoag will represent it in connection with instituting actions to preserve the liens on the Projects and representation in any other matters that may arise from or relate to the EPG Litigation, including any claims, counterclaims or third party claims of Martifer USA. Foley Hoag may also assist Martifer USA and Martifer USA's reorganization counsel, Fox Rothschild LLP, with examining and potentially negotiating the claims against the estate related to the EPG Litigation.

57. In light of Foley Hoag's expertise in this area and prior experience with Martifer USA, Foley Hoag is well-qualified to perform the requested services and assist Martifer USA in the capacity outlined herein.

58. The scope of Foley Hoag services may be modified from time to time, provided that Foley Hoag and Martifer USA mutually agree in writing to any such modification and corresponding change in the fee structure.

ACTIVE 24649596v1 02/12/2014        14

59.     Martifer USA respectfully submits that the proposed fee arrangement with Foley Hoag is reasonable in light of (i) industry practice and similar to market rates both in and out of Chapter 11 proceedings, (ii) Foley Hoag's experience in general and with Martifer USA's business, in particular, and (iii) work to be performed pursuant to its retention.  Martifer USA believes that, given the nature of the legal services to be provided by Foley Hoag, the proposed compensation arrangement is both fair and reasonable.

**EMPLOYMENT OF FOLEY & LARDNER LLP, AS SPECIAL SOLAR COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE**

60.     Prior to the Petition Date, Martifer USA retained Foley & Lardner to assist Martifer USA with legal issues arising in connection with its solar energy business.  Foley & Lardner has since represented Martifer USA in its solar operations, including, without limitation, project development, tax and regulatory matters specific to renewable energy projects (for example, receipt of Federal cash grants in lieu of tax credits for such projects), the sale and acquisition of solar projects and review and analysis of solar specific contracts (for example, power purchase agreements and interconnection agreements).  Foley & Lardner has also acted as Martifer USA's corporate, tax, and project counsel in connection with various solar projects.

61.     Going forward, Martifer USA and Foley & Lardner anticipate representation of Martifer USA will continue in virtually the same capacity.  Specifically, Foley & Lardner's renewable energy lawyers will continue to represent Martifer USA in connection with further project development, selling and acquiring solar projects, entering into power purchase agreements and interconnection agreements relating to such projects, and securing receipt of Federal grants and other financial incentives relating to such projects.  In addition to advising Martifer USA on the development of Martifer USA's projects, Foley & Lardner will continue to represent Martifer USA in securing and negotiating construction contracts where Martifer USA provides certain construction services to third parties in exchange for certain construction fees.  The specific tasks that Foley & Lardner's lawyers will provide to Martifer USA are necessary to allow Martifer USA to maximize the likelihood of a successful reorganization.

62. Martifer USA selected Foley & Lardner because the Firm has considerable experience in legal representation renewable and solar energy matters, including project acquisitions, development, tax structures and its strong reputation in the solar industry. Foley & Lardner's nationally-recognized Energy Industry Team has represented solar developers and investors for more than twenty (20) years and its attorneys have industry-leading expertise and experience. Martifer USA has determined that in order to ensure adequate representation in these types of matters, it is necessary and in the best interest of Martifer USA to employ Foley & Lardner as its special solar counsel to continue advising and representing it in connection with its solar operations. The services to be provided by Foley & Lardner will not be duplicative of the services provided by other professionals retained by Martifer USA. Foley & Lardner's lawyers will work closely with Martifer USA's other professionals to ensure that duplicative services are not rendered.

63. As a result of Foley & Lardner having provided services to Martifer USA since September 2013, it possesses a unique understanding of Martifer USA's solar operations that cannot be duplicated without considerable time and expense to Martifer USA's estate. Indeed, prepetition Foley & Lardner devoted significant time to assisting Martifer USA with a complex restructuring of a solar project that included complicated and critical tax components, including advising in the receipt of certain cash grants from the Department of Treasury. Were Martifer USA required to retain new counsel to take over this representation or the other solar specific work performed by Foley & Lardner, Martifer USA's estate would be severely prejudiced.

64. There is currently no litigation pending for which Foley & Lardner has acted as counsel for Martifer USA.

65. Accordingly, Martifer USA believes that the appointment of Foley & Lardner as Martifer USA's special solar counsel is in the best interest of Martifer USA and its estate.

