MICHAEL GERARD FLETCHER, ESQ.
California Bar No. 070849
REED S. WADDELL, ESQ.
 California Bar No. 106644
**FRANDZEL ROBINS BLOOM & CSATO, L.C.**
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California  90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577
E-Mail:  mfletcher@frandzel.com
         rwaddell@frandzel.com

NATALIE M. COX, ESQ.
Nevada Bar No. 007662
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail: ncox@klnevada.com
        rhoward@klnevada.com

Attorneys for CATHAY BANK, a California banking corporation

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC,<br>Nevada limited liability company,<br><br>☐  Affects Martifer Aurora Solar, LLC<br>☐  Affects Martifer Solar USA, Inc.<br>☒  Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under<br>Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY**<br><br>Date:     February 21, 2014<br>Time:    9:30 a.m.<br>Ctrm:    3 |

1400742.1 | 023000-0918

1

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

**TO THE HONORABLE AUGUST B. LANDIS, UNITED STATES BANKRUPTCY JUDGE:**

Cathay Bank ("Bank") renews and amplifies its objections to the continuing attempts by the Debtors and their corporate parent Martifer Solar, Inc. ("Solar"), in these jointly administered bankruptcy cases, to breach pre-petition subordination agreements binding on these estates post petition, this time through an amended second DIP financing motion found at ECF No. 101 ("Amended DIP Motion").

The Bank is the senior-most secured creditor of Debtor Martifer Solar USA, Inc. (District of Nevada Bankruptcy Case No. BK-S-14-103557-abl) ("USA"), and Debtor Martifer Aurora Solar, LLC, USA's affiliated entity also in bankruptcy (District of Nevada Bankruptcy Case No. BK-S-14-10355-abl) ("Aurora").[1] The Bank is owed in excess of $6.3 million by the Debtors and Solar, and has a duly perfected senior-most security interest in all of USA's and Aurora's assets. *See* Declaration of Eileen Lewis ("Lewis Declaration") (ECF No. 60), Exhibits 1 – 6; Declaration of Klaus Bernhart ("Bernhart Decl."), (ECF No. 87), 5:6-8 ("As of the Petition Date, all of Debtors' personal property (other than Avoidance Actions) were encumbered by liens in favor of the Pre-Petition Lender [Cathay Bank].").

The Bank again opposes the Debtors' renewed/amended motion for approval of post petition DIP financing from their insider parent corporation Solar, which is not in bankruptcy. The Debtors still propose to operate post-petition by hemorrhaging red ink, *i.e.*, hemorrhaging the Bank's cash collateral. They still propose to staunch the red ink (but not the Bank's losses of collateral) by loans from the insider parent Solar via the proposed "amended" DIP financing based on the First Amended and Re-Stated Debtor-in-Possession Credit Agreement ("Amended Credit Agreement") attached to the Amended DIP Motion. The Amended DIP Motion still does not solve any of the Debtors' operational issues, **but does still, unfortunately, materially violate the**

---

[1] The USA and Aurora Chapter 11 Cases have been Ordered "jointly administered" by this Court, with the Aurora case being deemed the "main case." Thus, all references and citations herein to the Court's ECF Docket will refer to the documents on file on the "main" Aurora ECF Case Docket unless otherwise specifically so indicated.

1400742.1 | 023000-0918

2

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

**terms of their pre-petition subordination agreements that are fully enforceable post petition.[2]**

## I.

## SUMMARY OF VIOLATIONS

The following table compares the principal provisions of the Amended Credit Agreement[3] that violate the Subordination Agreement and the subordination provisions of the Commercial Guaranty with those agreements.

| Prohibited Amended Credit Agreement Provision | Violated Subordination Provisions | Comments |
|---|---|---|
| **No Revolving Credit Allowed.**<br><br>This is a revolving line of credit. Klaus Decl. (ECF No. 87), Ex. 1, p. 19 of 44, Amended Credit Agreement, section 2.1(c): ("… Borrowers may from time to time borrow, prepay the Loans in whole or in part, and re-borrow …. Loans … may be borrowed, repaid and re-borrowed."). *See also* section 2.7. | USA and Aurora may not pay, and Solar may not receive, anything including money until Cathay is paid in full. Lewis Suppl. Decl., (ECF No. 63), Ex. 14, p. 9 of 16, Subordination Agreement, "Payments to Creditor [Solar]:" ("… Borrower [USA and Aurora] will not make and Creditor [Solar] will not accept, at any time while any Superior Indebtedness is owing to Lender [Cathay], (A) any payment upon any Subordinated Indebtedness …<br>(next paragraph)<br>… (A) the Superior Indebtedness shall be paid in full before any payment is made upon the Subordinated Indebtedness, and (B) … all payments … shall be paid or delivered | No unsecured loan from Solar to USA and/or Aurora can revolve; no payments can be made to Solar until Cathay is paid in full; and any payments made in breach of the Subordination Agreement shall be made only to Cathay to reduce the debt owed to Cathay, and not to reduce the amounts owed under the Amended Credit Agreement.<br><br>*See also* the similar provisions in the Solar Commercial Guaranty, Lewis Suppl. Decl., (ECF No. 63), Ex. 13, page 5-6 of 16. |

