BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar Aurora, LLC
and Martifer Solar USA, Inc.*

Electronically filed February 20, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,<br><br>☐ Affects Martifer Aurora Solar, LLC<br>☐ Affects Martifer Solar USA, Inc.<br>☒ Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**SUPPLEMENTAL DECLARATION OF KLAUS BERNHART IN SUPPORT OF SECOND MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 364 AND FED. R. BANKR. P. 4001(c): (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING**<br><br>Hearing Date:  February 21, 2014<br>Hearing Time:  9:30 a.m. |

KLAUS BERNHART, being duly sworn, hereby deposes and declares under penalty of perjury:

1. I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so.

ACTIVE 24805211v1 02/20/2014             1

2. I am the Chief Financial Officer of Martifer Solar USA, Inc. ("Martifer Solar USA"). Martifer Solar USA holds no less than 99% of the membership interests in Martifer Aurora Solar, LLC ("Aurora", together with Martifer Solar USA, "Debtors" or the "Companies"), debtors and debtors in possession in the above captioned chapter 11 cases (the "Chapter 11 Cases"). I am a Manager of Aurora. I am authorized to submit this supplemental declaration in support of the Debtors' second motion to approve post-petition financing (the "DIP Motion").[1]

3. Except as otherwise stated herein, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

4. The foundation for my testimony herein and my qualifications are set forth in my original declaration filed in support of the DIP Motion [Dkt# 87], the contents of which are incorporated herein by this reference.

5. As of February 20, 2014, Debtors have on hand cash in the amount of $317,943.49, the majority of which is earmarked for the payment of specific project expenses. Aurora has just received checks in the amount of $2,309.27.

6. Debtors have exhausted the Emergency Advances provided by the Lender under the Amended DIP Agreement, a final request for approximately $20k of emergency advances was made today but as of the date of this filing has not been received.

7. The Lender has stated that it will not provide further funding under the Amended DIP Agreement without Court approval.

8. Although the Debtors have had promising discussions with potential third party investors, they do not yet have any committed alternative source of postpetition financing.

9. During the week of February 24, 2014, Debtors need to make payments for approximately $123,850 in critical operating expenses (exclusive of payments to subcontractors and vendors). Likewise, during the week of March 3, 2014, Debtors need to make payments for approximately $206,950 in additional critical operating expenses, including payroll (exclusive of

---

[1] Unless other defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Motion.

payments to subcontractors and vendors).  These payments are reflected in the Cash Budget attached to the Amended DIP Agreement.

10. In addition, through the week of March 10, 2014, Debtors need to make over $375,000 in payments to critical vendors and subcontractors in order to preserve the viability of certain projects and enable the collection of valuable accounts receivable.  These payments need to be made on account of new projects, projects that were in the nascent stages of construction pre-petition.  If Debtors are unable to make these critical new project payments, then they stand to lose a potential net benefit to the estate of no less than $450,000.

11. Additionally, Debtors urgently need to make approximately $110,000 in payments to close out certain projects nearly finalized and to make needed modifications to the projects held in the Debtors' "Studios Solar" entities, which are among the most valuable assets of the estates.  If Debtors are unable to make these critical close-out and modification payments, then their ability to collect a receivable of approximately $1,200,000 will be impaired, in addition to jeopardizing the value of one of the estates' most valuable assets.

12. Construction and completion of the Debtors' projects is essential to the Debtors' ability to maintain its relationships with several of its long-standing national clients.  I do not believe that Debtors suffered irrevocable damage to these relationships to date, but I believe that result is imminent absent the immediate ability for Debtors to assure clients of their ability to perform (which requires certainty regarding the availability of postpetition financing).

13. I believe that Debtors' inability to perform on new and existing projects due to a lack of funding would jeopardize project revenues and client relationships, and also threaten to increase the universe of claims against Debtors' estates based upon asserted damages.

I verify under penalty of perjury that the foregoing statement is true and correct to the best of my information, knowledge and belief.

Executed this 20th day of February 2014.

_____
KLAUS BERNHART