CARLYON LAW GROUP, PLLC
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
ADAM P. BOWLER, ESQ.
Nevada Bar No. 8383
3333 E. Serene Avenue, Suite 110
Henderson, NV 89074
Telephone No. (702) 685-4444
Facsimile No.  (702) 471-7435
Email: ccarlyon@ccarlyon.com

*[Proposed] counsel for Roland Kiser and Klaus Bernhart, the
responsible officers of the Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARTIFER AURORA SOLAR, LLC a<br>Nevada limited liability company,<br><br>____Affects Martifer Aurora Solar, LLC<br>____Affects Martifer Solar USA, Inc.<br>__X__Affects all Debtors<br><br>Debtors. | Case No.:  BK-S-14-10355-abl and<br>BK-S-14-10357-abl<br><br>Jointly administered under<br>**Case No.:  BK-S-14-10355-abl**<br><br>Chapter 11<br><br>**APPLICATION FOR ORDER<br>AUTHORIZING RETENTION AND<br>EMPLOYMENT OF CARLYON LAW<br>GROUP, PLLC AS SPECIAL COUNSEL<br>TO ROLAND KISER AND KLAUS<br>BERNHART, RESPONSIBLE OFFICERS<br>OF THE DEBTOR EFFECTIVE<br>FEBRUARY 27, 2014**<br><br>DATE:  OST REQ. FOR MARCH 10, 2014<br><br>TIME:  OST REQ. FOR 9:30 a.m. |

Roland Kiser and Klaus Bernhart, the responsible officers (the "Officers") of the

Debtors in Possession Martifer Solar USA, Inc. ("Debtor") and Martifer Aurora Solar, LLC

("Aurora" and, together with Debtor, Debtors") in the above-captioned bankruptcy proceeding

hereby apply to the Court for an Order approving the Officers' Application to Employ

Attorneys as Special Counsel to the Officers Effective February 27, 2014.  This Application is

1

brought pursuant to Section 327 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# I.
# INTRODUCTION

1.      On January 21, 2014, Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

2.      Debtors have continued and are operating and managing their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

3.      Pursuant to an Order [Doc. No. 72] of the Court entered January 29, 2014, the Chapter 11 Cases were administratively consolidated under the bankruptcy case of Martifer Aurora Solar, LLC ("Aurora"), case no. BK-14-10355-abl.

4.      On February 4, 2014, this Court entered an Order Designating Responsible Persons [Debtor Doc. No. 88; Aurora Doc. No. 90[1]], appointing Roland Kiser, Chief Executive Officer, and Klaus Bernhart, Chief Financial Officer, as the natural persons responsible for the duties and obligations of the Debtors in these Chapter 11 Cases.

5.      The United States Trustee appointed a creditors' committee by filing that certain Notice of Appointment of the Official Committee of Unsecured Creditors on February 14, 2014.  Doc. No.177.

6.      As reflected in the pleadings on file in this case[2], Debtor is 99.29% owned by Martifer Solar, Inc.  Aurora is owned by Debtor.  Thus, the Debtors are directly or indirectly owned by Martifer Solar, Inc.      See, e.g., Corporate Ownership Statement (Rule 7007.1)(Debtor Doc. No. 106); List of Equity Security Holders (Debtor Doc. No. 107).

---

[1] Unless otherwise noted, docket references are to the Aurora docket.

Martifer Solar, Inc., is a Delaware company owned by Martifer Solar, S.A., a Portuguese Company, which is owned by Martifer Group.  See Doc. No. 15 at p. 4; Interim Order Approving Use of Cash Collateral, Doc. No. 107, at 3.

7.    Debtor's parent also controls the Debtor's Executive Committee, whose members consist of Pedro Periera, the President of Martifer Solar, Inc., and Henrique Rodrigues , CEO of Martifer Solar, Inc.

8.    Martifer Solar, Inc. is also the interim and proposed DIP lender to the Debtor.

9.    Mr. Periera is the Lender's designee with regard to the DIP. See Debtor Doc. No 40, p. 21 (DIP Credit Agreement).

10.    Debtor's primary prepetition secured creditor is Cathay Bank, which states that it is owed in excess of $6.3 million secured by the assets of the Debtors.  See Objection Of Secured Creditor Cathay Bank To Emergency Motion For Approval Of Dip Financing By Insider Non-Debtor Entity, Doc. No. 63, at p. 2.  The Cathay Bank loan is also subject to certain guaranties and subordination agreements on the part of Martifer Solar, Inc. and Martifer Solar, S.A.  See id.; see also Doc. No. 64. Prepetition, Cathy Bank instituted suit against Debtor, as well as Martifer Solar, Inc. and Martifer Solar, S.A. See Doc. 15 p. 11-12.

11.    Debtors also schedule unsecured claims in excess of $22 million.  See Debtor Amended Schedule D, Doc. No. 110, at p. 104.

