BRETT A. AXELROD (NV Bar No. 5859)
MICAELA RUSTIA MOORE (NV Bar No. 9676)
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       mmoore@foxrothschild.com
*Counsel for Martifer Aurora Solar, LLC
and Martifer Solar USA, Inc.*

Electronically Filed April 24, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,

☐ Affects Martifer Aurora Solar, LLC
☒ Affects Martifer Solar USA, Inc.
☐ Affects all Debtors

Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl

Jointly Administered under
Case No. BK-S-14-10355-abl

Chapter 11

**DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT, PURSUANT TO FED. R. BANKR. P. 9019, BETWEEN MARTIFER SOLAR USA, INC., CHATSMOUTH, LLC AND SOLAR OPTIMUM, INC.**

Hearing Date:  OST PENDING
Hearing TIme:  OST PENDING

Martifer Solar USA, Inc. ("Martifer USA" or "Debtor"), debtor and debtor in possession in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), respectfully submits this motion (the "Motion") for Approval of Settlement Agreement, Pursuant to Fed. R. Bankr. P. 9019, Between Martifer USA, Chatsmouth, LLC ("Chatsmouth"), and Solar Optimum, Inc. ("Optimum"), for entry of an order, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement") attached as Exhibit 1 to the Tucker Declaration (defined below), that resolves the disputes between them concerning (a) the obligations, if any, due by Martifer USA and/or Chatsmouth to each other under the provisions of the

Engineering, Procurement and Construction Agreement (the "EPC Agreement") and the Operation and Maintenance Agreement (the "Maintenance Agreement"); and (b) the obligations, if any, due by Martifer USA and/or Optimum to the other under the provisions of the Subcontractor Agreement between them (the "Subcontract").

By this Motion, Debtor requests approval of the Settlement Agreement and authorization from the Court to take any actions contemplated by the Settlement Agreement, as more fully explained in the memorandum below.

This Motion is made and based upon the following memorandum of points and authorities, the Declaration of Michael Tucker (the "Tucker Declaration"), filed concurrently herewith and in support hereof, the papers and pleadings on file with the Court in the Chapter 11 Cases, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing on the Motion.

WHEREFORE, Debtor requests that the Court enter an order (i) approving the Settlement Agreement; (ii) authorizing Debtor to take all actions contemplated by the Settlement Agreement according to the terms and provisions thereof; and (iii) granting such further relief as the Court deems just and proper.

Dated this 24th day of April, 2014.

**FOX ROTHSCHILD LLP**

By  *s/ Brett A. Axelrod*
    BRETT A. AXELROD (NV Bar No. 5859)
    MICAELA RUSTIA MOORE (NV Bar No. 9676)
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*Counsel for Martifer Aurora Solar, LLC
and Martifer Solar USA, Inc.*

# MEMORANDUM OF LAW
# POINTS AND AUTHORITIES

## I.
## PRELIMINARY STATEMENT

Martifer USA, Chatsmouth, and Optimum (the "Settling Parties") have reached an arms length and negotiated settlement of all disputes between them in connection with the EPC Agreement, the Subcontract, and the Maintenance Agreement on terms and conditions that are reasonable, fair and equitable. Tucker Declaration, ¶6. Such agreement is memorialized in the Settlement Agreement attached as Exhibit 1 to the Tucker Declaration and incorporated for all purposes herein by this reference.

## II.
## JURISDICTION

1. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9019(a).

## III.
## FACTUAL BACKGROUND

4. On January 21, 2014 (the "Petition Date"), Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. See Docket No. 1.

5. Debtor continues to operate and manage its business as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. See generally Chapter 11 Case Docket.

6. Chatsmouth is the owner of a commercial property located at 9640 Owensmouth Avenue, Chatsworth, California 91311 (the "Property"). Settlement Agreement, Ex. 1 to Tucker Decl., at 1.

7. Martifer USA is a general contractor that designs, constructs and installs photovoltaic systems. Id.

8. Optimum is a contractor that designs, constructs and installs photovoltaic systems and that also performs such work as a subcontractor. Id.

9. On or about June 6, 2013, Chatsmouth and Martifer entered into the EPC Agreement for the design, acquisition of components and construction of a 615.67 kilowatt photovoltaic power plant at the Property (the "Project"). Id. A copy of the EPC Agreement is attached as Exhibit A to the Settlement Agreement. Ex. A to Ex. 1 to Tucker Decl.

10. On or about October 16, 2013, Martifer USA entered into the Subcontract with Optimum for racking, panelization and installation services and material as more fully described in the Subcontract (the "Optimum Services"). Settlement Agreement, Ex. 1 to Tucker Decl., at 1. A copy of the Subcontract is attached as Exhibit B to the Settlement Agreement. Ex. B to Ex. 1 to Tucker Decl.