66. As more fully set forth in the Engagement Agreement, Martifer USA proposes to employ and retain Foley & Lardner as special solar counsel to Martifer USA in connection with project development, review and analysis of solar specific contracts, construction and acquisition contracts and due diligence, tax structuring, and acquisition and disposition of solar contracts.

67. In light of Foley & Lardner's expertise in this area and prior experience with Martifer

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

USA, Foley & Lardner is well-qualified to perform the requested services and assist Martifer USA in the capacity outlined herein.

68. Martifer USA respectfully submits that the proposed fee arrangement with Foley & Lardner is reasonable in light of (i) industry practice and similar to market rates both in and out of Chapter 11 proceedings, (ii) Foley & Lardner's experience in general and with Martifer USA's business, in particular, and (iii) work to be performed pursuant to its retention. Martifer USA believes that, given the nature of the legal services to be provided by Foley & Lardner, the proposed compensation arrangement is both fair and reasonable.

69. Without Foley & Lardner's continued representation of Martifer USA, Martifer USA's ability to preserve and restructure its business could have been jeopardized. Accordingly, *nunc pro tunc* employment is appropriate under the circumstances and should be approved.

**EMPLOYMENT OF WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN LLP, AS SPECIAL CALIFORNIA LITIGATION COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE**

70. Wolf Rifkin has been counsel for Martifer USA since August 19, 2013 and has handled various litigation matters pending in California.

71. As of the Petition Date, Wolf Rifkin was handling six (6) pending matters (collectively referred to as the "Pending Matters") for Martifer USA. Wolf Rifkin is aware of the factual and legal issues in each of the pending actions and, if necessary, is the firm best suited to handle any issues related therein. As such, Wolf Rifkin possesses an understanding of the pending actions that cannot be duplicated without considerable time and expense to Martifer USA's estate.

72. Wolf Rifkin has acted as counsel for Martifer USA in the following Pending Matters:

(a) *Project Restructuring Negotiations*- Wolf Rifkin represented Martifer USA pre-petition in connection with its negotiations related to what was its largest outstanding receivable. As a result of Wolf Rifkin's efforts, Martifer USA was successful in foregoing litigation related to Martifer USA's construction of four separate solar photovoltaic projects generally located in the Los Angeles area (the "Studios Solar Projects"). Litigation related to the projects would not only have been protracted and costly, but with substantial risk. Instead, Wolf Rifkin's

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

assistance culminated in a settlement agreement that provided Martifer USA with title to the projects and all related project cash flows. During the course of the settlement discussions, Wolf Rifkin successfully balanced the interests of all parties including, without limitation, the interest of several third party sub-contractors and vendor claimants that had taken to pursuing their mechanics' lien rights. Wolf Rifkin was instrumental in the successful consummation of the project settlement agreement. Likewise, Wolf Rifkin's intimate familiarity with the parties to the settlement agreement, the parties' backgrounds, and the structure of the settlement will undoubtedly continue to be of utmost value to Martifer USA's estate as Martifer USA continues to finalize certain settlement and project related matters.

(b) *The Johnson Action*- Wolf Rifkin represented Martifer USA pre-petition in connection the action entitled *California Power Save, Inc. v. Johnson-Chavez et al*. [Los Angeles County Superior Court Case No. BC510373](the "Johnson Action"). The Johnson Action was filed on May 30, 2013 and related to the Studios Solar Projects. On July 2, 2013, Martifer USA was brought into the Johnson Action by way of Cross-Complaint wherein Johnson alleged that Martifer USA is somehow a *de facto* partner of the original developer of the Studios Solar Projects in the origination of the project contracts. Martifer USA denies these claims. The Johnson Action is set for trial June 23, 2014.

(c) *Schletter, Inc.*- Wolf Rifkin represented Martifer USA pre-petition in connection with its settlement discussions with Schletter, Inc. which disputes arose out of the Studios Solar Projects. Schletter, Inc. is among various third party sub-contractors that provided material and/or services to the Studios Solar Projects and remains unpaid. As a result, if negotiations with Schletter and/or these subcontractors do not result in resolution, litigation may arise.