---

[2] Given the tenor of the Bank's objection to the first DIP Financing Motion, it is beyond strange that the Debtors have failed to discuss (or inform this Court about) the pre-petition subordination agreements that prevent this proposed amended DIP loan from being made.

[3] The Amended DIP Motion makes it clear that the terms of the Amended Credit Agreement control the provisions and agreements among Solar and the Debtors, not what is said in the Amended DIP Motion or in the supporting declarations. Amended DIP Motion, 2:15-18.

Frandzel Robins Bloom & Csato, L.C.
6500 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048-4920

1400742.1 | 023000-0918

3

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

| Prohibited Amended Credit Agreement Provision | Violated Subordination Provisions | Comments |
|---|---|---|
| | directly to Lender [Cathay] for application in payment of the amounts then due on the Superior Indebtedness ….") | |
| **No Carve Out or any priority may be given by Solar.**<br><br>The Amended Credit Agreement attempts to give away a carve out of the claim that Solar will have under the Amended Credit Agreement. It also attempts to jump over Cathay's rights with respect to the priority portion of the debt owed by the Debtors to the estate professionals under the Carve Out--- the "Carve Out" the definition of which is found at Klaus Decl., *supra*, at page 11 of 44 --- and to make the Bank's super priority rights junior to the Carve Out.<br><br>Solar consents to "a super priority claim (the "Pre-Petition Lender's Superpriority Claim") against Borrowers' [USA and Aurora] estate to the extent permitted by Bankruptcy Code section 507(b), subject and junior only to the Carve Out."<br><br>*See also* section 2.8(a) at id., p. 23 of 44; section 2.10, *id*. at p. 24 of 44; section 2.13(b)(i) --- limitation on Cathay's replacement liens --- at *id*., p. 25 of 44; and section 7.1(v), *id*. at 32 of 44, where rights are supposedly given to the holders of the Carve Out. | Solar may not give away any rights to anyone, including the Carve Out. Solar has previously assigned all such rights to Cathay.<br><br>"Creditor [Solar] does hereby assign all of its right, title, and interest in such claims [subordinated debt] to Lender [Cathay]. Lewis Suppl. Decl., *supra* at p. 9 of 16, "Payments to Creditor", third paragraph.<br><br>*See* above re the restrictions for payments only to Cathay.<br><br>*See also*, the Commercial Guaranty, *id*. at Exhibit 13, p. 4-5 of 16: "Guarantor [Solar] agrees that the Indebtedness [owed to Cathay], whether now existing or hereafter created, shall be superior to any claim that Guarantor [Solar] may now have or hereafter acquire against Borrower [USA and Aurora] …."<br><br>Here, Solar attempts wrongfully to benefit estate professionals by limiting Cathay's replacement lien and super priority rights. | Solar wants to give a Carve Out to estate professionals. It cannot. It has previously assigned all claims it holds to Cathay, and stated that Cathay has the "superior" rights to anything held by Solar. That means nothing may be carved out of anything and given to anyone other than Cathay. |