12.    In November of 2012, Debtor engaged Roland Kiser as its CFO, and Mr. Kiser was subsequently promoted to CEO.  Mr. Kiser has over 20 years of senior executive experience in the energy and financing sectors, including serving as the General Manager and Chief Operating Officer of HSH Nordbank where he spearheaded the startup of U.S.

---

[2]    Pursuant to FRE 201, Officers request that the Court take judicial notice of the pleadings

operations and facilitated the growth of HSH Nordbank's energy business to become a $6 billion leader in renewable energy financing, funding more than 4.5 GW (gigawatts) of wind and solar projects..  Mr. Kiser has also formerly served as the Chief Operating Officer of UBS Americas and the President and CEO of Kenyon Energy. See Doc. 15 at p. 17-18.

13.    Debtor also engaged Klaus Bernhart as CFO of Debtor and as manager of Aurora, and Roland Kiser as CEO. Mr. Bernhart has over 35 years of international experience in U.S. and European commercial and investment banking. He has originated, structured, led, managed and syndicated in excess of $25 billion of global energy/renewable energy transactions. His experience includes serving as the Senior Executive Vice President, the General Manager, the Regional Head of the Americas and the Global Head of Energy at HSH Nordbank – where he positioned the bank as the top global financial institution in Renewable Energy.  Doc. No. 25 at pps. 2-3.

14.    Mr. Bernhart and Mr. Kiser completed a restructuring assessment in January of 2013, and have implemented numerous measures to improve the financial viability of the Debtors.  Doc. #15 at 18-20.

15.    Prepetition, Debtors commenced the process of attempting to obtain post-petition financing.  Debtors engaged James Wong of Armory Consulting Company.  Mr. Wong is an experienced financial advisor who previously worked at Merrill Lynch and Grant Thorton.  Mr. Wong holds a M.S. in Business Management from Stanford University and is a Certified Insolvency and Restructuring Advisor.  Debtor Doc. No. 26.

16.    With Mr. Wong's assistance, Debtors made an extensive effort to locate potential sources of postpetition financing.  Debtors contacted over twenty (20) potential

in this case which are referenced by docket number herein.

sources of post-petition financing, and five (5) parties signed Non-Disclosure Agreements. However, the only viable source of post-petition financing which has progressed to the point of funding to date is Martifer Solar, Inc.

17.    An additional potential source of financing (and/or an ultimate restructuring transaction), BayWa r.e. renewable energy GmbH, ("BayWa") has provided a letter of intent and is pursuing discussions regarding a potential acquisition of Debtor.

18.    The value of the Debtor is inherently tied to its ability to complete its pending contracts and obtain resulting payments, including tax incentives.  See Doc. 15 at pps. 5-14.

19.    Officers are parties to employment agreements with the Debtor (and has requested confirmation from Martifer Solar, Inc. of its guaranty of the monetary obligations under those agreements) which provide, *inter alia*, for employment through March 10, 2014, subject to extension upon agreed upon terms; for payment of restructuring fees of $75,000 to Mr. Kiser and $50,000 to Mr. Bernhart on March 10, 2014; and for a four-month salary severance payment at the time of termination.

20.    On approximately February 27, 2013, Counsel for the Debtors suggested that the Officers retain independent counsel.  The need for independent counsel stems from the fact that the corporate management of the Debtor outside of bankruptcy is effectively vested in its parent, which is also its DIP lender; while the responsible persons designated to act in connection with this case are the Officers.  The Officers are dedicated to pursuing the reorganization of the Debtors for the benefit of the creditors and the estate.  In exercising their independent judgment with respect to the reorganization, it is necessary and appropriate for the Officers to be advised by counsel who is not directed by the Debtor's parent/DIP Lender.

/ / /

## II.
## JURISDICTION AND VENUE

21.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## RELIEF REQUESTED

22.    By this Application, Officers seek an order pursuant to Bankruptcy Code sections 327(a), 328, 1107 and 1108, Bankruptcy Rules 2014(a), 2016, 5002 and 9034 and Local Rule 2014 authorizing the retention and employment of Carlyon Law Group, PLLC ("Carlyon Law Group"), as special counsel to the Debtors' Officers- Roland Kiser and Klaus Bernhart – with regard to the discharge of their duties in connection with these Chapter 11 Cases, as described below, in accordance with Carlyon Law Group's normal hourly rates and reimbursement policies.

## IV.
## RETENTION OF CARLYON LAW GROUP

23.    The Officers have selected Carlyon Law Group for the reason that said professional persons have had considerable experience in matters of this character, and the scope of professional services to be rendered, and for the reasons that the Officers believe that Carlyon Law Group is well qualified to represent the Officers as special counsel in this proceeding, and that the employment of said firm would be in the best interest of the estate. Bankruptcy Rule 2014(a).