11. The total contract price for the Project under the terms of the EPC Agreement was $1,483,434.64, of which $1,149,766.35 had been paid by Chatsmouth to Martifer USA prior to the Petition Date, leaving a balance (without accounting for adjustments, if any) of $333,668.29. Settlement Agreement, Ex. 1 to Tucker Decl., at 1.

12. The total original contract price for the Optimum Services under the terms of the Subcontract was $322,518.00 and change orders totaling an additional $63,278.04 were requested and approved of which $54,000 had been paid by Martifer USA to Optimum prior to the Petition Date, leaving a balance (without accounting for adjustments, if any) of $331,796.04. Id.

13. Chatsworth and Martifer USA also entered into the Maintenance Agreement. Id.

14. The EPC Agreement provides that a progress payment is due at such time as Chatsmouth and Martifer USA acknowledge by a jointly executed notice of substantial completion that substantial completion of the Project has occurred. Id. at 2. The EPC Agreement further provides that the balance of sums due will thereafter be paid on final completion of the project. Id.

15. On or about January 17, 2014, Martifer USA sent Chatsmouth a proposed notice of substantial completion. Chatsmouth disputed that the Project was substantially completed and, on or about January 24, 2014, within the time permitted under the EPC Agreement, Chatsmouth rejected the notice of substantial completion. Disputes remain between Chatsmouth and Martifer USA regarding certain items of work on the Project. As part of the Settlement Agreement, Optimum will complete the

remaining items. Those disputes are among the matters intended to be resolved by the Settlement Agreement. For its part, Martifer USA denies that any of its work was defective. Id.

16. On or about January 24, 2014, Optimum recorded a mechanic's lien (the "Mechanic's Lien") against the Property to secure payment to Optimum of the sum of $329,196.04 that it claims to be owed. Optimum had previously served a 20-day preliminary notice. The EPC Agreement provides that "Client's [Chatsmouth's] title to all Equipment shall be free and clear of all liens, claims, charges, security interests, and encumbrances whatsoever, upon payment. .. to Contractor." The EPC Agreement defines "Equipment" to, inter alia, "include all material, equipment and components" of the Project. Id.

17. Martifer USA cannot presently fulfill its obligation to deliver the Project to Chatsmouth free and clear of liens in that Martifer USA cannot pay Optimum because all or substantially all of the Optimum Services were performed prior to the filing of the Chapter 11. Id.

## IV.
## THE SETTLEMENT AGREEMENT

**A.  Payment.**

18. The Settlement Agreement provides that Optimum shall complete installation (collectively "Completion") of the agreed upon outstanding items. Id. at 3. On the later of Completion or ten days after the Approval Order has become final, Chatsmouth shall deliver a wire transfer in the sum of $331,796.04 to Optimum's bank account pursuant to wire transfer instructions provided by Optimum (the "Optimum Payment") and deliver a check to Martifer USA at the place for notice below in the sum of $1,872.25. Id. Optimum shall accept said payment in full satisfaction of its rights, claims, demands, causes of action of any kind or nature arising under or related to the Subcontract and/or the Optimum Services and/or the performance of any work or service or the procurement or delivery of any materials, supplies, equipment and components to the Project or Property. Id. at 3-4. The Settlement Agreement provides the Optimum shall waive and release any and all pre-petition claims of any kind or nature against Martifer USA. Id. The Settlement Agreement provides that on receipt of the Optimum Payment, Optimum shall duly execute and record a release of its Mechanic's Lien at the offices of the Los Angeles County Recorder by 5:00p.m. on or before the second business

day following receipt of payment and if a lawsuit on the Mechanic's Lien has been filed, Optimum shall concurrently deliver a dismissal of such lawsuit with prejudice to Chatsmouth. Id. at 3.

19. Chatsmouth's delivery of the Optimum Payment shall constitute full satisfaction of all of Chatsmouth's obligations and liabilities under the ECP Agreement. Id. The Settlement Agreement provides for full satisfaction of Chatsmouth's, rights, claims, demands, causes of action of any kind or nature arising under or related to the ECP Agreement and/or the performance of any work or service or the procurement or delivery of any materials, supplies, equipment and components to the Project or Property, including without limitation the "Equipment" as defined in the ECP Agreement. Id. In consideration of the foregoing, Chatsmouth shall accept the Project in its present condition as satisfying Martifer USA's obligations to deliver substantial completion and final completion of the Project under the ECP Agreement. Id. The Settlement Agreement provides that Chatsmouth shall waive and release any and all pre-petition claims of any kind or nature against Martifer USA, including express or implied warranty claims against Martifer USA, with respect to the Equipment, including without limitation any claim that materials used in the Project did not meet contract specifications or breach of warranty, but does not waive any such claim as to any subcontractor or material provider related to the Project. Id.