(d) *The Golden State Power Action*- Wolf Rifkin represented Martifer USA pre-petition in connection with the action filed by Martifer USA entitled *Martifer USA v. Joseph Leo Bork, Gabriel Oliver Bork and Golden State Solar Power, Inc., et al.* [Kern County Superior Court Case No. S-1500-CV 280885 DRL] (the "Golden State Power Action"). The Golden State Power Action relates to certain solar panels that the defendants in the Golden State Power Action purchased from Martifer USA and failed to pay for. Martifer USA obtained the

issuance of a Temporary Restraining Order resulting in the return of the bulk of the solar panels that were the subject of the transaction. However, approximately $300,000 remains unpaid. Since such time Wolf Rifkin has been conducting settlement discussions with the defendants in the Golden State Power Action on behalf of Martifer USA. If unsuccessful, Martifer USA will continue to prosecute the lawsuit.

(e) *Cathay Bank*- Cathay Bank filed a complaint against Martifer USA, Martifer Aurora Solar, LLC Martifer Solar, Inc. and Martifer Solar, S.A. on December 31, 2013 in the matter entitled *Cathay Bank v. Martifer USA et al.* [Los Angeles Superior Court Case No. SC121853] (the "Cathay Bank Action"). Wolf Rifkin did not represent Martifer USA pre-petition in connection with the Cathay Bank Action. However, Wolf Rifkin met with Cathay Bank on one occasion to discuss the Studios Solar Projects matters.

(f) *PGS Action*- On January 23, 2014, PGS Construction Corp filed a complaint for monetary damages and foreclosure of mechanics lien against Martifer USA in the matter entitled *PGS Construction Corp dba Electric Construction Company v. Martifer USA et seq.* [Los Angeles County Superior Court Case No. EC062086] (the "PGS Action"). The PGS Action arises out of the Studios Solar Projects. PGS is allegedly a third party sub-contractors which provided services for the Studios Solar Projects and which is asserting mechanics lien claims related thereto.

73. Wolf Rifkin filed a notice of commencement of bankruptcy in each of these cases, except for the Cathay Bank Action.[2]

74. Although, with the exception of the Golden State Power Action, each of the Pending Matters is currently stayed, Martifer USA and Wolf Rifkin anticipate representation in connection with the Studios Solar Projects, The Johnson Action, Schletter, Inc., The Golden State Power Action, PGS Action and any third party claims/litigation arising out of the Studios Solar Projects.

---

[2] Fox Rothschild LLP filed a notice of commencement of bankruptcy, on behalf of Debtors, in the Cathay Bank Action.

ACTIVE 24649596v1 02/12/2014    19

75. Martifer USA selected Wolf Rifkin because the Firm has considerable experience in state court litigation, mechanics lien rights, and business related disputes. Martifer USA has determined that in order to ensure adequate representation in the Pending Matters, it is necessary and in the best interest of Martifer USA to employ Wolf Rifkin as its litigation counsel to continue advising and representing it in connection with the Pending Matters and the disputes arising therefrom.

76. Martifer USA is seeking to retain Wolf Rifkin *nunc pro tunc* to the Petition Date. Such relief is warranted by the extraordinary circumstances presented by this case. With the exception of the Cathay Bank Action, Wolf Rifkin prepared and filed notices of commencement of bankruptcy in each of the Pending Matters, effectively staying such actions so as to provide Debtor with the breathing room to reorganize its business. Wolf Rifkin's services have also been necessary in negotiating claims arising out of the Studios Solar Projects. Accordingly, *nunc pro tunc* employment is appropriate under the circumstances and should be approved.

77. Martifer USA proposes to employ and retain Wolf Rifkin as special litigation counsel to Martifer USA with respect to the Pending Matters.

78. In light of Wolf Rifkin's expertise in this area and prior experience representing Martifer USA, Wolf Rifkin is well-qualified to perform the requested services and assist Martifer USA in the capacity outlined herein.

79. Martifer USA respectfully submits that the proposed fee arrangement with Wolf Rifkin is reasonable in light of (i) industry practice and similar to market rates both in and out of Chapter 11 proceedings, (ii) Wolf Rifkin's experience in general and with Martifer USA's business, in particular, and (iii) work to be performed pursuant to its retention. Martifer USA believes that, given the nature of the legal services to be provided by Wolf Rifkin, the proposed compensation arrangement is both fair and reasonable.

I verify under penalty of perjury that the foregoing statement is true and correct to the best of my information, knowledge and belief.

Executed this 10th day of February, 2014.

_____
KLAUS BERNHART

ACTIVE 24649596v1 02/12/2014                    20