1400742.1 | 023000-0918

4

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

| Prohibited Amended Credit Agreement Provision | Violated Subordination Provisions | Comments |
|---|---|---|
| **No Acceleration of the DIP and No Calling Defaults.**<br><br>The Amended Credit Agreement provides for the right of Solar to accelerate the DIP debt to be owed by USA and Aurora. *See* section 7.2, *id.* at pp. 31-32 of 44. | Acceleration of any debt owed by USA and Aurora to Solar is expressly prohibited without Cathay's consent, which is not given. The Subordination Agreement Section expressly provides: "Creditor [Solar] may not accelerate any amounts owed to Creditor without Lender's [Cathay's] prior written consent." "Payments to Creditor [Solar]", *id.* at p. 9 of 16. | The DIP obligations may not be enforced for any reason until Cathay is paid in full. |
| **All Notes And Evidence Of Indebtedness Have To Be Delivered To Cathay, And Never Transferred.**<br><br>The Amended Credit Agreement tries to transfer to the estate professionals the Carve Out. | The Subordination Agreement requires delivery of any notes to Cathay, and further prevents transfers of any notes or rights under notes to anyone other than Cathay. "Creditor [Solar] agrees not to sell, assign, pledge, or otherwise transfer any of such notes except subject to all of the terms and conditions of this Agreement." Section "Creditor's Notes," *id.*, at p. 9-10 of 16. | |
| **No Standstill or Stopping State Court Enforcement.**<br><br>Solar, and its subsidiaries the Debtors USA and Aurora continue to try to prevent Cathay from enforcing its rights against its guarantors Solar and its parent Martifer Solar, S.A., in state court. See, id., at p. 32 of 44, "Events of Default," section 7.1(xii), (stopping Cathay "from the prosecution of claims against" them. | Aside from violating the precepts of *Stern v. Marshall,* 131 S. Ct. 2594, 564 US2, 180 L. Ed. 2d 475 (2011), and *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 624-627 (9th Cir. 1989) the attempt violates the pre-petition subordination provisions of the guaranties in question, by trying to restrict Cathay's "superior rights" as to the Debtors, one of which is not to pursue the Debtors but instead go after the guarantors. See, id., at Exhibit 13, p. 5-6 of 16. | The Solar Commercial Guaranty is governed by California law, which validates such guaranty waivers and requires them to be enforced. |

1400742.1 | 023000-0918

5

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

| **Prohibited Amended Credit Agreement Provision** | **Violated Subordination Provisions** | **Comments** |
|---|---|---|
| | (Cathay's rights that "the Indebtedness … shall be superior," including under "Guarantor Waivers" that "… Guarantor [Solar] waives any right to require Lender [Cathay] to … (B) proceed against any person, including Borrower [Debtors USA and Aurora] before proceeding against Guarantor [Solar]." Id., at Exhibit 13, p. 5 of 16. | |

## II.

## SUMMARY OF OPPOSITION

The Debtors' own projections—which in another context this Court has already deemed "materially misleading"--show that their post petition operations result in huge operational shortfalls; they are seriously impairing the Bank's collateral values. The Debtors claim that they require the proposed amended DIP financing in order to shore up their woeful post-petition operational losses and exorbitant professional fee obligations by using a post-petition **revolving** loan of $5 million offered by the insider parent (Solar) of the Debtors under the Amended Credit Agreement.

The proposed structure is **still fatally flawed** and **still does significant harm** to the Bank.[4] The proposed DIP lender, Solar, is the immediate parent of Debtor USA. It promised the Bank

---

[4] Additionally, the notion that the Debtors USA and Aurora cannot find unsecured credit under section 364(a) is belied by the Debtor's own moving papers and the clear record before this Court. The Court has already been made aware that Solar has advanced funds to the Debtors to cover pre-and post-petition payroll and other employee benefits, and the Motion presently before the Court requires that the parent Solar advance at least $607,378 (or more) to the Debtors without any pre-conditions. (See Amended Credit Agreement, Klaus Decl., Exhibit 1, section 2.3(g), p. 21 of 44 ("Notwithstanding anything to the contrary in Section 4.1, 4.2, or otherwise herein, Lender shall fund any and all Emergency Advances as provided on Schedule 1 [$603,378] without any condition precedent."). It would appear that parent Solar is willing to advance whatever it takes to keep USA and Aurora afloat with just unsecured loans and no expectations of repayment except as an administrative claim (not a super priority claim) under section 364(a). Their advances should, therefore, be so limited.

1400742.1 | 023000-0918

6

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

pre-petition that it would not permit the Debtors to make any payments to Solar after a default, and that Solar would not receive any payments from the Debtors for as long as any indebtedness was owed by the Debtors to the Bank. Solar is not entitled to enforce any promissory notes, or receive any collateral or anything else of value from the Debtors, or even to accelerate any debt owed to Solar, or to collect on any indebtedness owed by the Debtors to Solar. Solar also promised that Solar would never be granted any rights that are "superior to" the rights of the Bank, unless the defaulted loans and extensions of credit owed by the Debtors to the Bank were **first paid in full.** Further, Solar agreed that it is and would always be an express trustee for the benefit of the Bank with regard to any such payments or rights it holds or may hold, and that all such amounts, or anything else of value, would be turned over to the Bank if any such payments were made by, or value received from, the Debtors in violation of the subordination agreement and related provisions.