24.    The terms of Carlyon Law Group's retention is set forth in the engagement agreement entered into on March 4, 2014 and the Verified Statement of Candace C. Carlyon In Support of Application For Order Authorizing Retention of Carlyon Law Group, PLLC, as

Special Counsel to Responsible Officers of the Debtor Roland Kiser and Klaus Bernhart (the "Carlyon Verified Statement"). A copy of the engagement agreement is attached hereto as Exhibit 2.

25.    Accordingly, Officers believe that Carlyon Law Group is both well qualified and able to represent their interests in these Chapter 11 Cases in an efficient and timely manner and that such representation is in the best interests of Debtors, their estates, and constituents.

## V.
## SCOPE OF EMPLOYMENT

26.    Officers seek to retain the Carlyon Law Group as special counsel to represent the Officers in their capacity as responsible officers of the Debtors with respect to the Debtors' Case.

27.    The Officers require knowledgeable counsel to render these essential professional services, separate and apart from Counsel to the Debtors. As described below, Carlyon Law Group has substantial expertise in the areas for which it is being retained. As a result, Carlyon Law Group is well-qualified to perform these services and represent the Officers with respect to the Debtors' Chapter 11 Cases.

## VI.
## QUALIFICATIONS

28.    Carlyon Law Group is well suited for the type of representation required by the Officers. Carlyon Law Group has experience in all aspects of the law that are likely to arise in these Chapter 11 Cases including, among others, bankruptcy, financial restructuring, corporate, and litigation matters.

29.    A summary of the qualifications and experience of those attorneys who are expected to render services to Debtors is attached as Exhibit 3.

30.     Carlyon Law Group is well qualified to represent the Officers as counsel in this proceeding, and that the employment of said firm would be in the best interest of the Debtors' estates. Bankruptcy Rule 2014(a).

## VII.
## DISINTERSTEDNESS

31.     To the best of the Officers' knowledge, information and belief, other than as may be set forth herein or in the Carlyon Verified Statement and exhibits attached thereto, Carlyon Law Group does not hold or represent any interest adverse to the Officers, the Debtors or Debtors' estates, and Carlyon Law Group is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and used in Bankruptcy Code section 327(a).

32.     Prior to the commencement of these Bankruptcy Cases, Carlyon Law Group did not represent Officers or the Debtors.

33.     Carlyon Law Group does not have any connection with the judge of these Cases, the United States Trustee for Region 17, or any person employed in the Office of the United States Trustee for the District of Nevada.

## VIII.
## COMPENSATION

34.     In connection with the representation of the Officers with respect to this case Carlyon Law Group will request compensation from the Debtors' estates along with other professionals.

35.     While Carlyon Law Group has agreed to seek compensation in connection with theses Bankruptcy Cases from the Debtors' estates, Officers have agreed to be, and are jointly and severally liable for, any legal fees of Carlyon Law Group which are determined to be non-compensable by the estate as being the individual obligations of the Officers.

36.     Carlyon Law Group bills for professional time based upon hourly rates; however, charges are incurred in one-tenth of an hour increments.  Ms. Carlyon's current hourly rate is $575 per hour; lower rates are charged by other professionals and by paraprofessionals.  These rates are subject to review and change reflective of advancing experience and skills of our professionals as well as general economic conditions.  Such changes customarily take effect on the first of each year.

37.     In addition to fees, the Carlyon Law Group charges for ordinary expenses, including electronic reproduction ($.15 per copy); scanning and printing of electronically transmitted documents ($.10 per page); messengers; computerized research, long distance telephone charges, travel, postage, filing fees, court fees, transcripts, extraordinary purchases, and any out of pocket expenses.  Such charges are subject to adjustment from time to time.

38.     No agreement or understanding exists between Carlyon Law Group and any other entity or person for the sharing of compensation to be received for services rendered in connection with this case.

## IX.
## NO PRIOR APPLICATION

39.     No previous application for the relief requested herein has been made to this Court or any other court.

## X.
## NOTICE

40.     Notice of this Application is being served in accordance with this Court's Order Establishing Certain Case Management, Noticing, and Administrative Procedures (Doc. No. 91).

/ / /

1

## XI.
## CONCLUSION

2

3    For the reasons stated above, the Officers respectfully request entry of an order

4    authorizing the relief requested herein, substantially in the form attached hereto as Exhibit A,

5    and granting such other and further relief as is just and proper.

6    Dated this 5th day of March, 2014.

7

8

9

10    _____
      Roland Kiser

11

12    _____
      Klaus Bernhard

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**PROPOSED ORDER**

1

CARLYON LAW GROUP, PLLC

2

CANDACE C. CARLYON, ESQ.

Nevada Bar No. 2666

3

ADAM P. BOWLER, ESQ.