20. Paragraph 6 of the Settlement Agreement provides that the Maintenance Agreement will be terminated by the mutual consent of Chatsmouth and Martifer USA and that the Maintenance Agreement will be rejected pursuant to 11 U.S.C. §365(a). Id. at 3-4.

## V.

## ARGUMENT

**A.    Legal Standard.**

Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The Court is afforded great latitude in approving compromise agreements. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In re A&C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986) (citations omitted). Moreover, "[t]he law favors compromise and not litigation for its own

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

sake . . . ." Id., at 1381. Accordingly, to approve a settlement agreement, a bankruptcy court need not conduct a mini-trial on the merits of the claims or an exhaustive investigation into the underlying dispute between the parties. Matter of Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982). It is sufficient that a bankruptcy court find the settlement was negotiated in good faith and that it is fair and equitable in order to approve such compromise. In re A&C Properties, 784 F.2d at 1381.

The court in A&C Properties identified the factors that a bankruptcy court must consider in determining whether a proposed settlement agreement is reasonable, fair and equitable:

  (a) the probability of success in the litigation;

  (b) the difficulties, if any, to be encountered in the matter of collection;

  (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

  (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

A & C Properties, 784 F.2d at 1381 (citations omitted).

  In considering these factors, bankruptcy courts need not decide disputed facts and questions of law but, rather, need only canvass the issues. See Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997). "If the court were required to do more than canvass the issue, 'there would be no point in compromising; the parties might as well go ahead and try the case.'" Suter v. Goedert (In re Suter), 396 B.R. 535, 548 (D. Nev. 2008) (quoting 10 Collier on Bankruptcy, ¶ 9019.02). Additionally, "while creditors' objections to a compromise must be afforded due deference, such objections are not controlling." In re A & C Properties, 784 F.2d 1382. Indeed, the settlement need not be the best that could have been achieved, but only must not "fall below the lowest point in the range of reasonableness." In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citations omitted).

**B.  The A&C Properties Factors Weigh Heavily in Favor of Approving the Settlement.**

  The Settlement Agreement should be approved because all of the A&C Properties Factors favor such approval. While the Debtor disputes it would be subject to liability if the Chatsmouth-Optimum matter were litigated, it also has very little upside in such litigation. As noted above, the primary

liabilities at issue are completion of the projety, removal of the mechanic's lien which includes avoiding the potential foreclosure of Chatsmouth's property and the warranty and maintenance obligations. The Settlement Agreement fully resolves all such issues and additionally terminates the Maintenance Agreement, the duties pursuant to which the Debtor is in no position to fulfill given its current situation. Moreover, the Debtor will receive the difference of its receivable and its payable in relation to the Project, the ECP Agreement, and the Subcontract, a modest but not inconsequential amount.

But for approval of the Settlement Agreement, disputes involving the ECP Agreement, the Subcontract, and the Maintenance Agreement could linger and prove costly. Rather than engage in such litigation, the Settlement Agreement contemplates an immediate resolution of all matters involving the Settling Parties. In addition to benefiting the Settling Parties, the Settlement Agreement therefore benefits creditors in that it resolves the pending disputes without requiring the Debtor to incur additional expense relating to the outstanding issues.

Most importantly, the Settlement Agreement provides for full releases including releases of any pre-petition damage claims, warranty claims and maintenance claims and thus reduces the pool of unsecured creditors.

## VI.

## CONCLUSION

Debtor believes the Settlement Agreement should be approved. Upon consideration of the A&C Properties factors, the Settlement Agreement is fair and equitable and was by all accounts negotiated in good faith and otherwise satisfactorily meets the Ninth Circuit's test for approving compromises of controversies under Bankruptcy Rule 9019.

WHEREFORE, for all of the foregoing reasons, Debtor respectfully request that this Court enter an Order (i) approving the Settlement Agreement, (ii) authorizing Debtor to take all actions

///

///

///

///

1 contemplated by the Settlement Agreement according to the terms and provisions thereof, and (iii)
2 granting such further relief as the Court deems just and proper.
3     Dated this 24th day of April, 2014.

4                                 **FOX ROTHSCHILD LLP**

5                                 By___*s/Brett A. Axelrod*_____
                                        BRETT A. AXELROD (NV BAR NO. 5859)
6                                       MICAELA RUSTIA MOORE (NV BAR NO. 9676)
                                        3800 Howard Hughes Parkway, Suite 500
7                                       Las Vegas, Nevada 89169
8                                  *Counsel for Martifer Aurora Solar, LLC
                                   and Martifer Solar USA, Inc.*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)