These agreements are fully enforceable post-petition. As the express assignee of Solar's rights with respect to any such loan, the Bank does not consent to this transaction, and asks that the proposed Amended DIP Financing Agreement be withdrawn. Further, it does not consent to the breaches of fiduciary duties inherent in the Amended DIP Motion and reserves all its rights thereon.

The Debtors propose to give its insider post-petition lender Solar and all estate professionals a super priority expense of administration, which is another form of collateral and/or rights deleterious to the rights of the Bank that is simply not permitted.

Finally, the Debtors and Solar once again try to impair the Bank's rights to enforce its defaulted guaranties of the debt given by Solar, and its parent Martifer Solar, S.A. from Portugal. They could not do that in a plan, and they ought not to be able to do it here. Further, and as importantly, Solar waived any right to try to compel the Bank to go after the Debtors before enforcing the guaranty.

///

///

1400742.1 | 023000-0918

7

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

# III.

# THE PRE-PETITION SUBORDINATION AGREEMENTS SHOULD PREVENT THE COURT FROM APPROVING THE PROPOSED AMENDED POST-PETITION INSIDER FINANCING AND THE AMENDED CREDIT AGREEMENT

Pre-petition, Solar, the proposed post petition lender, and the Bank entered into the Solar Subordination Agreement that prevents Solar from executing or entering into the proposed post petition DIP financing. The Debtors USA and Aurora also expressly executed the Solar Subordination Agreement, thereby acknowledging, approving and agreeing to all such prohibitions. They all promised the Bank that in exchange for the Bank making available to the Debtors the pre-petition $12 million loan, they **would not engage** in the types of financing transactions that are the subject of the instant Amended DIP Motion and are referenced in the Amended DIP Financing Agreement. The Solar Subordination Agreements are not only enforceable in bankruptcy, but they should be enforced by this Court, the Bank respectfully submits.[5]

A.  **The Pre-Petition Subordination Agreements.**

On November 15, 2012, Debtor's USA and Aurora entered into a Business Loan Agreement (Asset Based) and various Commercial Security Agreements with the Bank evidencing the pre-petition lending transactions between the Bank and Debtors USA and Aurora. (Lewis Declaration re Adequate Protection (ECF No. 60) (Exhibits 1 through 6, inclusive).

At the same time, Solar, the non-debtor insider parent of USA and Aurora, and those entities entered into an express Subordination Agreement ("Solar Subordination Agreement") ,

---

[5] The attempt to ignore the subordination agreements is not only a breach of fiduciary duties to the Bank, *see Berg v. Berg Enterprises*, 178 Cal.App. 4th 1020, 1041, 100 Cal.Rptr. 875 (2009) (insiders of insolvent entities have a fiduciary duty to creditors not to, and cannot, benefit themselves to the detriment of creditors; to do so is a breach of fiduciary duty), but would constitute the commission post petition of the intentional torts of intentional interference with contract, and intentional interference with prospective economic advantage. This Court should not sanction such breaches of fiduciary duty; nor should it approve the Debtors and Solar committing intentional torts post petition.

1400742.1 | 023000-0918

8

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

which was acknowledge and agreed to by each of the Debtors (Lewis Supplemental Declaration ("Lewis Suppl. Decl."), (ECF No. 63) (Exhibit 14).  Solar also subordinated all of its rights to the Bank at the time it further executed a Commercial Guaranty also dated November 15, 2012 (*Id.*, Exhibit 13).

      1.      **Solar Subordination Agreement.**

The Solar Subordination Agreement (*See* Lewis Suppl. Decl., Exhibit 14) contains the following provisions.  First, the Solar Subordination broadly encompasses **all financial arrangements** involving Solar with USA, Aurora, and the Bank, by stating, in pertinent part:

> **SUBORDINATED INDEBTEDNESS.** The words "Subordinated Indebtedness" as used in this Agreement **mean all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be now or hereafter owing from Borrower [USA and Aurora] to Creditor [Solar]. The term "Subordinated Indebtedness" is used in its broadest sense** and includes without limitation all principal, all interest, all costs, attorneys' fees, all sums paid for the purpose of protecting the rights of a holder of security, all contingent obligations of Borrower such as a guaranty), and all other obligations, secured or unsecured, of any nature whatsoever.
>
> **SUPERIOR INDEBTEDNESS.** The words "Superior Indebtedness" as used in this Agreement **mean and include all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be now or hereafter owing from Borrower [USA and Aurora] to Lender [Cathay Bank]. The term "Superior Indebtedness" is used in its broadest sense** and includes without limitation all principal, all interest, all costs, attorneys' fees, all sums paid for the purpose of protecting Lender's rights in security (such as paying for insurance on collateral if the owner fails to do so), all contingent obligations of Borrower (such as a guaranty), all obligations arising by reason of Borrower's accounts with Lender (such as an overdraft on a checking account), and all other obligations of Borrower to Lender, secured or unsecured, of any nature whatsoever. [Emphasis added.]

The prohibitions specifically apply to attorneys' fees and costs, dooming the attempt by Solar and by the Debtors to offer a "carve-out" to estate professionals---any carve out.  Then, Solar agreed:

> **SUBORDINATION.** All Subordinated Indebtedness of Borrower [USA and Aurora] to Creditor [Solar] is and shall be subordinated in all respects to all Superior Indebtedness of Borrower [USA and Aurora] to Lender [Cathay Bank]. If Creditor [Solar] holds one or more Security Interests, whether now existing or hereafter acquired,

in any of Borrower's real property or personal property, Creditor also subordinates all Creditor's Security Interests to all Security Interests held by Lender, whether now existing or hereafter acquired.

Solar has specifically agreed, in writing, that nothing would or will be paid to Solar post default to the Bank, including in any bankruptcy proceeding, with regard to any indebtedness owed to Solar, until the Bank has been paid in full the entirety of the amounts owed to it by the Debtors. This clearly prohibits, among other things, the revolving natured of the proposed Amended Credit Agreement. As stated in the next provision, Solar also assigned to the Bank all such rights to payment and all collateral associated with any such rights to payment. The Debtors both acknowledged such assignments. The Solar Subordination Agreement states specifically:

> **PAYMENTS TO CREDITOR.** Except as provided below, Borrower will not make and Creditor will not accept, at any time while any Superior Indebtedness is owing to Lender, (A) any payment upon any Subordinated Indebtedness, (B) any advance, transfer, or assignment of assets to Creditor in any form whatsoever that would reduce at any time or in any way the amount of Subordinated Indebtedness, or (C) any transfer of any assets as security for the Subordinated Indebtedness. Notwithstanding the foregoing, Borrower may make regularly scheduled payments of interest only to Creditor so long as Borrower is not in default under any agreement between Lender and Borrower, Creditor may not accelerate any amounts owed to Creditor without Lender's prior written consent.
>
> In the event of any distribution, division, or application, whether partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of Borrower's assets, or the proceeds of Borrower's assets, in whatever form, to creditors of Borrower or upon any indebtedness of Borrower, whether by reason of the liquidation, dissolution or other winding-up of Borrower, or by reason of any execution sale, receivership, insolvency, or bankruptcy proceeding, assignment for the benefit of creditors, proceedings for reorganization, or readjustment of Borrower or Borrower's properties, then and in such event, (A) the Superior Indebtedness shall be paid in full before any payment is made upon the Subordinated Indebtedness, and (B) all payments and distributions, of any kind or character and whether in cash, property, or securities, which shall be payable or deliverable upon or in respect of the Subordinated Indebtedness shall be paid or delivered directly to Lender for application in payment of the amounts then due on the Superior Indebtedness until the Superior Indebtedness shall have been paid in full.

1400742.1 | 023000-0918

10

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

The Solar Subordination Agreement further provides that the Bank, not USA, not Aurora, and not Solar, is entitled by express assignment to all such loan documents for its own right. Further, Solar has designated the Bank as its attorney-in-fact with the express power to object to and reject any such financing arrangement that it and the Debtors might enter into without the Bank's express consent.

> In order that Lender may establish its right to prove claims and recover for its own account dividends based on the Subordinated Indebtedness, Creditor does hereby assign all its right, title, and interest in such claims to Lender. Creditor further agrees to supply such information and evidence, provide access to and copies of such of Creditor's records as may pertain to the Subordinated Indebtedness, and execute such instruments as may be required by Lender to enable Lender to enforce all such claims and collect all dividends, payments, or other disbursements which may be made on account of the Subordinated Indebtedness. For such purposes, Creditor hereby irrevocably authorizes Lender in its discretion to make and present for or on behalf of Creditor such proofs of claims on account of the Subordinated Indebtedness as Lender may deem expedient and proper and to vote such claims in any such proceeding and to receive and collect any and all dividends, payments, or other disbursements made thereon in whatever form the same may be paid or issued and to apply the same on account of the Superior Indebtedness.