Nevada Bar No. 8383

4

3333 E. Serene Avenue, Suite 110

Henderson, NV 89074

5

Telephone No. (702) 685-4444

6

Facsimile No.  (702) 471-7435

Email: ccarlyon@carlyonsmith.com

7

*Counsel for Roland Kiser and Klaus Bernhart*

8

*as responsible officers of the Debtor*

9

**UNITED STATES BANKRUPTCY COURT**

10

**DISTRICT OF NEVADA**

11

| In re: | Case No.:  BK-S-14-10355-abl and |
|---|---|

12

| MARTIFER AURORA SOLAR, LLC a | BK-S-14-10357-abl |

Nevada limited liability company,

13

Jointly administered under

**Case No.:  BK-S-14-10355-abl**

14

____Affects Martifer Aurora Solar, LLC

Chapter 11

____Affects Martifer Solar USA, Inc.

15

  X   Affects all Debtors

**ORDER RE: APPLICATION FOR**

**ORDER AUTHORIZING RETENTION**

16

Debtors.

**AND EMPLOYMENT OF CARLYON**

**LAW GROUP, PLLC AS SPECIAL**

17

**COUNSEL TO RESPONSIBLE**

**OFFICERS OF THE DEBTOR ROLAND**

18

**KISER AND KLAUS BERNHART**

**EFFECTIVE FEBRUARY 27, 2014**

19

Date:  March 10, 2014

20

Time:  9:30

21

22

23

      The  Court  having  reviewed  and  considered  the  Application  for  Order  Authorizing

24

Retention and Employment of Carlyon Law Group, PLLC as Special Counsel to Responsible

25

Officers of the Debtor Roland Kiser and Klaus Bernhart (the "Application")[3] filed by Roland

26

27

_____

[3]  All capitalized terms not otherwise defined herein shall have the same meaning ascribed in

28

the Application.

Kiser and Klaus Bernhart as responsible officers of Martifer Solar USA, Inc. ("Martifer USA") and Martifer Aurora Solar, LLC ("Aurora", and collectively with Martifer USA, the "Debtors"), debtors and debtors in possession in the above-referenced chapter 11 bankruptcy cases (the "Chapter 11 Cases"), (ii) the Verified Statement of Candace C. Carlyon In Support of Application For Order Authorizing Retention of Carlyon Law Group, PLLC, as Special Counsel to Responsible Officers of the Debtor Roland Kiser and Klaus Bernhart; and with all other findings set forth in the record at the hearing noted above incorporated herein, pursuant to Fed. R. Bankr. P. 7052; and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that venue of these Chapter 11 Cases and the Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); the Court hereby finds (1) notice of the Application was good and sufficient as provided therein and under the circumstances; (2) Carlyon Law Group does not represent any other entity having an interest materially adverse to the interests of the Officers or Debtors in connection with the proposed employment; (3) the employment of special counsel to the Responsible Officers of the Debtors Roland Kiser and Klaus Bernhart is in the best interests of Debtors and their estates; and (4) good cause exists to approve the retention and employment of Carlyon Law Group:

     **NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

     1.    The Application is GRANTED in all respects.

     2.    Pursuant to 11 U.S.C. § 327(a), Rules 2014(a), 2016(b) and 5002 of the Federal Rules of Bankruptcy Procedure, and Local Rule 2014, Responsible Officers of the Debtors, Roland Kiser and Klaus Bernhart, are authorized to retain and employ Carlyon Law Group as special counsel, effective February 27, 2014, to represent the Officers personally in

1    their capacity as responsible officers of the Debtors with respect to the Debtors' Case under

2    the terms set forth in the retainer agreement attached as Exhibit 1 to Application, effective

3    February 27, 2014.

4        3.    Carlyon Law Group shall be compensated from the Debtors' estates in

5    accordance with the procedures set forth in the Application, 11 U.S.C. §§ 330 and 331, the

6    Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States

7    Trustee for the District of Nevada and such other procedures as may be fixed by Orders of

8

9    this Court.

10       4.    Carlyon Law Group is disinterested as that term is defined in Bankruptcy

11   Code section 101(14), as modified by Bankruptcy Code section 1107(b), and used in

12   Bankruptcy Code section 327(a).

13

14       5.    The terms of this Order shall be immediately effective and enforceable upon

15   its entry.