Finally, the Solar Subordination Agreement explicitly provides that Solar is an express trustee for the Bank. Anything of value ever distributed to Solar, whether made up of cash or noncash assets, is specifically to be held by Solar as an express trustee in favor of the Bank. In that regard, the Solar Subordination Agreement states:

> Should any payment, distribution, security, or proceeds thereof be received by Creditor at any time on the Subordinated Indebtedness contrary to the terms of this Agreement, **Creditor immediately will deliver the same to Lender in precisely the form received (except for the endorsement or assignment of Creditor if necessary), for application on or to secure the Superior Indebtedness, whether it is due or not due, and until so delivered the same shall be held In trust by Creditor as property of Lender.** In the event Creditor fails to make any such endorsement or assignment, Lender, or any of Its officers on behalf of Lender, is hereby irrevocably authorized by Creditor to make the same. [Emphasis added.]

**2.    The Commercial Guaranty Subordination.**

Additionally, Solar executed its Commercial Guaranty (*See* Lewis Suppl. Decl., Exhibit 13) in favor of the Bank as referenced above. Payment of any amounts owed by the Debtors to

1400742.1 | 023000-0918

11

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

Solar is expressly subordinated to the rights of the Bank to be paid in full first. The collateral rights of the Bank are senior to any security that may be taken by Solar. Solar is an express trustee over all cash payments and/or noncash benefits for the benefit to which it may be entitled, in favor of the Bank. The guaranty provides, among other things:

> Subordination of Borrower's Debts to Guarantor. Guarantor agrees that the Indebtedness, whether now existing or hereafter created, **shall be superior** to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower, **In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness**. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce Its rights under this Guaranty. [Emphasis Added].

The parties that are the subject of the Amended DIP Motion all received the benefit of the $12 million in financing provided by the Bank, in part, by promising the Bank that they would not engage in the type of lending transactions that is the subject of the Amended DIP Motion. Solar explicitly promised that it would not be entitled to request or receive payment of anything of value from the Debtors, and that it would not be entitled to enjoy any collateral or other financial benefit from the Debtors until the Bank was paid in full on its defaulted loans. Solar is an express trustee for the benefit of the Bank regarding anything of value that it may be entitled to receive, which instead, must be paid to the Bank.

All parties to the lending transaction that is the subject of the Amended DIP Motion explicitly knew of these provisions. Both Debtors USA and Aurora, together with Solar, executed

1400742.1 | 023000-0918

12

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

and delivered to the Bank the Solar Subordination Agreement. Solar executed the Commercial Guaranty containing similar subordination provisions. The post-petition loan that is the subject of the Amended DIP Financing Motion is an explicit attempt by these parties to breach the fiduciary duties owed to the Bank as a beneficiary of the express trust established in the Subordination Agreement and in the Commercial Guaranty, and under applicable law. See *Berg v. Berg Enterprises*, supra at 1041.

The proposed Amended DIP Motion and Amended Credit Agreement wrongfully ask this Court to ignore the existence of the Solar Subordination Agreement and the Solar Guaranty, and seek this Court's imprimatur to disregard their enforceable contractual obligations establishing that the Bank must be paid in full before (non-Debtor) Solar is entitled to be paid or receive anything from the Debtors, or take any collateral. Additionally, the Solar Subordination Agreement precludes the Debtors from executing, or Solar from receiving, any promissory notes (unless a "legend" is attached indicating that such note is assigned to the Bank), or any pledge of collateral. Further, there may be no maturity date or acceleration provision in any such agreement, , rendering any attempt to define an "Event of Default" as wrongful and a breach of the Solar Subordination Agreement.

None of this may be sanctioned, the Bank respectfully submits. The Bank does not approve of any loan between the Debtors and Solar which violates the Solar Subordination Agreement.