16   Prepared and respectfully submitted by

17   CARLYON LAW GROUP, PLLC

18

19   By: _____
20   CANDACE C. CARLYON, ESQ.
     Nevada Bar No. 2666
21   ADAM P. BOWLER, ESQ.
     Nevada Bar No. 8383
22   3333 E. Serene Avenue, Suite 110
     Las Vegas, Nevada 89074
23

24

25

26

27

28

# EXHIBIT 2

# EXHIBIT 2

3333 E. Sereno Ave., Ste. 110    **Carlyon Law**
Henderson, NV 89074
Phone: 702.685.4444
www.carlyonlawgroup.com    **Group,**

Candace C. Carlyon
Adam P. Bowler

Roland Kiser
Klaus Bernhart
2040 Armacost Avenue, 2nd Floor
Los Angeles, CA 90025
rkiser@martifersolarusa.com
klaus@martifersolarusa.com

Re: Martifer Aurora Solar, LLC BK-S-14-10355-abl and BK-S-14-10355-abl
    jointly administered under BK-S-14-10355-abl

This letter will set forth the agreed scope and terms of representation of Roland Kiser and Klaus Bernhard (collectively, "Clients"), the responsible officers of Martifer Aurora Solar USA, Inc., by the law firm of Carlyon Law Group, PLLC (the "Firm").

### Scope of Representation/Cooperation of Client

The scope of our representation is representation of Clients in bankruptcy proceeding BK-S-14-10355-abl and BK-S-14-10355-abl jointly administered under BK-S-14-10355-abl (the "Bankruptcy").

Representation by the Firm in any additional matters is subject to separate consent of the Firm. If The Firm does represent Clients in additional matters, such representation shall be governed by the terms of this agreement. **The Firm does not provide representation regarding tax matters, securities or gaming law, insurance coverage, environmental or criminal matters.**

Clients agree to cooperate with the Firm, including providing any documents and information requested. The Firm agrees to keep Client apprised of significant developments, and to advise Clients of any decisions or settlement offers relating to the case. Pursuant to the Nevada Rules of Professional Responsibility, the Firm retains the discretion to agree to such matters as extensions of time and continuance of hearing dates. The decision as to when and whether to proffer or accept settlement offers rests with the Clients.

### Financial Arrangements

Clients will cause application for employment and compensation of the Firm to be immediately filed in the Bankruptcy Case. If such employment is approved, the Firm will request compensation from the estate along with other professionals. If such employment is not approved on or before March 12, 2014, the Firm will not be responsible for any representation of Clients unless Clients and the Firm execute a revised retention agreement upon mutually acceptable terms, and Clients fully release and hold harmless the Firm and its members from any

1

representation or liability.  If such employment is approved, Clients agree to be responsible for payment of any fees or costs determined not to be compensable by the estate as being the individual obligation of Clients.  Unless otherwise instructed by Clients, invoices and other notices will be transmitted electronically to the addresses appearing above.  Clients will be responsible for reviewing such invoices and communicating any objection to such charges on a timely basis.  Unless otherwise arranged, payment should be made within ten (10) days of receipt of each invoice.  If the Firm's bills are not paid within thirty (30) days of invoice, such sums may accrue interest at the legal rate as provided by Nevada law.   Clients agree to pay all reasonable costs and fees associated with collection of sums due to the Firm, including fees of the Firm's professionals at their then current hourly rates.

The total fees and costs which may be incurred in a particular matter are a factor of the issues which may be raised or may develop in a particular case, the complexity of the case, the results desired, and the character of the opposition encountered.  The Firm bills for professional time based upon hourly rates; however, charges are incurred in one-tenth of an hour increments.  Ms. Carlyon's current hourly rate is $575 per hour; lower rates are charged by other professionals and by paraprofessionals.  These rates are subject to review and change reflective of advancing experience and skills of our professionals as well as general economic conditions.  Such changes customarily take effect on the first of each year.  In rare situations, the Firm may request compensation in the nature of a bonus, generally in cases when exceptional results are obtained as a result of extraordinary contributions made by the Firm.

In addition to fees, the Firm charges for ordinary expenses, including electronic reproduction ($.15 per copy); scanning and printing of electronically transmitted documents ($.10 per page); messengers; computerized research, long distance telephone charges, travel, postage, filing fees, court fees, transcripts, extraordinary purchases, and any out of pocket expenses.  Such charges are subject to adjustment from time to time.

The Firm has agreed to seek employment and compensation in connection with the Bankruptcy Case.  However, clients are jointly and severally liable for all amounts due hereunder if, for any reason, the Firm is not retained or is not promptly paid by the Bankruptcy Estate; or in the event any amounts paid hereunder are required to be repaid to the Bankruptcy Estate, a Bankruptcy Trustee, any other representative or successors of the Debtors in the Bankruptcy Case, or otherwise.

<u>**Termination of Representation**</u>

Clients may terminate representation, with or without cause, upon court approval.  The Firm may move to terminate representation for cause including, but not limited to, Clients' failure to cooperate with the Firm, the Estate's or Clients' inability or failure to pay the Firm, or for any reason permitted under the Nevada Code of Professional Responsibility or any rules of the applicable courts.  All fees and costs accrued through the termination of representation, including the fees and costs incurred in connection with any necessary motion to withdraw from representation, as well as all fees and costs through the conclusion of the representation as permitted by the Court, are payable upon termination by Clients.  At the conclusion of the representation (or completion of the scope of the engagement), the Firm will transmit a "closing

letter" advising that representation has been concluded. Unless you contact the Firm, in writing, within ten business days from transmission of the closing letter, you will have agreed to termination of the representation and to entry of a court order reflecting withdrawal from representation, which may be sought at the option of the Firm.