3. **The Commercial Guaranty Also Waives Any Solar Right to Stop Enforcement of the Guaranties.**

The Commercial Guaranty signed by Solar (*See* Lewis Suppl. Decl., Exhibit 13). affirmatively waives any right to compel the Bank to enforce its rights against the Debtors before enforcing the guaranties. The "Guarantor's Waivers" section of the Commercial Guaranty (*Id*., at p. 5 of 16) specifically states that Solar as:

> … Guarantor [Solar] waives any right to require Lender [Cathay] to … (B) proceed against any person, including Borrower [USA and Aurora], before proceeding against Guarantor [Solar] …"

The Commercial Guaranty is governed by California law. The California legislature validated guaranty waivers in California Civil Code section 2856. California courts routinely

1400742.1 | 023000-0918

13

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

quash any notion that a bank cannot sue the guarantors before or at the same time as going after the borrowers. In *Engelman v. Bookasta*, 264 Cal. App. 2d 915 (1968), the court considered the issue of whether a guarantor who had executed a continuing guaranty could waive the rights granted to him under Civil Code sections 2845 and 2849, which require a creditor to proceed against the principal debtor or pursue any other remedy in its power that the surety could not himself pursue. The defendants in *Engelman* argued that the waiver language, contained in their continuing guaranty agreements, was void as a matter of public policy, claiming that they were exonerated under the terms of their respective guarantees because the creditor had failed to proceed against the principal debtor. In rejecting this contention, the court stated:

> We interpret defendant's waiver as expressing an intention to waive any and all rights arising out of or incidental to the existence of a security given by [principal debtor]. The waiver was without limitation, and it constituted a contract between the plaintiffs and the defendant and that for all purposes the debt of the defendant created by his guaranty was to be considered as unsecured . . . .For the reasons we have stated we hold that the appellant's waiver was valid and sufficient for all purposes.

(*Id.* at 918; s*ee also American Guarantee Corp. v. Stoody*, 230 Cal. App. 2d 396 (1968) wherein the court found no policy reason why a guarantor should not be permitted, by contract, to waive his rights under Civil Code sections 2849 and 2845); *Weiner v. Van Winkle*, 273 Cal. App. 2d 774, 787 (1969) ["[w]e see no reason why a guarantor should not be permitted to waive his right by contract to require the creditor to proceed against security provided by the principal debtor…[w]e conclude that [the guarantor's] rights under Civil Code section 2845 and 2849 have been waived"].)

Pursuant to Civil Code section 2856, a guarantor may waive (1) any rights of subrogation and any other rights and defenses that are or may become available to the guarantor by reason of sections 2787 to 2855, inclusive; (2) any rights or defense the guarantor may have in respect of his obligation as a guarantor by reason of any election of remedies by the creditor; and (3) any rights or defenses the guarantor may have because the principal's note is secured by real property. (*See* Civ. Code § 2856(b); *River Bank America v. Diller,* 38 Cal. App. 4th 1400, 1419 (1995);

1400742.1 | 023000-0918

14

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

*American Security Bank v. Carno,* 151 Cal. App. 3d 874 (1984).) Civil Code section 3268 makes clear that the rights of a guarantor may be waived:

> Except where it is otherwise declared, the provisions of the foregoing titles of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in a manner prescribed by the chapter on interpretation of contracts; and a benefit thereof may be waived by any party entitled thereto unless such waiver would be against public policy.

The strong desire of the courts to enforce the Guaranties should be noted. In *Brunswick Corp. v. Hays*, 16 Cal. App. 3d 134, 138-139 (1971), in which the court held that the defendants waive certain statutory provisions, the court cited the dicta of *Berg Metals v. Wilson*, 170 Cal. App. 2d 559, 571 (1959), that "any ambiguity in the contract or guaranty, concerning the liability of the guarantor, will be resolved in favor of protecting the creditor …"

**B.     Pre-Petition Subordination Agreements Are Enforced In Bankruptcy According To Their Terms.**

Under the provisions of 11 U.S.C. § 510(a), pre-petition subordination agreements are supposed to be enforced according to their terms. In that regard, section 510(a) states:

> A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

Further, inequitable conduct such as breaches of fiduciary duty or an attempt to deprive the Bank of its express rights under such pre-petition agreements are grounds to equitably subordinate all claims Solar may have regarding this post-petition loan. See, 11 U.S.C. § 510(c)(1). As noted in the Lewis Declaration and Supplemental Declaration, the Debtors and Solar expressly induced the Bank to forebear from taking enforcement actions pre-petition based upon the written representation that the $5 (or $10) million that is the subject of the "amended" post-pre-petition loan would instead be paid to the Bank reduce the outstanding debts owed to the Bank. Breach of these pre-petition written assurances is further evidence of bad faith and inequitable conduct on the part of the parties to this proposed post-petition loan.