### Retention of Files

Unless otherwise instructed below, the Firm shall utilize reasonable efforts to retain Client files in electronic format for seven years following the earlier of the last billing activity in a particular matter or the notification of closing of the matter. However, if you wish to have a copy of the electronic file, you should make that request within ten business days following transmittal of the closing letter. Please note that payment of outstanding invoices may be required prior to transmission of a copy of the file. Please note that the Firm may not create or retain "paper" files.

### Disclosures and Waivers

If the matter involves representation in a bankruptcy, Clients are advised that the Firm may represent other creditors, or other interested parties, in other matters. Due to the nature of bankruptcy proceedings, it is often difficult to determine the identity of all creditors and whether, throughout the case or from time to time, interests of various creditors may be or become adverse. The Firm shall attempt to advise Clients of representation of adverse parties and shall not undertake multiple representation of clients in the same matter at the same time without the consent of Clients. In addition, Ms. Carlyon is married to an attorney who represents Clark County, Nevada as a deputy district attorney, civil division. Although Clark County is a creditor in virtually all bankruptcy cases where property is located in the Las Vegas area, her spouse does not personally undertake representation of Clark County in bankruptcy matters. Further, the son of one of the shareholders of the firm is an associate at the law office of Matthew L. Johnson & Associates, which may represent other parties in bankruptcy proceedings. The Firm will not share any confidential attorney client communications or attorney work product with those individuals.

### Files Constitute Security

Pursuant to Nevada law, the Firm has the right to retain files and other papers and documents (attorney's retaining lien) and/or retain proceeds of litigation or other items of value (attorney's charging lien) in the event the Firm is not paid promptly and in full. This agreement constitutes notice to the Clients of the imposition and exercise of such liens, and consent by the Clients to enforce such liens including, without limitation, via notice to others that funds due to the Clients should be remitted directly to the Firm.

### General Covenants

The undersigned each warrant that they are authorized to execute the agreement on behalf of the applicable entity.

3

This Agreement constitutes the entire understanding between Clients and the Firm. The terms of this Agreement cannot be modified except in writing, signed by the party to be charged.

This Agreement may be signed in counterparts, and a copy, facsimile, or reproduction of this Agreement and any signature is valid as if an original.

This Agreement is governed by the laws of the State of Nevada.

**By executing this Agreement you acknowledge that you have read it carefully and understand each of its terms.**

<u>Conclusion</u>

If you have any questions concerning the foregoing, please call me. In addition, you are welcome to obtain independent legal advice regarding the terms of this Agreement. If these terms are acceptable to you, please execute this letter and return a copy to me. Please understand that we can assume no responsibility or undertake representation of Client until the signed Agreement has been returned, and any requested retainer and documents have been received.

Sincerely,

CARLYON LAW GROUP, PLLC.

Candace C. Carlyon, Esq.

THE FOREGOING IS AGREED TO ON BEHALF OF CLIENT:

Date: 3/4/2014

By: _____
Roland Kiser

By: _____
Klaus Bernhart

4

# EXHIBIT 3

# EXHIBIT 3



3333 E. Serene Ave., Ste. 110
Henderson, NV 89074
Phone: 702.685.4444
www.carlyonlawgroup.com

Candace C. Carlyon

## *Our Professionals:*

### *Candace C. Carlyon*

Ms. Carlyon is a graduate of Loyola Marymount University (B.A., magna cum laude, 1982) and Pepperdine University School of Law (J.D., magna cum laude, 1985).   Her law school accomplishments include Dean's Merit (full tuition) Scholarship, Law Review, and the receipt of American Jurisprudence Awards (highest grade in class) in the areas of Contracts (2), Real Property, Civil Procedure and Criminal Law. Following graduation, she served as a law clerk to Nevada Supreme Court Justice Cliff Young.

Her legal experience includes representation of numerous financial institutions and other lenders, hotels, casinos, creditors' committees, bondholders' committees, title companies, receivers, real estate developers and investment entities.

She is a frequent author and lecturer, including, *Survey of California Supreme Court Decisions*, Pepperdine Law Review, Summer, 1984; *Protection of Secured Interests in Bankruptcy in Nevada*, National Business Institute, Spring, 1989; *Fear and Loaning in Las Vegas*, National Association of Government Guaranteed Lenders, April, 1990; *Lender Liability in Nevada,* National Business Institute, July, 1990; *Bankruptcy Practice and Procedure*, State Bar of Nevada CLE Presentation, December, 1990; *Nevada's One Action Rule*, Southern Nevada Association of Bankruptcy Attorneys, October, 1991; *Bankruptcy Litigation Skills in Nevada*, National Business Institute, August, 1992; *Discovery in Bankruptcy Cases*, Southern Nevada Association of Bankruptcy Attorneys, September, 1993; *Protection of Secured Creditors' Rights in Bankruptcy*, National Business Institute, February, 1994;   *Fundamentals of Bankruptcy Litigation*, National Business Institute, December, 1994; *Bankruptcy Code Overhauled*, Nevada Lawyer, December, 1994; *Commercial Lending*, National Business Institute, March 1995; *The Bankruptcy Act of 1994*, Ninth Circuit Judicial Conference, Spring, 1995; *The Good, the Bad and the Bankrupt,* U.S. Small Business Administration, September, 1995; *Daddy Don't You Walk so Fast:  Bankruptcy Court no Longer Safe Haven for Support Debtors*, Nevada Lawyer, October, 1995; *The Bankruptcy Act of 1994:  One Year Later*, National Credit Managers' Association, December, 1995; *Bankruptcy 101: A Non-Practitioner's guide to Bankruptcy Practice*, State Bar of Nevada, 1996; *Commercial Lending in Nevada*, March, 1996; *1996 Advanced Conference on Commercial Real Estate Leases,* Law Seminars International, August 1996; *Ninth Circuit Bankruptcy Symposium,* Professional Education Systems, Inc., February, 1997; *Fundamentals of Bankruptcy Law and Procedures in Nevada,* National Business Institute, March, 1997; *Bankruptcy Basics*, Credit Managers Association of California, August, 1998; *Understanding the Secret Handshake:  A Bankruptcy Primer for Non-Bankruptcy Attorneys*, Nevada Lawyer, January 1999; *Practices in Bankruptcy Court*, Clark County Bar Association, March, 1999; *Problem Loan Strategies*, Robert Morris Associates, April, 1999; *Advanced Issues in Automatic Stay  Litigation*, American Bankruptcy Institute, September, 2000; *Discovering and Managing Clients' Expectations*, United States District Court Conference, May, 2001; *Creditors' Rights and Protection of Security Interests in Bankruptcy,* Sterling Education Services, LLC, December 2001, *Bankruptcy Strategies for Credit Managers in Nevada*, Credit Managers Association of Nevada, May, 2002; *Mechanics' Lien Claims in Bankruptcy*, American Bankruptcy Institute, Southwest Bankruptcy Conference, September, 2002; *Putting it all*

*on Black and Other Strategies for Casino Reorganizations*, American Bankruptcy Institute, Southwest Bankruptcy Conference, September, 2003; *Top Ten Strategies for Creditors in Bankruptcy Court*, Risk Manager's Association, March 2004; Co-Author, *Section 363 and the Path to World Domination; Can All Be Achieved in the Sale Motion?* and *Why Your Malpractice Premiums Keep Going Up--Current Ethical Issues for Attorneys and Non-Lawyer Professionals in Bankruptcy Cases*, American Bankruptcy Institute, Southwest Bankruptcy Conference, September, 2004; Co-Author, *Pushing the Limits of Section 363 – Is Confirmation Obsolete in the Asset Sale Case*, Journal of Bankruptcy Law and Practice, Vol. 14, November 2, 2005; *Right Without a Remedy?  Small Business 11's Under the 2005 Amendments*, American Bankruptcy Institute, Winter Leadership Conference, December, 2005; *Reflections of an ECF Guinea Pig*, Nevada Lawyer, December, 2005; *How Lenders Can Learn to Stop Worrying and Love the New Bankruptcy Code*, National Association of Professional Mortgage Women, January, 2006; Co-Author, *Top 10 Reasons Lenders Should Love the New Bankruptcy Code*, Risk Management Association, February, 2006; co-author, *Bankruptcy Abuse and Consumer Protection Act – It's Not Just For People Anymore; How the Recent Amendments Affect Commercial Lenders and Borrowers*, Association for Financial Professionals, April, 2006; Co-Author *New "Small Business" Bankruptcy Changes Will Impact Most Chapter 11 Filings*, Clark County Bar Association Communiqué, April 2006, Vol. 27, No. 4; *Bankruptcy for Non-Bankruptcy* Attorneys, Nevada Bar Association, July, 2006; *Advanced Collection* Strategies, Nevada Bar Association, July, 2006; *Everybody in the Pool: A day of Jury Duty*, Nevada Lawyer,  December, 2006; *The Dirt on BAPCPA; New Bankruptcy Legislation and its Likely Effect on Commercial Loan Foreclosure*; Wells Fargo Bank REMAG, September, 2007; *Anatomy of a Sanction*, U.S. District Court Conference, May, 2007; *Creditor Remedies in Bankruptcy*, Horticultural Credit Council, January, 2008; *The Ten Commandments of Commercial Loan Collection*, Risk Management Association, February, 2008; *Bankruptcy Automatic Stay*, Nevada America Inns of Court, January, 2009; *Resolved: Assets May Not be Sold Free and Clear over the Objection of Junior Secured Creditors* (Great Debates), American Bankruptcy Institute Annual Meeting, April, 2009; *363 Sales and the Clear Channel Decision* (Nevada State Bar, August, 2009); *Evidence Litigation Skills Workshop*, American Bankruptcy Institute Southwest Bankruptcy Conference, September, 2009; *Nevada Foreclosure Medication, Program Chair*, American Nevada Inns of Court, October, 2009; *Post Confirmation Litigation – The Latest Issues*, National Conference of Bankruptcy Judges, October, 2009; *Bankers' Guide to Loan Modification Agreements*, Risk Management Association, November, 2009; *Avoiding Lender Litigation*, In House Presentation, Bank of George, December, 2009; *Nevada Real Estate Law*, In House Presentation, Wells Fargo Bank, January, 2010; *Top Ten Bankruptcy Decisions of 2010*, Nevada State Bar, July, 2010; *Update on Bankruptcy*, American Nevada Inns of Court, December, 2010; *Bankruptcy Basics for Bankers*, Risk Management Association, April, 2011; *Tell it to Me Straight-Effective Advocacy Tips,* American Bankruptcy Institute Southwest Bankruptcy Conference, September, 2011; *Advanced Bankruptcy for Bankers,* Risk Management Association, March, 2012; *Update on Restructuring Loans in Gaming,* Las Vegas Turnaround Management Association of Nevada, April, 2011; *Draft it Forward:  Bankruptcy Drafting Tips for Non-Bankruptcy Attorneys*, Nevada State Bar Annual Meeting, June, 2012; Moderator, *View From The Top – A Panel of Bank Presidents*, Risk Management Association, May, 2013; *Resolved:  Success Fees for Financial Advisors in Bankruptcy Should Be Abolished*, American Bankruptcy Institute Southwest Bankruptcy Conference, August, 2013; *Boot Camp: Foreclosure and Loan Workout Procedures*, National Business Institute, September, 2013.

Ms. Carlyon is the past Chair of the Nevada Bar Association's Bankruptcy Section; a member of the American Bankruptcy Institute (also serving as Chair of the Southwest Bankruptcy Conference); the former Chair of the Subcommittee of Gaming, Hospitality and Entertainment for the American Bankruptcy Institute; and is a Master Emeritus of the Nevada Chapter of the American Inns of Court. Ms. Carlyon is the President Elect of the American Board of Certification of Bankruptcy and Insolvency Professionals, and has been recognized by that organization as a certified Commercial Bankruptcy Specialist since 1994.  She served as a Ninth Circuit Lawyer Representative in the District of Nevada, a Nevada Supreme Court Settlement Judge, and as a mediator with the Nevada Foreclosure Mediation program. Ms. Carlyon is currently serving as a Judge *Pro Tempore* for the Clark County Eighth Judicial District Court's Short Trial Program, has recently been invited to join the American Arbitration Association's panels of mediators and arbitrators, and is a member of the Nevada State Bar Lawyer Disciplinary Committee. Ms. Carlyon has been recognized in *The Best Lawyers in America*

in the field of bankruptcy since 1994, and has held an "A-V" rating, the highest available, from Martindale-Hubbell since 1989. She has been repeatedly been recognized in such publications as *Super Lawyers* and *Mountain States Lawyers*. She has been a member of the Nevada Bar since 1986 and a member of the California Bar since 1985. She is also admitted to the bar of the United States Supreme Court.

**Ms. Carlyon can be reached via email at ccarlyon@ccarlyon.com.**

## *Adam Bowler*

Mr. Bowler was born and raised in Las Vegas and has practiced law in Southern Nevada for ten years. He received his undergraduate degree in accounting from the University of Nevada, Las Vegas in 2001 and his Juris Doctorate, cum laude, from Boyd School of Law in Las Vegas in 2003. Mr. Bowler practices primarily in the areas of corporate and consumer workouts, restructuring, commercial litigation, and bankruptcy. Mr. Bowler's practice also includes real estate, government licensing/land use and planning, and general corporate law. He is a member of the Las Vegas Chapter of the Risk Management Association and the Las Vegas Southwest Rotary Club. He is the co-author of *What Every Attorney Needs to Know About Bankruptcy* slated for publication in the March, 2014 edition of Nevada Lawyer.

## *Veronica Fink, Paralegal*

Ms. Fink has been a paralegal since 2008. She holds a B.A. in Anthropology from the University of California, Santa Barbara (2004) and a certificate of achievement in paralegal studies from the College of Southern Nevada (2008). She is a former National Association of Legal Assistants liaison for the Las Vegas Valley Paralegal Association. Ms. Fink also serves as an educational surrogate parent through Legal Aid of Southern Nevada.