In *Enstar Group, Inc. v. The Bank of New York (In re Amret Inc.)*, 74 B.R. 315 (B.C.Al. 1994), the United States District Court upheld a ruling of the bankruptcy court that refused to

1400742.1 | 023000-0918

15

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

sanction a wrongful post-petition loan very similar to the loan that is the subject of the instant Motion. In *Enstar*, an insider post-petition lender to the bankruptcy debtor attempted to enforce the post-petition loan that insider had made to the debtor over the objection of debtor's pre-petition lender, The Bank of New York. The post-petition insider lender had executed an express subordination agreement pre-petition in favor of The Bank of New York pre-petition to induce the Bank to loan money pre-petition to the debtor. As stated by the *Enstar* court:

> The subordination agreement involved in the present case is a 'complete' subordination agreement which means that the contract required that all indebtedness be paid to the Bank of New York in full before any of the subordinated creditors, Enstar being one of them, are allowed to receive payments.

*Enstar v. Bank of New York, supra,* 74 B.R. at 318-319. This is just like the subordination agreements in favor of the Bank in this matter. The District Court in Enstar upheld the ruling of the bankruptcy court which had:

> . . . concluded that, as a matter of law pursuant to 11 U.S.C. § 510(a), that the filing of the Chapter 11 petition does not affect the enforceability of the subordination agreement. Moreover, the court found that Enstar made the loan with full knowledge of the subordination agreement and without requesting a waiver from the Bank.

*Enstar v. Bank of New York, supra,* 74 B.R. at 318-319.

For the foregoing reasons, the Bank respectfully submits that this Court should not approve what amounts to breaches of fiduciary duties owed to the Bank and a violation of the express provisions of the Solar Subordination Agreement and the Solar Continuing Guaranty.

The Amended DIP Motion and the Proposed Amended Credit Agreement evidencing the proposed post-petition financing require the Debtors USA and Aurora to pay interest to Solar directly, for the Debtors' and the estates' professionals to receive a $2 Million "carve-out" from the Bank's prepetition collateral and post-petition replacement liens, and for Solar to receive "super priority" claims of administration, and provide certain acceleration provisions in Solar's favor that can be utilized before the Debtors' obligations to the Bank have been paid in full. As noted above, the Amended DIP Financing Motion simply ignores the Bank's rights, under the Subordination Agreements and the Solar Guaranty, and completely ignores the obligations of the

1400742.1 | 023000-0918

16

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

1  Debtor and Solar thereunder.   As noted above, each of these agreements are enforceable during a
2  Chapter 11 case, and they should be enforced under the present circumstances.
3      **WHEREFORE**, the Bank respectfully submits that the Amended DIP Financing Motion
4  be denied on both an interim and on a final basis. Solar's prepetition agreements expressly limit it
5  to loaning money to the Debtors on a fully unsecured basis, with no enforcement rights, no default
6  mechanisms or acceleration rights (including any requirement of a "carve out" in favor of estate
7  professionals) in place.  Such loans can only be documented pursuant to one or more promissory
8  notes that bear a legend prominently displayed that each such note has been assigned to the Bank,
9  and which are physically delivered to the Bank upon execution by the Debtors.
10     Such an extension of credit would be authorized under section 364(a), and could be
11 granted an administrative expense priority.  That is it.  There can be no payments to Solar; no
12 enforcement mechanisms in favor of Solar; no transfers of anything of value to Solar; no
13 accelerations or defaults called or callable by Solar; no carve outs provided or required by Solar;
14 no collateral provided to Solar; no "super priority" status for Solar, and no exchanges of debt for
15 equity by Solar---unless and until the Bank has been paid in full.
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1400742.1 | 023000-0918

17

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF
DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

Based on the foregoing, the Bank respectfully requests that the instant Amended DIP Motion be denied.

Dated: February 18, 2014

By  /s/ Michael Gerard Fletcher
MICHAEL GERARD FLETCHER
California Bar No. 070849
REED S. WADDELL
California Bar No. 106644
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California  90048-4920
    and
NATALIE M. COX, ESQ.
Nevada Bar No. 007662
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail: ncox@klnevada.com
        rhoward@klnevada.com

Attorneys for CATHAY BANK, a California banking corporation

1400742.1 | 023000-0918

18

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY