**MARTIFER**
SOLAR

**EXHIBIT H**

**Warranty**

1. Contractor System Workmanship Warranty

   Commencing on the Substantial Completion Date for a System, and for a period of ten (10) years, Contractor warrants that such System will be free from defects in design, construction and workmanship under normal operating conditions and shall conform to the requirements of the corresponding Agreement, including the Scope of Work (the "Warranty"). Notwithstanding the foregoing, this Warranty shall not include any warranty statements provided by Other Manufacturers as described in Section 2.13. This warranty only applies to labor provided by Contractor or its subcontractors. Contractor does not make (and hereby expressly disclaims) any other warranties of any kind whatsoever. If labor shall prove defective within the time period set forth in this paragraph, Contractor will make repairs at its own cost and expense. Contractor expressly disclaims and does not warrant the components, parts, items or equipment of, or which compose or comprise, the System and shall not be responsible to repair, replace, or remedy any failure in the System resulting from failed equipment or components. Contractor shall not be liable for any defect or deficiency to the extent that the same results from the specific written direction of Client relating to the Work and/or the Systems; provided that any such defect or deficiency is not the result of Contractor's failure to properly implement the Work in accordance with this Agreement. The warranty will not include damage, malfunction, or degradation of electrical output caused by failure to properly operate or maintain the System in accordance with printed instructions provided with the system. The warranty will not include damage, malfunction, or degradation of electrical output caused by any repair or replacement using a part or service not provided or authorized in writing by the Contractor. The warranty will not include damage, malfunction, or degradation of electrical output resulting from Client or third party abuse, accident, alteration, improper use, negligence or vandalism, or from earthquake, fire, flood, or other acts of God. The scope of such warranty will not include the warranty statements provided under the warranties referenced in Section 2.13(b) below. Unless this warranty is extended by written agreement or a Manufacturer Warranty applies, Client shall pay for any repair costs incurred by Contractor after the ten (10) year Warranty expires.

2. Manufacturer Warranties

   Contractor assigns to Client the applicable pass-through warranties from Contractor's manufacturers, including photovoltaic modules and inverters ("Other Manufacturers"), to the extent such warranties are assignable. The Other Manufacturers used for the Systems shall be stated in Design Submittal. Contractor makes no representation or warranty, and Client shall seek no recourse from Contractor, regarding the warranties of Other Manufacturers, including, without limitation, the power output of the PV modules. Contractor agrees that the performance warranty on modules shall be for twenty (25) years and that warranty on inverters shall be for twenty (20) years.

3. Contractor's Responsibilities Related to Roof:

   Without limitation of any of the foregoing, Contractor expressly acknowledges that should the roof of the Site where the System is to be installed be damaged as a result of actions taken by Contractor, its agents, or subcontractors during the course of construction, Contractor shall liable for the repair and remedy of such damage. Thereafter, for a period terminating two years after the completion of construction of the System, Contractor shall remedy and repair any roof leaks reasonably determined to be caused by the attachment points of the System.

4. Warranty Exceptions

   This Warranty shall be void in the event of any of the following:

   a. Alterations or repairs made to the applicable System's supporting structure, or to any part of such System or associated wiring and parts without Contractor's prior written approval;
   b. Use of such System beyond the scope contemplated in its operating manuals or Technical Specifications;
   c. Force Majeure Events;
   d. A change in usage of the applicable Site, which may affect building or site permits and related requirements, without the written approval of Contractor, or a change in ownership of building or property and the new owner has not signed an assumption agreement of the terms and conditions set forth in this Agreement; and
   e. Damage, malfunction or degradation of electrical output caused by third-party abuse, negligence, improper use or vandalism.

5. Disclaimer

   Except as expressly provided herein, Contractor expressly disclaims any and all warranties of any kind, express, implied or statutory, including without limitation any implied warranties of merchantability and/or fitness for a particular purpose. Neither this Agreement nor any document furnished under it, unless explicitly stated, is intended to express or imply any

ACTIVE 20807152v2 06/06/2013 1:57 PM

EXHIBIT A

# MARTIFER
## SOLAR

warranty or guarantee with regard to the performance of the System with respect to (i) reduction in energy costs or environmental savings, (ii) financial savings or return on investment and (iii) public recognition.

EXHIBIT A

# MARTIFER
## SOLAR

**EXHIBIT I**

**Site Layout**



**EXHIBIT A**

# MARTIFER
## SOLAR

**Exhibit J**

**Notice of Substantial Completion**

Date: _____

Chatsmouth, LLC
11062 Winnetka Avenue
Chatsworth, CA 91311
Attn: Rishi Kapadia

Re: CHATSMOUTH SUBSTANTIAL COMPLETION NOTICE

This notice is issued pursuant to Section 4.1 (c) of that certain Engineering, Procurement, and Construction Contract (the "Agreement"), dated as of  June 6, 2013 , by and between Martifer Solar USA, Inc., a California corporation, ("Contractor") and Chatsmouth, LLC, a California limited liability company, (the "Client"). Capitalized terms used but not defined herein have the meanings set forth in the Contract.

According to Section 4.1(c) of the Agreement, the following items are conditions precedent to Substantial Completion:

(i)     The System is mechanically, electrically, and structurally constructed in accordance with this Agreement, the Work and Industry Standards, except for non-critical punch list items;

(ii)    The medium voltage infrastructure and the grid connection for the System are mechanically, electrically and functionally complete and capable of interconnection with the local utility;

(iii)   Commissioning according to procedures set forth in Exhibit G is completed successfully and the corresponding certificates are duly signed by Client's Representative, the Contractor's Representative; and

(iv)   Client and Contractor shall have agreed on the punch list items.

The Contractor reasonably believes that all of the above listed requirements of Substantial Completion are complete.

Client may visit the Site and review the applicable data and documentation in order to confirm that such System has achieved Substantial Completion.  If Client is satisfied that such System has achieved Substantial Completion, Client shall acknowledge and confirm Substantial Completion by signing this notice below and returning this executed form to the Contractor.  Failure of Client to provide written notice of rejection of Substantial Completion within ten (10) business days of this notice shall constitute acceptance of this Substantial Completion Notice.

Contractor:

MARTIFER SOLAR USA, INC.,

Date: _____

By: _____

Name: _____

Title: _____

Acknowledged and Confirmed
Client:

CHATSMOUTH, LLC,

Date: _____

By: _____

Name: _____

Title: _____

EXHIBIT A

# MARTIFER
## SOLAR

**Exhibit K**

**Final Completion Certificate**

Date: _____

Chatsmouth, LLC
11062 Winnetka Avenue
Chatsworth, CA 91311
Attn: Rishi Kapadia

Re: FINAL COMPLETION CERTIFICATE

    This certificate is issued pursuant to Section 4.2 of that certain Engineering, Procurement, and Construction Contract (the "Agreement"), dated as of June 6, 2013 , by and between Martifer Solar USA, Inc., a California corporation, ("Contractor") and Chatsmouth, LLC, a California limited liability company, (the "Client"). Capitalized terms used but not defined herein have the meanings set forth in the Contract.

    According to Section 4.2 of the Agreement, the following items are conditions precedent to Final Completion:

(v)      All punch list items have been completed or waived;

(vi)    All manuals, drawings and other documents expressly required to be delivered by Contractor hereunder have been delivered to Client;

(vii)   All final Lien waivers have been obtained;

    The Contractor is certifying that all of the foregoing conditions of Final Completion have been satisfied.

    Client shall, within ten (10) business days after the receipt by Client of this written certificate, execute the below acknowledgment if Contractor has achieved Final Completion. Execution of the below acknowledgment or failure of Client to provide written notice of Contractor's failure to achieve Final Completion within ten (10) business days shall constitute acceptance of this Contractor's Final Completion Certificate.

EXHIBIT A

# MARTIFER
## SOLAR

| Contractor: | Acknowledged and Confirmed Client: |
|---|---|
| MARTIFER SOLAR USA, INC.,<br>a California corporation | CHATSMOUTH, LLC,<br>a California limited liability company |
| Date:_____ | Date:_____ |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

EXHIBIT A

# MARTIFER
SOLAR

| | |
|---|---|
| Subcontractor Name: | Solar Optimum, Inc. |
| Project Name and No.: | Chatsmouth LLC US1.9096 |
| Subcontract No.: | 0230 |

## SUBCONTRACTOR AGREEMENT

This SUBCONTRACTOR AGREEMENT ("Agreement") is made and entered into as of October 16, 2013, by and between SOLAR OPTIMUM, INC. with its principal offices located at 1010 North Central Avenue, Suite 390 , Glendale, CA  91202 ("Subcontractor") and MARTIFER SOLAR USA, INC. with its principal offices located at 2040 Armacost Avenue, 2nd Floor, Los Angeles, CA  90025 ("Martifer").  Subcontractor and Martifer are each referred to individually herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, Martifer designs, constructs and installs photovoltaic systems and has contracted to develop a 615.67 kW DC system (the "System") to be located at 9640 North Owensmouth Avenue, Chatsworth, CA  91311 (the "Site");

WHEREAS, Martifer desires to engage Subcontractor to provide services, equipment and/or materials to contribute in the development of such System.

WHEREAS, Subcontractor represents that it is fully qualified to provide such products and perform such services by virtue of its experience and the training, education and expertise of its principals, employees, and Lower-Tier Subcontractors.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of where are hereby acknowledged, the Parties hereto hereby agree as follows:

## AGREEMENT:

### I.    DEFINITIONS

For the purposes of this Agreement, the following terms shall have the meanings set forth below:

"Claims" means any and all claims, demands, actions, proceedings, causes of action, damages, judgments, awards, settlement amounts, penalties, fines, assessments, charges, fees, forfeitures, losses, liabilities, obligations, costs and expenses including attorneys' fees.

"Client" means Chatsmouth LLC located at 11062 Winnetka Avenue, Chatsworth, CA  91311.

"Commencement" means the date on which this Agreement is executed, which is when Subcontractor shall begin Work.

"Completion Deadline" means December 31, 2013.

"Contract Price" means Three Hundred Twenty Two Thousand Five Hundred Eighteen Dollars ($322,518.00).

"Environmental Laws" means all federal, state or local laws and regulations relating to pollution or protection of human health or of the environment.

"Environmental Permits" means all permits, licenses, approvals, consents or authorizations issued by a federal, state or local governmental entity.

"Final Completion" means the date on the conditions precedent set forth in Section 3.7 below have been satisfied.

"Force Majeure" means a strike, boycott, labor dispute, embargo, act of God, act of the public enemy, riot, rebellion, accidental damage, vandalism, or sabotage.

"Hazardous Materials" means chemicals, pollutants, contaminants, wastes and toxic substances of all types and natures including without limitation, solid or hazardous wastes, hazardous substances, gasoline, any petroleum product or byproduct and asbestos, as may be governed by any Environmental Laws.

"Indemnitees" means, collectively, Martifer and its representatives, directors, officers, employees, assigns, agents and Client.

"Indemnitors" means Subcontractor and its representatives, directors, officers, employees, agents and Lower-Tier Subcontractors.

"Lower-Tier Subcontractor" means a subcontractor whom is hired by Subcontractor or another subcontractor.

"Martifer Project Manager" means Tim Lutey.

"Payment Application" means Exhibit D to be completed monthly by Subcontractor on or before the 10th of each month.

"Performance Tests" means the series of DC-side tests and AC-side commissioning attached as Exhibit C.

"Site" means the real property commonly known as Chatsmouth LLC and located at 9640 North Owens Avenue, Chatsworth, CA  91311.

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

AA
KB

**EXHIBIT B**

# MARTIFER
## SOLAR

"<u>Subcontractor Project Lead</u>" means Arno Aghamalian.

"<u>Substantial Completion</u>" means the date on the conditions precedent set forth in <u>Section 3.6</u> below have been satisfied.

"<u>System</u>" shall have the meaning set forth in the Recitals.

"<u>Term</u>" means the term of this Agreement, as set forth in <u>Section 10.1</u> hereof.

"<u>Termination</u>" shall refer to early termination of this Agreement.

"<u>Warranty Period</u>" means the ten (10) year period beginning on the date of Final Completion, which shall survive the Term.

"<u>Work</u>" shall mean all obligations, duties, and responsibilities assigned to or undertaken by Subcontractor and described in <u>Exhibit A</u>.

2.    **SUBCONTRACTOR OBLIGATIONS.**

2.1    <u>Scope of Work</u>

Subcontractor shall, on behalf of Martifer, perform the Work in accordance with the Scope of Work, attached hereto as <u>Exhibit A</u>.

2.2    <u>Compliance with Law</u>

Subcontractor shall comply, and shall require its Lower-Tier Subcontractors to comply, with all applicable laws of every kind and nature, in effect relating to the Work and/or the Site and shall give all applicable notices pertaining thereto. Subcontractor shall ensure that the Work, as designed, engineered and constructed, complies with all applicable laws.

3.    **PERFORMANCE REQUIREMENTS.**

3.1    <u>Standard for Performance</u>

Subcontractor shall perform its obligations under this Agreement in compliance with applicable law and in a diligent and competent manner consistent with the professional standards, practices and procedures generally applicable to the performance of comparable obligations. Subcontractor shall be responsible for the professional quality, technical accuracy, completeness and coordination of the services. Martifer's inspection, acceptance of, or payment for any of the services shall not (i) be construed to relieve Subcontractor of any of its liabilities or obligations under this Agreement; or (ii) operate as a waiver of any of Martifer's rights and remedies under this Agreement with respect to any Subcontractor errors, omissions, default, breach or failure to perform this Agreement.

3.2    <u>Force Majeure</u>

Neither Subcontractor nor Martifer will be liable for or be considered to be in breach of or in default under this Agreement (other than for failure to make payment when due) on account of any delay or failure to perform as required by this Agreement as a result of Force Majeure. To the extent that either Party's performance is delayed or prevented by Force Majeure, the delayed Party will notify the other Party of the conditions for invoking Force Majeure within five (5) business days of the occurrence of the event through the Change Order procedure and will provide its best estimate of the time by which performance can be re-commenced. In the event that Force Majeure continues for more than thirty (30) days, the delayed Party may, by written notice delivered during the Force Majeure, elect either: (a) to terminate this Agreement by written notice to the other Party; or (b) to extend the Term and, extend the Completion Deadline if necessary, by a number of days equal to the Force Majeure. Any uncommon weather activity, including excessive rain, which materially interferes with Subcontractor's performance under this Agreement shall be considered a Force Majeure as said term is defined herein.

3.3    <u>Protective Measures</u>

(a)    <u>Liability</u>. Subcontractor shall be responsible for all injury or damage to individuals or property that may occur as a result of its performance of the Work or that of its Lower-Tier Subcontractors in connection with the performance of this Agreement. Subcontractor shall be responsible for the proper care and protection of all equipment and materials, and the Work that it performs, until Final Completion.

(b)    <u>Subcontractor Responsibilities</u>. Subcontractor shall take all reasonably necessary precautions for the safety of its employees working at the Site and for the prevention of accidents or injury to individuals on, about, or adjacent to the premises. Subcontractor shall keep the Site and surrounding areas free from accumulation of waste materials or rubbish caused by Subcontractor's Work.

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

*A/A*
*KB*

EXHIBIT B

# MARTIFER
SOLAR

    (c)    <u>OSHA</u>.  Subcontractor shall comply with all applicable OSHA laws and regulations.  Any violation of applicable OSHA laws will be considered a failure of performance in accordance with <u>Section 10.2</u>.

    (d)    <u>Safety Plans</u>.  Subcontractor shall submit Site Specific Safety Plan (SSSP) and Injury Illness Prevention Plan (IIPP) to Martifer prior to commencing Work onsite.

**3.4**    <u>Hazardous Materials</u>

    (a)    <u>Subcontractor Responsibilities</u>. Subcontractor shall be responsible for compliance with all Environmental Laws and Environmental Permits regarding the Work and the Site, including but not limited to those concerning Hazardous Materials.  Subcontractor is responsible for compliance with any requirements included in the Scope of Work regarding Hazardous Materials at the Site.

    (b)    <u>Unexpected Conditions</u>.  If Subcontractor encounters any Hazardous Materials not addressed in the Scope of Work and if reasonable precautions will be inadequate to prevent property damage or bodily injury resulting from a Hazardous Material encountered on the Site by Subcontractor, Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to Martifer.  Upon the receipt of such notice, Martifer will direct the Subcontractor regarding further actions it should take.

**3.5**    <u>Performance Testing</u>

    (a)    <u>Responsibilities of the Parties</u>.  Subcontractor shall operate the System during the Performance Tests in accordance with <u>Exhibit C</u>, and Martifer representatives shall be entitled to be present.  Subcontractor shall provide Martifer with at least seven (7) days' written notice before starting the Performance Tests.

    (b)    <u>Successful Tests</u>.  If the results of a Performance Test can be immediately obtained at the Site and the Performance Test has been completed successfully, the Martifer Project Manager and the Subcontractor Project Lead shall execute the relevant results certificate.  If the results of the Performance Test cannot be immediately obtained at the Site, then within twenty-four (24) hours of the Performance Test, Subcontractor shall submit the relevant results certificate to the Martifer Project Manager.  Within five (5) business days, the Martifer Project Manager shall determine whether the Performance Test has been successfully completed and shall execute the results certificate in the event of successful completion.

    (c)    <u>Failed Tests</u>.  If the System fails to satisfy any Performance Test, Subcontractor shall promptly take all corrective actions and repeat the process in <u>Section 3.5(b)</u> until the successful completion the Performance Tests, without prejudice to Martifer's rights and remedies in accordance with this Agreement.

**3.6**    <u>Substantial Completion</u>

    (a)    The following are conditions precedent to Substantial Completion:

CONFIDENTIAL
CA LICENSE#813701

A CA
KB

EXHIBIT B

**MARTIFER**
SOLAR

(1) The System is mechanically, electrically, and structurally constructed in accordance with this Agreement, the Work and industry standards, except for non-critical punch list items;

(2) The grid connection for System are mechanically, electrically and functionally complete and capable of interconnection with the local utility;

(3) Commissioning according to procedures set forth in Exhibit C is completed successfully and the corresponding certificates are duly signed by Client's Representative, the Contractor's Representative; and

(4) Solar system receives "Permission to Operate" or is deemed as such by a certified authority

(5) Client and Martifer shall have agreed on punch list items.

(b) When Subcontractor reasonably believes it has achieved Substantial Completion, Contractor shall give Client written notice, attached hereto as Exhibit K, certifying that all of the conditions of Substantial Completion have been satisfied. Martifer (i) may visit the Site and review the applicable data and documentation in order to confirm that such System has achieved Substantial Completion and (ii) if Martifer is satisfied that such System has achieved Substantial Completion, deliver to Subcontractor a written confirmation to such effect; such written confirmation shall not be unreasonably withheld.

3.7    **Final Completion**

(a) The following are conditions precedent to Final Completion:

(1) All punch list items contemplated in Section 3.6 have been completed or waived;

(2) Commissioning according to procedures set forth in Exhibit C is completed successfully and the corresponding certificates are duly signed by Client's Representative, Martifer's Representative;

(3) All manuals, drawings and other documents expressly required to be delivered by Subcontractor hereunder have been delivered to Martifer; and

(4) All final Lien waivers have been obtained.

(b) When Subcontractor believes it has achieved Final Completion, Subcontractor shall submit to Martifer a written letter of Final Completion, attached hereto as Exhibit L, certifying that all of the foregoing conditions have been satisfied. Martifer shall, within ten (10) business days after the receipt by Martifer of such letter, execute an acknowledgment of such certificate if Subcontractor has achieved Final Completion.

3.8    **Warranty Service**

Subcontractor warrants that, during the Warranty Period, the System shall be free from defects of workmanship. If a failure in the system occurs during the Warranty Period the Subcontractor shall be responsible for making immediate corrections.

3.9    **Subcontractor Project Lead**

The Subcontractor Project Lead shall be primarily responsible for the management of Subcontractor's performance of this Agreement. The Subcontractor Project Lead shall be authorized by Subcontractor to receive and to act upon instructions given in writing by Martifer. Notice to the Subcontractor Project Lead shall constitute notice to Subcontractor. All representations and commitments of the Subcontractor Project Lead shall be binding upon Subcontractor. Subcontractor will provide copies of applicable licenses, certifications and credentials for all employees working at the Site.

3.10    **Relationship of the Parties**

This Agreement shall not be construed as constituting or creating a partnership between Subcontractor and Martifer, or as creating any other form of legal association between Subcontractor and Martifer that would impose liability

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

A/A
KB

EXHIBIT B

# MARTIFER
## SOLAR

upon Subcontractor or Martifer for the act or omission of the other Party.  Subcontractor shall perform this Agreement as an independent contractor of Martifer.

**3.11**  **Subcontracts**

No subcontracting of any of the services shall relieve Subcontractor from the primary responsibility for the performance of this Agreement, or shall limit or otherwise affect any other liability or obligation of Subcontractor under this Agreement.  Subcontractor shall self-perform at least Seventy-Five (75) percent of the contract value. Subcontractor shall submit a Request for Lower-Tier Subcontractor, attached hereto as **Exhibit H**, for the following: (1) All Lower-Tier Subcontractors; and (2) suppliers of rented equipment of which the value is more than Ten Thousand ($10,000.00) Dollars; and (3) material vendors of which the value is more than Ten Thousand ($10,000.00) or over ten percent (10%) of this Contract Price, whichever is less.  **Exhibit H** must be presented to and approved in writing by Martifer prior to the signing of the lower-tier agreement.  It will be the responsibility of Subcontractor to ensure that all of its Lower-Tier Subcontractors comply with all of the terms and conditions of this Agreement.

**3.12**  **Records**

Subcontractor shall maintain all of its books, records, contracts, computer database information, computer disks and tapes, and other data and information relating to this Agreement at all times during the Term and for a minimum period of six (6) years following the Term.  Documents shall be maintained for the length of the Warranty Period as required by law.

**4.**  **COMPENSATION**

**4.1**  **Contract Sum**

Subcontractor guarantees that, subject to any change order adjustment, Martifer's maximum obligation for Subcontractor's performance of this Agreement shall not exceed the Contract Price.

**4.2**  **Payment Application**

Subcontractor shall submit Payment Applications on a monthly basis, on or before the 10th day of each month. Subcontractor shall request payment by delivering Payment Application to Martifer, together with all supporting documentation required, as stated at the bottom of the Payment Application. Subcontractor shall submit all Payment Applications, Conditional Releases and Unconditional Releases as applicable, to ap@martifersolarusa.com. Payment Application attached as **Exhibit D**.

**4.3**  **Milestone Payments**

Subcontractor shall deliver all payment documentation to Martifer Accounts Payable department at: ap@martifersolarusa.com.

- 5% Upon Mobilization
- 7% Upon Completion of Re-Roof Labor
- 4% Upon Completion of Re-Roof Material
- 3% Upon Completion of Roofing
- 24% Upon Completion of Solar Racking Installation
- 22% Upon Completion of Module Installation
- 26% Upon Completion of DC Electrical Installation
- 7% Upon Completion AC Electrical Installation
- 1% Upon Approval of Substantial Completion
- 1% Upon Approval of Final Completion

Upon approval of Subcontractor's Payment Application and invoice, Martifer shall issue milestone payments to Subcontractor within twenty (20) days after Payment Application and invoice approval.  In connection with each milestone payment, Martifer shall retain ten percent (10%) of all sums otherwise due to Subcontractor.  Milestone payments to Subcontractor shall be conditioned upon receipt by Martifer from Subcontractor and all their Lower-

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

EXHIBIT B

# MARTIFER
## SOLAR

Tier Subcontractors and suppliers of a Conditional Waiver and Release upon Milestone Payment attached hereto as Exhibit I, unless Martifer's receipt of payment from Client is delayed or withheld as a result of deficient, faulty, defective, or incomplete work performed by Subcontractor or any Lower-Tier Subcontractors in connection with this Agreement..

**4.4    Payment of Lower-Tier Subcontractors**

Subcontractor shall pay each Lower-Tier Subcontractor (including vendors of materials, equipment and/or supplies) from payments received from Martifer, and Subcontractor will make all undisputed payments to its subcontractors promptly after receipt of payment from Martifer in compliance with the applicable subcontract and Law, including, but not limited to, CAL. BPC. CODE §7108.5 as amended by SB 293; provided that Martifer, in its sole and exclusive discretion, may require Subcontractor to sign a joint check agreement to ensure timely payment to Lower-Tier Subcontractors or, in the alternative, Martifer may pay amounts directly to any Lower-Tier Subcontractor.

**4.5    Encumbrances**

Subcontractor warrants that: (i) the portions of the Work, materials and equipment covered by a Payment Application are free and clear of liens, Claims, security interests or encumbrances within fifteen (15) days of receipt of payment for said invoice; and (ii) no portion of the Work, materials or equipment covered by an invoice will have been acquired by Subcontractor, or any other person performing construction at the Site or furnishing materials or equipment for the Work, subject to an agreement under which an interest therein or an encumbrance thereon is retained by the seller or otherwise imposed by Subcontractor or such other person.

**4.6    Release of Retention**

Martifer shall pay the retention to Subcontractor when Martifer receives final payment from Client, but not more than thirty (30) days after the entire work required by the prime contract has been fully completed in conformity with the contract documents and has been delivered and accepted by Client. Payment of the retention shall be conditioned upon receipt by Martifer from Subcontractor and all its Lower-Tier Subcontractors and suppliers of the Unconditional Waiver and Release Upon Final Payment attached hereto as Exhibit J.

**4.7    Schedule of Values**

Attached hereto as Exhibit E, is Subcontractor's Schedule of Values for the Work and such shall constitute the agreed basis for the Contract Price.

**4.8    Schedule of Work**

Attached hereto as Exhibit B, is Subcontractor's Schedule of the Work, which shall demonstrate Subcontractor's ability to finish the Work by the Completion Deadline. Subcontractor is responsible for providing updates to ensure accuracy of the schedule.

**4.9    Status Report**

Within ten (10) days after the end of each calendar month after Commencement, Subcontractor shall prepare and submit to Martifer a status report for that calendar month, that must be prepared in a manner, level of detail and format acceptable to Martifer and must include (i) a detailed description of the progress of the Work; (ii) a statement of any significant issues including Change Orders which remain unresolved, and Subcontractor's recommendations for resolution of the same; (iii) an updated report as to Subcontractor's adherence to the project schedule which will result in completion by the Completion Deadline; (iv) a summary of any significant events that are scheduled or expected to occur in connection with the Work in the following thirty (30) days and (v) such additional information reasonably requested by Martifer. Any other material project occurrences (i.e. accidents, inspections, etc.) shall be reported to Martifer as they occur.

**5.    RISK OF LOSS**

From Commencement until Final Completion, Subcontractor assumes risk of loss and full responsibility for the cost of replacing or repairing any damage to the Site, System and all related materials, equipment, supplies and maintenance equipment.

**6.    CHANGES**

**6.1    Martifer Initiated Change Orders**

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

*A /A*
*KB*

EXHIBIT B

# MARTIFER
## SOLAR

(a)    Martifer may order changes to the Work by altering, adding to, or deducting from the Work.  Subcontractor shall be notified by such changes via a written change order issued by Martifer.

(b)    Such change orders shall be performed by Subcontractor on a cost plus basis, with a markup of eight (8%) percent for overhead and profit.

(c)    Martifer shall have the authority to order minor changes that do not involve extra costs, but otherwise, no extra work or changes shall be done without a written change order from Martifer, except in an emergency endangering life or property.

### 6.2    Subcontractor Requested Changes

(a)    Subcontractor may request changes to the Work and/or time extensions to the Completion Deadline by submitting a Request for Change, attached hereto as Exhibit F, exclusively for material changes in the Work resulting from changes in system design directed by the designing engineer resulting from:

(1)    requirements of the host/Client customer;

(2)    requirements of a governmental agency;

(3)    unknown and unanticipated subsurface conditions; or

(4)    changes in overall system size (in which case increases or decreases in price will be determined on a pro rata basis of $0.52 per watt).

(b)    Intentionally omitted.

(c)    A Request for Change seeking extensions to the Completion Deadline for any reason, including but not limited to subcontractor requested change orders and Force Majeure events, must be submitted within five (5) business days of the causing event.  The parties hereby agree that late-submitted Requests for Changes are not valid and need not be acted upon by Martifer.

(d)    Any changes requested by Subcontractor will not be considered approved unless a corresponding written change order, executed by Martifer, has been issued.  Any Request for Change affecting Martifer's contract with the Client will not be effective until a change order is executed between Martifer and Client regarding such changes.

### 6.3    Change Orders

(a)    Change orders shall be subject to all of the terms and conditions of this Agreement.

(b)    All Change Orders issued by Martifer involving increases or decreases in the Contract Price or changes to the Completion Deadline shall be considered accepted by Subcontractor unless such changes are rejected in writing by Subcontractor within three (3) business days.

(c)    Change Orders shall be issued with specified start and completion dates.

(d)    No extra work or changes shall be performed without a written change order from Martifer.

(e)    The provisions in Section 12.15 regarding time being of the essence for Change Orders and in Section 12.16 regarding liquidated damages for delay of performance or failure to complete Change Orders are acknowledged by Subcontractor.

(f)    If Martifer so instructs in writing:

(1)    Subcontractor shall suspend Work on that portion of the Work affected by a Subcontractor Requested Change, pending Martifer's and/or Client's decision to proceed with the change; or

(2)    Subcontractor shall begin forthwith and proceed to completion with Work on any Change Order issued by Martifer, notwithstanding that there has not been final agreement on adjustments to Contract Price or changes to the Completion Deadline.

## 7.    PREVAILING WAGES

The applicable clause is checked below:

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

A I A
KB

EXHIBIT B

# MARTIFER
SOLAR

☒ **This job is not subject to Prevailing Wage Requirements.**
Subcontractor and any of its Lower-Tier Subcontractors are not required to comply with any Prevailing Wage Requirements.

☐ **This job is subject to Prevailing Wage Requirements.**
Subcontractor and all of its Lower-Tier Subcontractors will comply with all applicable City, County, State Prevailing Wage and Federal Davis-Bacon and Section 3 hiring requirements. Subcontractor will provide all reports as required by Martifer pertaining to the Prevailing Wage Requirements.

## 8.    INSURANCE

### 8.1    Requirement

Subontractor, at its expense, shall procure or cause to be procured and maintain or cause to be maintained in full force and effect at all times commencing no later than Commencement of the Work at the Site and until Final Completion, insurance coverages as specified in Exhibit G, which are agreed by the Parties to be sufficient for construction of the System. All insurance coverage shall be in accordance with the terms of this Section 8.1 and Exhibit G.

### 8.2    Other Insurance Provisions

(a)    The insurance policy limits set forth herein shall in no way be construed as limits on the Parties' liability under this Agreement.

(b)    The beneficiaries of the insurance policies shall be Martifer, Client, Subcontractor and the Lower-Tier Subcontractors that may be affected by the risks insured. The insurance policies shall permit Martifer to assign its rights thereunder to third parties at no cost.

(c)    Subcontractor shall provide Martifer with executed copies of the insurance policies upon execution of this Agreement. Subcontractor shall not be allowed on the Site prior to providing evidence of compliance with insurance requirements in accordance with Section 8.1.

## 9.    INDEMNITY

### 9.1    General

Subcontractor shall defend (with counsel reasonably acceptable to Martifer), indemnify and hold the Indemnitees harmless from all liabilities and Claims of any kind which may arise from or in connection with the performance of the Work and the results of that Work by the Subcontractor and its representatives, directors, officers, employees and agents, including but not limited to the following:

(a)    Liability or Claims resulting directly or indirectly from the negligence or carelessness of the Indemnitors in the performance of the Work or in guarding or maintaining the same, or from any improper materials, implements, or equipment used during construction and/or installation of the System or by or on account of any act or omission of the Indemnitors;

(b)    Liability or Claims arising directly or indirectly from or based on the violation of any law, ordinance, regulation, order or decree by the Indemnitors;

(c)    Liability or Claims arising directly or indirectly from the breach of warranties, whether express or implied, made to the Client or Indemnitees;

(d)    Liabilities or Claims arising directly or indirectly from the willful misconduct of the Indemnitors; and

(e)    Liabilities or claims arising directly or indirectly from any breach of the obligations assumed by Indemnitors.

(f)    Liabilities or claims arising directly or indirectly from (1) investigation and/or remediation of a Hazardous Material which Indemnitors bring to the Site; (2) due to Indemnitors' failure to perform their obligations under the Scope of Work, Environmental Permits or Environmental Laws regarding Hazardous Materials; and (3) due to any release of Hazardous Materials resulting from Indemnitors' negligence.

### 9.2    Survival

Subcontractor's obligations under Section 9.1 shall survive Termination and shall apply regardless of whether or not any insurance policy is determined to be applicable to the Claim.

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

EXHIBIT B

# MARTIFER
SOLAR

10.    **TERM**

10.1    **General**

The Term of this Agreement shall commence at Commencement and shall end at Final Completion, unless sooner terminated as provided in this Section.

10.2    **Failure of Performance**

(a)    The following shall constitute a failure of performance under this Agreement:

    (1)    Subcontractor failed to supply enough skilled workers, equipment or materials to maintain progress sufficient to complete the Work in accordance with this Agreement;

    (2)    Subcontractor failed to make sufficient progress in the Work;

    (3)    Subcontractor abandoned the Work or unreasonably delayed its progress or completion;

    (4)    Subcontractor persistently disregarded the law, ordinances, or the instructions of Martifer or the Client;

    (5)    Subcontractor failed to pay its employees, Lower-Tier Subcontractors or suppliers in a timely fashion or as required by this Agreement; or

    (6)    Subcontractor is otherwise guilty of a substantial violation of this Agreement.

(b)    Shall Subcontractor commit any of the aforementioned items which constitute a Failure of Performance, Martifer will issue a Notice to Cure to Subcontractor. The Notice to Cure shall state how the Subcontractor failed to perform. The Subcontractor will be given two (2) business days after receipt of written notice to commence and continue correction of such failure to the reasonable satisfaction of Martifer.

(c)    If Subcontractor fails to satisfactorily cure such failure, Martifer shall have the right to any or all of the following remedies:

    (1)    Supply enough skilled workers, equipment or materials to complete the Work in accordance with this Agreement and back-charge or offset against the Subcontractor for any expense incurred in doing such;

    (2)    Enter into an agreement with another Subcontractor to perform the portion for the Work for which Subcontractor failed to cure and charge Subcontractor for any expense incurred in doing such;

    (3)    Withhold payment to Subcontractor until such failure is cured; or

    (4)    Terminate for Cause

        (i)    Martifer may terminate the Agreement if Subcontractor fails to correct in accordance with the Notice to Cure by issuing a written notice to Subcontractor, in which case Subcontractor shall immediately stop Work and stop the placing of orders for materials, equipment and supplies in connection with the performance of the terminated Work.

        (ii)    After the provision by Martifer of five (5) days written notice of termination to Subcontractor, Martifer may take possession of the premises and the Work, all materials for the Work, all tools and equipment that were used in connection with the Work and Martifer may finish the Work at the expense of Subcontractor.

        (iii)    After receipt of the notice of termination, Subcontractor shall not be entitled to receive any further payment until Work is completed and shall only be entitled to compensation for work actually and successfully performed by Subcontractor, plus reimbursement of actual costs for material purchased by Subcontractor and actually used to complete the Work (to the extent such costs have not already paid), *less* any damages caused by Subcontractor

        (iv)    Subcontractor shall be responsible for any attorneys' fees or liquidated damages incurred by Martifer as a result of the termination of the Agreement.

10.3    Intentionally omitted.

CONFIDENTIAL
CA LICENSE#813701



# MARTIFER
SOLAR

11. **DISPUTE RESOLUTION**

11.1 **Good Faith Negotiations**

In the event that any question, dispute, difference or claim arises out of or in connection with this Agreement, including any question regarding its existence, validity, performance or Termination (a "Dispute"), which either Party has notified to the other, senior management personnel from both Subcontractor and Martifer shall meet and diligently attempt in good faith to resolve the Dispute for a period of thirty (30) days following one Party's written request to the other Party for such a meeting. If, however, either Party refuses or fails to so meet, or the Dispute is not resolved by negotiation, the provisions of Section 11.2 shall apply.

11.2 **Submission to Jurisdiction**

Each Party hereby irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of the State of California , and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the Parties hereto hereby irrevocably and unconditionally agrees that all Claims in respect of any such action or proceeding may be heard and determined in such State or, to the extent permitted by law, in such Federal court.

11.3 **Arbitration**

The parties to this Agreement agree that any Dispute arising out of or related to this Agreement resulting in a claim for amounts less than one hundred thousand dollars ($100,000.00) shall be finally resolved through arbitration. Arbitration shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, with proceedings conducted in California. The demand for arbitration shall be filed in writing with the other party to this Agreement with the American Arbitration Association within ten (10) days of the failure of good faith negotiations regarding the Claim pursuant to Section 11.1 hereto.

11.4 **Attorneys' Fees**

In the event of any judicial, arbitration or mediation action or proceeding to enforce or construe any of the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, expert witness fees and costs. The trier of fact shall be specifically requested to name the prevailing party.

11.5 **Waiver of Jury Trial**

EACH PARTY HEREBY IRREVOCABLY WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION IN ANY COURT IN ANY JURISDICTION BASED UPON OR ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER TRANSACTION OR DOCUMENT RELATED TO THIS AGREEMENT.

11.6 **Continuation of Work**

Pending final resolution of any dispute hereunder, Subcontractor shall proceed diligently with the performance of its duties and obligations under this Agreement, and Martifer shall continue to make undisputed payments in accordance with this Agreement.

12. **MISCELLANEOUS**

12.1 **Notices**

Notices required or desired to be served by either Party upon the other Party shall be deemed received on: (i) the day of delivery, if delivered by hand during the receiving Party's regular business hours or by facsimile or e-mail before or during the receiving Party's regular business hours; or (ii) on the second business day following deposit in the mail, if delivered by United States mail postage prepaid. Notices shall be sent to the address set forth below for the receiving Party unless such Party has previously given notice of a different address:

To Subcontractor:
SOLAR OPTIMUM, INC.
1010 North Central Avenue, Suite 390
Glendale, CA 91202
Attention: Arno Aghamalian
Phone: 818-804-3122
Facsimile: 818-804-3123

To Martifer:
MARTIFER SOLAR USA, INC.
2040 Armacost Avenue
Second Floor
Los Angeles, CA 90025
Attention: Legal Department
Phone: 310.820.7080

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

EXHIBIT B

# MARTIFER
SOLAR

Email: arno@solaroptimum.com                    Facsimile: 310.820.7090
                                                Email: legal@martifersolarusa.com

**12.2    Underground and Overhead Utilities**

Martifer is not responsible for damage to any underground utility including but not limited to electric, sewer, gas, or cable lines. Any damages occurring to such underground utilities during the Work of Subcontractor or any of Subcontractor's Lower-Tier Subcontractors shall be the responsibility of Subcontractor. It is the Subcontractor's responsibility to contact the appropriate utility authority to ascertain whether underground services exist at the Site. Should damages occur, Subcontractor shall immediately notify the utility authority, Martifer Project Manager, and other subcontractors working at the Site. It will be the responsibility of the Subcontractor to protect life and property from further damage.

**12.3    Execution Time Limit**

This contract is valid for execution until October 21, 2013.

**12.4    Governing Law**

This Agreement shall be governed by and construed pursuant to the law of the State of California, except for choice of jurisdictions provisions to the extent they are inconsistent with Section 11.2.

**12.5    Goodwill and Publicity**

Subcontractor and its Lower-Tier Subcontractors shall not use the name, trade name, service mark, or trademark Martifer in any promotional or advertising material without the prior written consent of Martifer. Martifer shall have the right to promptly review, comment upon, and approve any publicity materials, press releases, or other public statements by the Subcontractor and its Lower-Tier Subcontractors that refer to, or that describe any aspect of, this Agreement or the System and no such publicity releases or other public statements (except for filings or other statements or releases as may be required by, or cannot be proscribed by applicable law), shall be made by Subcontractor or its Lower-Tier Subcontractors without the prior written consent of Martifer. At no time shall Subcontractor or its Lower-Tier Subcontractors acquire any rights whatsoever to any trademark, trade name, service mark, logo or other intellectual property right belonging to the Martifer without an express written agreement with respect thereto. Martifer reserves the right to prohibit and limit Subcontractor's signage at the Site.

**12.6    Uniforms**

Subcontractor, Subcontractor's employees and Lower-Tier Subcontractors agree to wear Martifer-branded vests on the jobsite at all times, if required. All vests will be provided by Martifer at no cost to Subcontractor and returned to Martifer at the conclusion of Subcontractor's duties. Subcontractor's employees and Lower-Tier Subcontractors shall not wear the Martifer-branded vests offsite.

**12.7    Assignment**

With the exception of Lower-Tier Subcontractors pre-approved by Martifer, Subcontractor shall not assign, transfer or subcontract any interest in this Agreement or the performance of any of its obligations without the Martifer Project Manager's prior written consent, which consent will not be unreasonably withheld. Any attempt by Subcontractor to assign, transfer or subcontract any rights, duties or obligations shall be void.

**12.8    Incorporation of Mandatory Language**

Each and every provision of law and clause required by law to be inserted in this Agreement shall be deemed to be inserted and this Agreement shall be read and enforced as though such provision were included. If through mistake or otherwise any such provision is not inserted, or is not correctly inserted, then upon application of either Party this Agreement shall promptly be amended to make such insertion or correction.

**12.9    Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

**12.10    Successors and Assigns**

Except as otherwise expressly provided herein, the provisions hereof will inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the Parties hereto.

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

EXHIBIT B

# MARTIFER
## SOLAR

**12.11**  **Severability**

If any provision of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

**12.12**  **Integration**

The attached Exhibits are incorporated by reference. This Agreement (including the attached Exhibits) constitutes the entire contract of the Parties and supersedes all prior and contemporaneous negotiations, proposals, understandings and agreements of the Parties with respect to this subject matter. This Agreement is intended by the Parties as the final, complete and exclusive statement of the terms of their contract. No amendment of this Agreement shall be deemed valid unless in writing and signed by both Parties.

**12.13**  **Recycling Policy**

All Subcontractors must recycle commonly used materials including, but not limited to, steel products, wooden pallets, plastic products, wires and cardboard. All recyclable scrap materials remaining on site, initially delivered and/or supplied by Martifer, are expected to be recorded and all monies gained from the recycling of such materials shall be returned to Martifer.

**12.14**  **Inspections**

All inspections and calls for inspector or Authority Having Jurisdiction (AHJ) review must be disclosed to Martifer with commercially reasonable notice and authorized in writing by Martifer prior to such inspection. Martifer reserves the right to have its representative attend all inspections.

**12.15**  **Time Is of the Essence**

Time is of the essence in this Agreement and Subcontractor shall perform issued Change Orders without delay or interruption and shall complete the Work by the Completion Deadline unless granted an extension to the Completion Deadline by Martifer.

**12.16**  **Liquidated Damages**

Martifer and Subcontractor acknowledge and agree that failure to achieve scheduled Completion Deadline and/or interruption or delay of performance or failure to complete any issued Change Order by the change order completion date will cause substantial damage to Martifer which cannot be ascertained with reasonable certainty. Accordingly, if Subcontractor fails to achieve completion of its Work by the Completion Deadline of December 31, 2013, and/or if Subcontractor interrupts, delays or fails to complete any issued Change Order in a timely fashion, Subcontractor shall pay to Martifer liquidated damages in the amount of Four Hundred Eighty Three dollars ($483.00) for each day (or portion thereof) that Work continues past the Completion Deadline and/or that performance of an issued Change Order is delayed. The Completion Deadline date and the corresponding liquidated damages amount may be changed solely and exclusively through the Change Order process set forth in Section 6 herein.

**12.17**  **No Delay by Subcontractor**

Notwithstanding the fact that a dispute, controversy or question shall have arisen in the interpretation of any provision of this Agreement, the performance of any Work, the delivery of any material, the payment of any monies to Subcontractor, or otherwise, Subcontractor agrees that should Subcontractor delay progress of the Work, Subcontractor shall be liable for all losses, expenses, liabilities and damages, including consequential and liquidated damages, sustained by Martifer, or for which Martifer may be liable to Client or any other party because of Subcontractor's delay.

**13.**  **REPRESENTATIONS & WARRANTIES**

**13.1**  **Representations and Warranties of Subcontractor**

Subcontractor represents and warrants to Martifer that:

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

EXHIBIT B

# MARTIFER
SOLAR

(a)     Subcontractor is a corporation, duly organized, validly existing, and in good standing under the laws of the State of California, and has full power to engage in the business it presently conducts and contemplates conducting, and is and will be duly licensed or qualified and in good standing under the laws of the State of California and in each other jurisdiction wherein the nature of the business transacted by it makes such licensing or qualification necessary and where the failure to be licensed or qualified would have a material adverse effect on its ability to perform its obligations hereunder.

(b)     Subcontractor has (either directly or through its Lower-Tier Subcontractors) all the required authority, ability, skills, experience and capacity necessary to perform and shall diligently perform the Work in a timely and professional manner, utilizing sound engineering principles, project management procedures, construction procedures and supervisory procedures, all in accordance with Industry Standards. Subcontractor has (either directly or through its Lower-Tier Subcontractors) the experience and skills necessary to determine that Subcontractor can perform the Work for the Contract Price.

(c)     Subcontractor warrants that all Lower-Tier Subcontractors will comply with the terms and conditions of this Agreement.

(d)     The execution, delivery and performance by Subcontractor of this Agreement will not (i) violate or conflict with any covenant, agreement or understanding to which it is a Party or by which it or any of its properties or assets is bound or affected, or its organizational documents or (ii) subject the System or any component part thereof to any lien other than as contemplated or permitted by this Agreement.

(e)     There are no actions, suits, proceedings, patent or license infringements or investigations pending or, to Subcontractor's knowledge, threatened against it before any court or arbitrator that individually or in the aggregate could result in any materially adverse effect on the business, properties or assets or the condition, financial or otherwise, of Subcontractor or in any impairment of its ability to perform its obligations under this Agreement.

(f)     All goods, services, equipment, parts, and materials furnished in connection with the Work related to the System are new, unused and undamaged at the time of delivery to the relevant Site.

(g)     Subcontractor shall not, without the prior written consent of Martifer, which consent Martifer may withhold in its sole discretion, (a) attempt to deal directly or indirectly, in any manner, with the Client, or (b) by-pass, compete, avoid, circumvent, or attempt to circumvent Martifer relative to the Work or the Client.

(h)     The individual executing this Agreement on behalf of Subcontractor is duly authorized to execute and deliver this Agreement on behalf of Subcontractor and this Agreement is binding upon Subcontractor in accordance with its terms.

[Signature Page Follows]

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

EXHIBIT B

**MARTIFER**
SOLAR

IN WITNESS WHEREOF, the Parties have executed this Subcontractor Agreement as of the date set forth above.

SUBCONTRACTOR:

_____     10 - 16 - 2013
Signature                                                    Date

Arno Aghamalian

President

Solar Optimum, Inc.

MARTIFER:

_____     10/21/13
Signature                                                    Date

Klaus Bernhart

CFO

Martifer Solar USA, Inc.

10/16/2013

CONFIDENTIAL
CA LICENSE#813701

KB

EXHIBIT B



SOLAR

### EXHIBIT A

### SCOPE OF WORK

**Scope of Work for Racking, Panelization, and Electrical Installation**
**Chatsmouth LLC**

615.67 KW DC
2,123 modules – 290W

**Project: US1.9096**

The Subcontractor shall be responsible for the Scope of Work identified as follows:

1. **GENERAL**

   1.1 **Project Description:** The scope of work, for the Subcontractor, describes necessary <u>licenses</u>, labor, equipment, transportation and materials required provide installation services for racking, panelization and turn-key electrical equipment installation and conform to all specifications in Plan Set, NEC, and AHJ requirements. Supply and install all DC, AC. Communications Systems and components including all wiring, conduit, communications wiring, terminations testing including above and underground conduit runs installed per AHJ requirements as well as all site preparation and cleanup associated to receive Work as described below at the following location:

   1.1.1.        Address: 9640 Owensmouth Ave., Chatsworth, CA 91311

   1.2. The Subcontractor and Martifer shall review specifications and approved plan set, designating tasks to be performed. The marked set will be mutually agreed upon by both parties.

   1.2.1 Prevailing Wage: ☐ Yes    ☒ No

   1.3. **Quality:** The Subcontractor warrants to Martifer that materials and equipment furnished under the Subcontract will be of good quality and new unless otherwise required or permitted in the Subcontract documents. The work will be free from defects not inherent in the quality required or permitted, and that the work will conform to the requirements of the Subcontract documents. The subcontractor shall maintain and submit weekly, time and date stamped Quality Assurance/Quality Control forms for all work completed in that time frame, including but not limited to megger test results, voltage open circuit test, IV Curve Test, torque checks, Communications and Reporting System, all testing and inspection per NEC, the local building department, electrical department and their inspectors, etc.

   A QA/QC plan shall be submitted by the Subcontractor to Martifer for approval prior to commencement of project. Provide competent on-site supervision and management for their own trades, including but not limited to safety, general construction, electrical installation and panelization. Provide daily progress reports to Martifer on a weekly basis. Reports must include, man hours, tasks, safety, materials received, and any facility/client interactions. Quality inspections will be performed by Martifer at specific milestones to be determined prior to project commencement. The Subcontractor shall be responsible for informing Martifer of impending agreed upon milestones three (3) business days prior to achievement of milestone. Martifer shall provide quality inspections at or near milestones dates in order to provide QA/QC checks. Martifer will provide observation and correction reports. Any corrections required shall be reviewed and completed by Subcontractor as precedent to next payment milestone.

   1.4. **Materials:** All materials necessary to complete the work other than those noted are to be supplied, installed, and commissioned by the contractor in accordance with any manufacturer's instructions and requirements. All materials supplied must be listed for their purpose.

   Material selection is an important key to achieving the design lifetime. Materials shall be selected to withstand exposure to an outdoor environment with large temperature swings, rain and other moisture, wind-blown dirt and debris, galvanic corrosion, and UV degradation. Structural materials shall be generally be galvanized steel (ASTM 123), stainless steel or aluminum.

EXHIBIT B

# MARTIFER
SOLAR

The construction of the system shall permit operation of the system for the 25+ year lifetime of the PV modules. The Solar Modules are furnished by Martifer and shall be installed and commissioned by the contractor in conjunction with Authorities Having Jurisdiction (AHJ). The contractor is responsible for any loss or damage to these items after inspection of the material upon receipt.

1.5. **Schedule:** The Subcontractor is scheduled to work in coordination with other Subcontractors on site. The Subcontractor is required to provide a MS Project Schedule detailing duration of each activity of Work within five business days of execution of this contract and gain approval of the Martifer Project Manager prior to work commencing. Progress meetings will be held weekly with the project manager to ensure schedule compliance with deadlines as outlined in the Agreement. Meeting minutes will be recorded and distributed via email to a distribution list designated by the Martifer Project Manager. In the case that a pre-task planning meeting occurs, it shall be submitted to Martifer in writing.

Subcontractor will provide a Project Execution Plan (PEP) outlining Means and Methods of the Work as outlined in the Agreement and Scope of Work. This PEP will be submitted to Martifer for approval prior to start of Work.

General work hours will be presented and approved by Martifer prior to start of Work, unless approved by the assigned Martifer Project Manager. Overtime hours shall be pre-determined by Martifer and agreed upon prior to implementation. Time is of the essence, so the subcontractor shall consider in his bid all possibilities that may require off-hours work, overtime and increased manpower to properly execute the work and receive permission to operate before the end of the year (please anticipate holidays and limited access to AHJ due to the holidays.

1.6. **Security:** The subcontractor will be responsible for all materials once they arrive on site. Any lost/stolen/damaged items will be the subcontractor's responsibility and any necessary security will be at the cost of the subcontractor.

1.7. **Safety:** The Subcontractor shall provide adequate and competent Supervision, which shall be responsible for the quality and safety of work, serve as Point Of Contact for Martifer, and shall be able to speak on behalf of the Subcontractor. The point of contact shall be a minimum of OSHA 10 certified. The Subcontractor shall be familiar with the site. The Subcontractor shall coordinate the work to not interrupt nor interfere with regular operations and/or other subcontractors. Martifer's HSSE policy is no accidents, no harm to people, and no damage to the environment. Every aspect of the construction shall be considered from this perspective. The contract shall comply with all Martifer Solar Health, Safety, Security, and Environment (HSSE) regulations.
The project's safety execution plan outlines specific requirements of the contractor, and will be provided prior to work commencing. Respondent shall provide Martifer:
   a.   A copy of Subcontractor Site Specific Safety Plan and Injury Illness Prevention Plan
   b.   An evaluation of, and appropriate documentation of the safety record
   c.   Site specific safety plan
   d.   Emergency action plan.

1.8 **Weekly Safety Meeting Sign-In Sheets** Weekly jobsite safety meetings will be held at a pre-determined day, time, and location on the jobsite. Sign-in sheets shall contain, at a minimum: Date, Safety Topic discussion relevant to current scope of work, printed name, date, and signature of attendees. Sheets will be submitted electronically to the Martifer Project Manager at the close of each Safety Meeting. The Subcontractor shall have onsite Material Safety Data Sheets (MSDS) for any applicable fluids, liquids or other substances. The subcontractor shall have a copy of their Safety and Health Plan onsite at all times. Subcontractor Personnel is required to comply with all State and Federal OSHA Regulations and Standards. In the event of conflict, the higher standard will apply. Personal Protective Equipment (PPE) shall be worn at all times in the work area or other designated area. PPE, though not inclusive, shall be defined as: hard hats, work boots, Long Pants, sleeved shirts, high-visibility vests, ANSI approved safety glasses, protective gloves, fall protection, delineators. Important: Please instruct workers to never step on electrical wires, which may compromise the insulation integrity.

1.9 **Permitting**

1.10 The Subcontractor shall provide:
   **Daily Work Logs:** Submitted electronically to the Martifer Project Manager at the close of each business day. Daily Logs shall consist of, at a minimum:
   • Description of accomplished work
   • Name and Classification of personnel working onsite
   • Start time, End time, and quantity of hours
   • List of delivered materials

EXHIBIT B

**MARTIFER**
SOLAR

- List of utilized equipment
- Requests for Information, submittals, change orders
- The contractor shall provide an operations and maintenance manual including all of the following information: Submittals (Concrete, piles and all other system components)
- Testing and Certifications (Concrete, piling, concrete mix information, etc).
- Operation and Maintenance Manuals for all components supplied with equipment.
- Commissioning Reports (Commissioning reports for all system components, 3rd party inspection, etc)
- The contractor will take and distribute Pictures of all underground work and inspection points.

1.11 **Deliveries:** Must be coordinated with the facility and the Project Manager. Deliveries cannot impede normal activities, traffic, or parking. Subcontractor should stage entire work area to properly ensure worker and passer-by safety. Subcontractor will be responsible for cost of Lane Closures for material lifts (if applicable).

All deliveries must be scheduled in advance with Martifer. All staging, material loading/unloading zones and parking locations must be confirmed with the Martifer Project Manager prior to engaging in these activities.

1.12 **Pre-Construction Meeting:** The Subcontractor shall attend a Pre-Construction meeting with Martifer prior to construction, to review Martifer's rules, requirements and schedule.

1.13 **Equipment:** Provide all tools, material and equipment necessary to perform this work. The Subcontractor assumes all liability for the security and integrity of all equipment and material stored at jobsite. Provide sufficient equipment, manpower, and/or overtime, at no increase to contract price, to maintain the rate of installation required to accommodate the schedule requirement. Provide all power necessary for construction. Martifer expects the use of portable generation where necessary. Martifer prefers not to use the connection but an agreement may be investigated if it will be significantly advantageous to the contractor.

1.14 **Plans and Specifications:**

1.19.1.  The engineering and construction drawings (here in referred to as the drawings) are incorporated into and made part of this Statement of Work by this reference.

| Drawings and Documentation | Date | Rev |
|---|---|---|
| 9.24.13 9096.Rev2.2 | 9.27.13 | 2.2 |
| LADWP.4.20.13 | 4/30/13 | |
| Chatsmouth_LDAWP Singleline | 6/13/13 | |

1.19.2.  The Subcontractor is responsible for reviewing the entire set of engineering and construction drawings. Any discrepancies or conflicts shall be brought to the attention of Martifer upon discovery. The subcontractor has the responsibility for using the latest revision of the drawings at all times. Any discrepancies or conflicts shall be brought to the attention of Martifer upon discovery. At the time of award, it is assumed that there are no questions regarding the design, as the contractor has performed its due diligence in reviewing all of the contract documents. Field conditions and scope changes will not be included in this clause. Subcontractor should allow three (3) day turn around on all RFI's submitted. Any request to make changes to the plans must be submitted by change order and approved by Martifer for approval.

1.19.3.  Where there are any apparent conflicts between the drawings, Scope of Work, specifications and latest applicable codes, standards and specifications, provisions specifically set forth in the contract shall govern. In the event of conflicts, they shall be presented to Martifer upon immediate realization.

2.  **THE WORK:** The Subcontractor shall furnish all labor, material, tools, transportation, and equipment to provide turnkey Work. Provide portable rest rooms and necessary accoutrements on site for use by all trades. This work includes, but is not limited to, the following list of work items: installation of: racking, solar module grounding, inverters, combiner boxes, string wiring, wire management, wire pulls, terminations at inverter and equipment pads installing and terminating all medium volt conductors and equipment. This is a turnkey project. The subcontractor will furnish for a fixed price, all materials, labor, equipment, tools, transportation, insurance, taxes, fees, licenses and other services to successfully provide a complete performance of work as defined herein and associated Contract Documents.

EXHIBIT B

# MARTIFER
## SOLAR

2.1. All work related to the specified system, shall be ready for QAQC inspection and accepted by Martifer and respective AHJ. This includes but is not limited to, the list of Work items. QAQC Checklists utilized by Martifer for purposes of inspections are marked and attached to the Agreement as Exhibit A. Completion and acceptance of QAQC Checklists shall be a determining factor for ascertaining completion status.

2.2. Upon completion, all Work shall be ready for inspection and acceptance by Martifer and the Authority having jurisdiction (AHJ). The Subcontractor shall assume all warranties for workmanship as outlined in the Agreement. This work includes, but is not limited to, the following list of work items:

    a. Restore any respondent-damaged items to match pre-existing conditions. Any roof penetration repairs caused accidentally or as a result of racking installation will have to be performed by a qualified roofer and approved by the client and will be at no cost to the client or Martifer.

    b. Schedule all inspections with all pertinent AHJs, including but not limited to LADBS inspectors, LADWP inspectors/ESR, Deputy Inspections, UL inspections, etc. Follow up with Martifer's Project Manager after every inspection to review status.

    c. Subcontractor must comply with Living Wage Ordinance (LW 5, LW 6, LW 18) and submit paperwork to Martifer prior to commencement of the project. Precedent to NTP is receipt of this documentation by Martifer from subcontractor.

    d. Provide and install roof protection to run materials across rooftop (i.e. plywood)

    e. Provide and install 10,000 sqft of new roof over existing roof.
        i. Install an overlay cap sheet layer on areas not recently repaired by others
        ii. Install new insulation in damaged areas prone to pending to match existing roof level and thickness
        iii. Obtain roofing permit
        iv. Call and schedule all inspections.

    f. Anchor Installation: Remove and discard existing cap-sheet
        i. Install new insulation to match existing thickness
        ii. Apply primer directly to the ply substrate
        iii. Install anchors and ensure screws are aligned with existing roof framing
        iv. Install pipe flashing and solder to fit snug
        v. Seal flashing with mastic, one ply of smooth APP, and reinstall new cap-sheet APP
        vi. Provide all necessary roofing materials to properly seal each anchor location including but not limited to flashings, screws, adhesive, boot, etc.

    g. Complete structural installation of racking units (seismic anchors, slip sheets, pads and attachment) including racking to be grounded per NEC 2011 and racking manufacturer's specifications.

    h. Coordinate and trouble shoot with Sflex racking representative.

    i. Install all anchors

    j. Supply and install wire and wire management solution (Raceways) on both the x and y axis of the racking system. Plastic zip ties are not acceptable to use for any wire management. Wires must be supported and off the roof and supported by steel non-abrasive material UV resistant (i.e. Heyco sun bundler, Heyco clip, Wiley clip, Vinyl coated steel zip tie, etc.) or wire tray.

    k. Coordinate with LADWP to interconnect PV system. LADWP to partially trench and pull all wire to (new) solar switchgear and interconnect.

    l. Trench/excavate/backfill and compact per plans and comply with all codes and AHJ requirements. Call for dig alert and perform any testing necessary to locate underground obstructions.

    m. Provide and install all fuses including but not limited to the combiner boxes, inverter and switchgear.

    n. Wire management of string must be installed as to not rub against abrasive materials, edges, supports, etc. Wire management to be approved by Martifer and AHJ electrical inspector at beginning of wire management installation.

    o. Perform all coring through walls and floors for conduit routes. Subcontractor may use available chases with facility approval.

    p. All coring locations must be x-rayed beforehand to ensure core does not penetrate through rebar/conduits/pipes/etc.

    q. Furnish and install Equipment Pads, fence, fence permit (if necessary) and necessary grounding.

    r. Installation of Solar Modules, grounding lugs and associated hardware (panel clamps, clips, fasteners, and attachment to racking).

    s. Install DC conduit and wiring between the photovoltaic modules and the inverter system.

EXHIBIT B

# MARTIFER
## SOLAR

t. Procuring and installing all materials not provided by Martifer, including but not limited to conductors, wiring, fusing, junction or pull boxes, bolts, breakers, conduit, fittings, and NEC and AHJ required signage.

u. Install SCADA/data acquisition system as described in the contract and illustrated on attached drawings.

v. Subcontractor to gain approval on all conduit runs before installing that either deviate from the plans or are not identified on the plans.

w. Provide appropriate staging equipment, and qualified operating, rigging, and traffic control personnel. Receive, lift, and stage materials supplied by Martifer Procuring and installing all materials not provided by Martifer, including but not limited to medium voltage equipment, conductors, wiring, fusing, junction or pull boxes, bolts, breakers, conduit, fittings, and NEC and AHJ required signage.

x. Log all materials received, collect all module serial numbers, inverter warranty card, and keep running inventory of materials to anticipate any shortage of materials that were supplied by Martifer.

y. Site activity and all work shall be performed according to the requirements outlined in the above approved construction specifications.

z. Provide and install communications cable (RS485) from DAS to components

aa. Provide and install communications cabling from internet access location to the system monitoring server

bb. Provide Temporary power for construction power tools.

cc. Provide all safety and temporary facilities (i.e. toilet, hand wash, trash container, etc.) necessary.

dd. Clean site daily including but not limited to trash to be removed by sub-contractor (Subcontractor to provide dumpster if necessary), pallets, packaging and debris for all Martifer and Subcontractor scope related deliveries must be secured at all times and removed prior to project completion

ee. Subcontractor must provide recycling receipts for all material removed from jobsite

ff. Provide As-built drawings for all work completed

gg. FINAL PUNCH LIST – Subcontractor is required to complete the final punch list items prior to receiving the final retention payment. Please be advised that punch list items may be added, closed or deleted during the contract period up and until final completion is granted to the contractor.

hh. COMMISSIONING – Subcontractor to provide System Commissioning in accordance with the attached commissioning documents and oversight from Martifer QA/QC engineers.

3. **CODES, STANDARDS, AND SPECIFICATIONS:** The Work shall comply with all of the currently approved applicable Standards (Including Codes and Technical Definitions), whether or not specifically mentioned, of the following organizations and associations:

| Abbreviation | Organization | Abbreviation | Organization |
|---|---|---|---|
| ACI | American Concrete Institute | IEEE | Institute of Electrical and Electronics Engineers |
| AISC | American Institute of Steel Construction | ISA | Instrument Society of America |
| AISI | American Iron and Steel Institute | NEC | National Electric Code |
| ANSI | American National Standards Institute | NEMA | National Electrical Manufacturer's Association |
| ASME | American Society of Mechanical Engineers | NESC | National Electric Safety Code |
| ASTM | American Society for Testing and Materials | NFPA | National Fire Protection Association |
| AWS | American Welding Society | OSHA | Occupational Safety and Health Act of 1970 |
| FCC | Federal Communication Commission | SSPC | Steel Structures Painting Council |
| FM | Factory Mutual | IBC | International Building Code |
| ICEA | Insulated Cable Engineers Association | UL | Underwriters Laboratories |
| AHJ | Authority Having Jurisdiction | | |

3.1. The Authority Having Jurisdiction (AHJ) may include but is not limited to: City inspections, EPA, NFPA, utility, Conservation Command and MASSDEP.

3.2. Where such codes, standards, and specifications are modified from time to time and in the case of conflict with any code or standard, the latest edition shall govern.

3.3. Where there are any apparent conflicts between the drawings and specifications and latest applicable codes, standards and specifications the Subcontractor shall bring the matter to the attention of Martifer for resolution.

EXHIBIT B

# MARTIFER
## SOLAR

3.4. The Work done, and all equipment, supplies and materials furnished are to comply fully with the Occupational Safety and Health Act of 1970, and with any similar applicable state acts, and all amendments, rules, regulations and interpretations there under.

4. **WORKMANSHIP:** The Subcontractor shall furnish and perform the Work in an acceptable manner. All workmanship shall conform to the detailed requirements specified in this statement of work. Where specific instructions are not given, the Work shall be to the best practices known to the trade. All work shall be done by workers, skilled and experienced in their appropriate trade, and shall be first class throughout. The Subcontractor shall adhere to equipment manufacturer's instructions and recommendations. Wiring, conduits, and wire management to be performed in a neat, orderly, professional manner.

5. **SYSTEM INSPECTION AND TESTING:** Martifer will inspect the work regularly.

5.1. The Subcontractor shall bring to the attention of Martifer, for Martifer's consideration, the work at various stages of completion for inspection and review. The Subcontractor may request Martifer to inspect the work at any time during construction. The Subcontractor shall allow reasonable time for Martifer to arrange to inspect the work.

5.2. The Subcontractor shall work in coordination with the Authority having jurisdiction to obtain final approvals.

5.3. The Subcontractor shall be responsible for procuring and providing all testing and certification requirements for the work included in the statement of work. Tests include but are not limited to: Ground resistance testing for each equipment pad and performing MV portions of the commissioning and energization plans.

5.4. All wires are to be Megger Tested with 1000 volts prior to Energization and a report shall be supplied to Project Manager within three (3) days of such testing.

5.5. Any work found to be unsatisfactory to the inspector, and within the responsibility of the Subcontractor, shall be redone at the Subcontractor's sole expense.

5.6. Subcontractor shall demonstrate communication system functions properly and is fit for use Subcontractor shall coordinate installation and complete operation of the communication system with affiliated Martifer vendors who may provide such equipment. A joint effort is required of the sub-contractor to ensure proper performance of all communication systems, devices and appurtenances, as directed by the vendor representative.

6. **COORDINATION OF WORK:** The Subcontractor shall closely coordinate their work with Martifer and others who may also be performing construction work. It shall be the responsibility of the Subcontractor to perform the Work in conjunction with these other items and as coordinated with or directed by Martifer to avoid all possible interference.

7. **PROTECTION OF EXISTING SITE, EQUIPMENT, AND PERSONNEL:**

7.1. The Subcontractor shall exercise extreme caution at all times to avoid damage to existing facilities and landscaping or to jeopardize their safety or continuity of operation.

7.2. Martifer reserves the right to require the Subcontractor to modify or eliminate any construction techniques or methods, which may endanger personnel or adversely affect any existing infra-structure and or equipment.

8. **MARTIFER AND THE SUBCONTRACTOR SUPPLIED MATERIAL:**

8.1. All material required for the Work, except those materials specifically designated as furnished by Martifer or others, regardless of whether or not it is specifically mentioned herein or listed on the Drawings and specifications, shall be furnished by the Subcontractor.

8.2. The Subcontractor shall accept and sign for, unload, and install all material and equipment delivered to the Subcontractor by its suppliers. The Subcontractor shall be responsible for all such material and equipment upon receipt and shall take all necessary precautions to ensure its safe handling, security and storage at the approved site location. Subcontractor will submit a receiving report including the condition within 24 hours of receipt of materials and equipment.

8.3. The Subcontractor shall be responsible for coordinating all shipments of the Subcontractor supplied equipment and materials.

EXHIBIT B

# MARTIFER
SOLAR

8.4. Subcontractor shall unload all Martifer supplied materials and equipment. Martifer shall inspect equipment after delivery with any damage listed and reported without undue delay. Equipment will then be signed over to the Subcontractor, and from this moment forth the Subcontractor will assume liability for said materials and equipment.

8.5. Subcontractor is responsible for providing and operating equipment necessary to stage the project and deliver materials to the installation locations, including but not limited to, scissor lift, fork lift or variable reach lift and cranes.

8.6. Martifer will Provide the Following Equipment to be Installed by the Subcontractor:

    8.6.1.  Talesun Solar Modules, 290W  TP672P290  (2,123)
    8.6.2.  Racking - See Attached Quote & B.O.M. from S:FLEX
    8.6.3.  Solectria 500kW, 480V Inverter SGI-500 (480V)  (1)
    8.6.4.  Solectria Integrated DC Sub-Combiner, 8 position, with (8) 350A Fuses  (1)
    8.6.5.  Cooper Bussman 800A, 200,000 AIC Rated (Fast Acting)   LCU800  (3)
    8.6.6.  Solectria Combiner Box, 24Input, Dual Output, NEMA4 w/400A DC disconnect (7)
    8.6.7.  Solectria Combiner Box, 30Input, Dual Output, NEMA4 w/400A DC disconnect (1)
    8.6.8.  Eaton Switchboard, 800A BUS, 800A Switch Fused Witch, Metter with pull section – Custom  (1)
    8.6.9.
    8.6.10.  ALSO Energy Monitoring System  (1)
    8.6.11.  ALSO Energy NEMA 4 Enclosure W/Data Logger, Power Supply, Suge Supressor  (1)
    8.6.12.  ALSO Energy  3-phase Revenue Grade Meter Elkor Wattson-1100-5A  (1)
    8.6.13.  ALSO Energy Solid Core CTs, 5A, for 3 sets of 300KCMIL  (3)
    8.6.14.  ALSO Energy Basic Weather Station with Pyranometer and Anemometer (1)
    8.6.15.  ALSO Energy Weather Station Remote Enclosure  (1)
    8.6.16.  ALSO Energy Monitoring Storage Fees (3)

9. **CLEAN UP:** During the Work, the Subcontractor shall be responsible on a daily basis for the sanitary and physical cleanliness of the area affected by its work. All debris, tools, hoses, ladders, and unused construction materials shall be gathered up by the end of each shift and or stored in proper areas or receptacles. The work areas should be kept continuously clean and orderly to prevent accidents or unwarranted use of material, tools, etc. that are for use in the Work. Upon completion of the Work, the area shall be cleared of all equipment, surplus material, and debris. Such material shall be disposed of in a manner acceptable to Martifer and the local authorities. The Subcontractor's work shall be subject to stoppage by Martifer if The Subcontractor does not correct any "housekeeping" deficiencies or violations to the satisfaction of Martifer within 24 hours of receipt from Martifer of a non-conformance report identifying such deficiencies or violations.

10. **INFORMATION REQUIRED AFTER COMPLETION OF WORK:**

    10.1.  Following completion of the work, the Subcontractor shall provide as-built drawings of all construction and field changes from the original drawings.

    10.2.  These noted changes shall include, but not be limited to, changes in location, changes in elevation, changes in size, changes in adjustments or settings, changes in equipment, and changes in materials.

    10.3.  Subcontractor shall provide all Subcontractors' supplied Equipment Warranty Documentation to Martifer.

EXHIBIT B

# MARTIFER
## SOLAR
**REFERENCES**

- MARTIFER Solar Standards
- ASTM PV Standards
- E 927-91 Specification for Solar Simulation for Terrestrial PV Testing
- E 948-95 Test Method for Electrical Performance of PV Cells using Reference Cells under Simulated Sunlight
- E 973-91 Test Method for Determination of the Spectral Mismatch Parameter Between a PV Device and a PV Reference Cell
- E 1021-95 Test Methods for Measuring Spectral Response of PV Cells
- E 1036-96 Test Methods Electrical Performance of Non-concentrator Terrestrial PV Modules and Arrays using Reference Cells
- E 1038-93 Test Method for Determining Resistance of PV Modules to Hail by Impact with Propelled Ice Balls
- E 1039-94 Test Method for Calibration of Silicon Non-Concentrator PV Primary Reference Cells Under Global Irradiation
- E 1040-93 Specification for Physical Characteristics of Non-Concentrator Terrestrial PV Reference Cells
- E 1125-94 Test Method for Calibration of Primary Non-Concentrator Terrestrial PV Reference Cells using a Tabular Spectrum
- E 1143-94 Test Method for Determining the Linearity of a PV Device Parameter with Respect to a Test Parameter
- E 1171-93 Test Method for PV Modules in Cyclic Temperature and Humidity Environments
- E 1328-94 Terminology Relating to PV Solar Energy Conversion
- E 1362-95 Test Method for the Calibration of Non-Concentrator Terrestrial PV Secondary Reference Cells
- E 1462-95 Test Methods for Insulation Integrity and Ground Path Continuity of PV Modules
- E 1524-93 Test Methods for Saltwater Immersion and Corrosion Testing of PV Modules for Marine Environments
- E 1596-94 Test Methods for Solar Radiation Weathering of PV Modules
- E 1597-94 Test Method for Saltwater Pressure Immersion and Temperature Testing of PV Modules for Marine Environments
- E 1799-96 Practice for Visual Inspection of PV Modules
- E 1802-96 Test Methods for Wet Insulation Integrity Testing of PV Modules
- IEEE PV Standards
- IEEE Std 928 Recommended Criteria for Terrestrial PV Power Systems
- IEEE Std 929 Recommended Practice for Utility Interface of Residential and Intermediate PV Systems
- IEEE Std 937 Recommended Practice for Installation and Maintenance of Lead-Acid Batteries for PV Systems
- IEEE Std 1013 Recommended Practice for Sizing Lead-Acid Batteries for PV Systems
- IEEE Std 1144 Sizing of Industrial Nickel-Cadmium Batteries for PV Systems
- IEEE Std 1145 Recommended Practice for Installation and Maintenance of Nickel-Cadmium Batteries for PV Systems
- IEEE Std 1547 Standard for Interconnecting Distributed Resources with Electric Power Systems
- IEEE Std P1262 Recommended Practice for Qualification of PV Modules
- IEEE Std P1361 Recommended Practice for Determining Performance Characteristics and Suitability of Batteries in PV Systems
- IEEE Std P1373 Recommended Practice for Field Test Methods and Procedures for Grid-Connected PV Systems
- IEEE Std P1374 Guide for Terrestrial PV Power System Safety
- IEC Standards
- IEC-891 Procedures for Temperature and Irradiance Corrections to Measured I-V Characteristics of Crystalline Silicon PV Devices
- IEC-904-1 Measurement of PV I-V Characteristics
- IEC-904-2 Requirements for Reference Solar Cells
- IEC-904-3 Measurement Principles for Terrestrial PV Solar Devices with Reference Spectral Irradiance Data
- IEC-904-4 On-Site Measurements of Crystalline Silicon PV Array I-V Characteristics
- IEC-904-5 Determination of the Equivalent Cell Temperature (ECT) of PV Devices by the Open-Circuit Voltage Method
- IEC-904-6 Requirements for Reference Solar Modules
- IEC-904-7 Computation of Spectral Measurement of a PV Device
- IEC-904-8 Guidance for Spectral Measurement of a PV Device
- IEC-904-9 Solar Simulator Performance Requirements
- IEC-1173 Overvoltage Protection for PV Power Generating Systems
- IEC-1194 Characteristic Parameters of Stand-Alone PV Systems
- IEC-1215 Design and Type Approval of Crystalline Silicon Terrestrial PV Modules
- IEC-1277 Guide-General Description of PV Power Generating System
- IEC-1701 Salt Mist Corrosion Testing of PV Modules
- IEC-1702 Rating of Direct-Coupled PV Pumping Systems
- IEC-1721 Susceptibility of a Module to Accidental Impact Damage (Resistance to Impact Test)
- IEC-1727 PV-Characteristics of the Utility Interface

EXHIBIT B

# MARTIFER
## SOLAR

- IEC-1829 Crystalline Silicon PV Array - On-Site Measurement of I-V Characteristics
- IEC-61730
- IEC-61215 Crystalline Silicon PV Array - On-Site Measurement of I-V Characteristics Crystalline Silicon PV Array - On-Site Measurement of I-V Characteristics
- UL Standards
- UL-1703 Flat-Plate PV Modules and Panels
- Subject:UL-1741 Proposed Draft of the Standard for Power Conditioner Units for Use in  Residential PV Power Systems (Work in Progress)
- Local and National Code
- ANSI/NFPA 70-2008 National Electrical Code
- IEEE C2-2007 National Electric Safety Code
- ASCE 7-2005 Building Code standard
- 2007 Building Code of New York State

EXHIBIT B



**EXHIBIT B**

<u>SCHEDULE OF WORK</u>



EXHIBIT B



**EXHIBIT C**

**PERFORMANCE TESTS**

**OVERVIEW**

Project take-over for the system will depend upon the successful completion of a series of DC-side tests and AC-side commissioning activities. The installed capacity of the system shall also be confirmed via an analysis of manufacturer's flash test results for each individual module installed in the system. This schedule describes the relevant DC and AC test procedures and analyses in detail.

**SYSTEM TESTS**

Subcontractor technical personnel, with the assistance of the equipment manufacturer(s) as needed, will perform a complete commissioning of the DC and AC system equipment following Subcontractor's rigorous commissioning procedures.  These commissioning procedures include the tests outlined in this Schedule as well as other standard tests, inspections, safety and quality checks.  All testing and commissioning will be conducted in accordance with the manufacturer's specifications.  The system inverters will be commissioned on site by a manufacturer's representative or qualified technician and will confirm that the inverter can be operated locally per specification and that automatic operations such as wake-up and sleep routines, power tracking and fault detection responses occur as specified.

Upon completion of each of the commissioning procedures, Subcontractor's technician or engineer will initial the commissioning checklist or test result page to indicate that the test has been completed successfully.  The results of string testing will be summarized and complete results will be provided in CD-ROM format.  Documentation from all procedures and complete test results will be submitted to the Company in paper and/or electronic format.

**Open Circuit Voltage Test**

| Purpose: | Open Circuit Voltage Testing provides a simple method to determine that all strings are properly connected (module and string polarity) and that all PV modules are producing an appropriate voltage level. |
|---|---|
| Scope: | All strings |
| Party: | Subcontractor technical personnel |
| Equipment/ Materials: | rubber insulating gloves |
| | voltmeter with an accuracy of at least 1 percent of reading |
| | fuse puller |
| | infrared thermometer or thermocouple |
| | PV specification for $V_{oc}$ as a function of temperature |
| | jumper wire |
| Conditions: | This test should be conducted under full sun (>500 W·m$^{-2}$) and stable sky conditions, generally between the hours of 10:00am and 2:00pm. |
| Procedure: | Measure the temperature of the PV modules using an infrared thermometer or thermocouple. (It is sufficient to measure the temperature of 2-3 modules and take the average). |
| | Calculate Expected $V_{oc}$: Referring to the PV manufacturer supplied equation for $V_{oc}$ as a function of temperature, calculate the expected $V_{oc}$ of each string. |
| | Remove Fuses: Wearing rubber insulating gloves and using a fuse puller, carefully remove the fuses from the combiner box.  Failure to remove the fuses will result in identical voltage measurements for every string since they are in parallel with the fuses in place. |

EXHIBIT B

# MARTIFER
## SOLAR

| | |
|---|---|
| | Test String Voltages: Place the positive lead on the fuse block of the string you are testing while the negative lead is attached to the negative block. Continue testing each string by moving to each positive string fuse block. Test and record the voltage of each electrical string. |
| Criteria: | For stable sky conditions and irradiance above 500 W-m$^{-2}$, string voltages should conform to within 5% of expected voltage as calculated in Step 2 above and each string should conform to within 2% of the average string voltage in the same combiner box under identical temperature and irradiance conditions.

For irradiance less than 500 W-m-2 or for unstable sky conditions (if irradiance changes by more than 10%, or ambient temperature changes by more than 5°C), compare each string's measured voltage to periodic measurements on a known good (reference) string. The reference string must be measured at irradiance above 500 W-m-2 and its measured voltage must be within 5% of the voltage calculated using Step 2 above. Voltage on non-reference strings should be within 5% of the reference string voltage under the same temperature and irradiance conditions.

For irradiance less than 200 W-m-2, test results may be used only to confirm proper string connection, and not to evaluate voltage performance. |

## Operating Current Test

| | |
|---|---|
| Purpose: | The purpose of this test is to ensure that all strings are producing an adequate and consistent operating current. |
| Scope: | All strings, after connection with utility grid and inverter start-up |
| Party: | Subcontractor technical personnel |
| Equipment/ Materials: | rubber insulating gloves |
| | DC clamp-on ammeter, 0-40 A scale with 2 per cent. of full scale accuracy |
| Procedure: | Start the Inverter: Start the inverter if it is not already running, making sure all fuses are installed. Wait 5 minutes for the power tracker to stabilize. |
| | Prepare for Readings: Open the combiner box, turn on the ammeter, and carefully zero the meter. Keep the clamp away from large bundles of wire, as they will affect the zero, and therefore the actual reading on the meter. |
| | Record the "Zero" Value: Wearing rubber insulating gloves, place the meter near a string's homerun wire. Record the "zero" value. |
| | Record the Current Value: While still wearing gloves, clamp the meter on each service loop in the box, recording the current readings. |
| | Calculate Actual Current: Calculate and record the actual string currents as the difference between the string current reading and the "zero" value. |
| | Example :     •     "Zero" value = 0.3 A

          •     Current reading = 3.0 A

          •     Actual Current:  3.0 A - 0.3 A = 2.7 A |
| Conditions: | Measurements should be made during clear and stable sky conditions. The total inverter output should be at least 50% of the aggregate rating of the active inverters. This test should be conducted under full sun (>500 W-m$^{-2}$), generally between the hours of 10:00am and 2:00pm. Irradiance must be greater than 200 W-m$^{-2}$. |
| Criteria: | Under clear and stable sky conditions with irradiance greater than 500 W-m$^{-2}$, current readings within each GA6 box should be within 5% of the average under identical sky conditions. A reasonable effort shall be made to conduct this test under conditions with irradiance greater than 500 W-m$^{-2}$, however, if such conditions are not available in the |

EXHIBIT B

# MARTIFER
## SOLAR

| | commissioning period, then the Current Test will be performed as a sign-of-life test only, without the 5% criteria. |
|---|---|

### Inverter Commissioning

| | |
|---|---|
| **Purpose:** | Verify the proper operation of the inverter systems |
| **Scope:** | All inverters |
| **Party:** | Installer and/or manufacturer, with Subcontractor supervision |
| **Schedule:** | At inverter start-up |
| **Equipment/ Materials:** | rubber insulating gloves |
| | digital multi-meter an accuracy of at least 1 percent of reading for voltage |
| | other equipment as required by manufacturer |
| **Procedure:** | Follow all manufacturer's guidelines for inverter start-up and commissioning, including verification of safety and control features. |
| **Conditions:** | No special conditions apply. |
| **Criteria:** | The inverter and controls should operate as stated in the purchaser or manufacturer specifications. |
| **Comments:** | Remote functions should only be tested on those systems that will utilize this feature. |

### String I-V Curve Test

| | |
|---|---|
| **Purpose:** | I-V curves are useful for identifying array problems and characterizing array performance. The purpose of this test is to compare strings on a qualitative basis. For this test, I-V Curve Traces will be taken on a sample of strings in each segment. I-V Curve Traces quantify actual photovoltaic module or string characteristics. |
| **Scope:** | Each string in a sample of GA6 boxes (at least 10 kW of each module type shall be tested) |
| **Party:** | Subcontractor technical personnel |
| **Schedule:** | During acceptance testing, if weather permits |
| **Equipment/ Materials:** | rubber insulating gloves |
| | I-V Curve Tracer or similar instrument |
| **Procedure:** | Follow the manufacturer's procedures for use of the I-V curve tracer. |
| | Isolate the portion of the array of interest (plus and minus leads) from the inverter (a DC disconnect switch may suffice) and from other array segments. Connect the curve tracer load to the array leads (be aware of array and load polarities). Sweep the load such that it operates the array over its range of Voc and Isc (or as the load will allow). Record voltage and current readings for at least 10 steps. |
| | Along with the series of current voltage pairs, array and ambient conditions should be recorded for each curve including: |
| | • Irradiance (of the appropriate components and orientation) |
| | • Module Temperature |

EXHIBIT B

# MARTIFER
## SOLAR

| | |
|---|---|
| | • Ambient Temperature<br><br>• Wind Speed (Optional)<br><br>• Date and Time<br><br>An indication of irradiance stability, such as pre and post curve irradiance, may also be recorded and is especially important if the curve takes more than one second..<br><br>The measurement equipment must be capable of monitoring the array with sufficient speed and accuracy. During the curve sweep, typically only the array current and voltage are measured, with irradiance stability measurements taken before and after the curve, and the remaining parameters measured once before or after the curve. |
| **Conditions:** | I-V curves must be taken under clear and stable sky conditions. For this test, irradiance must be above 500 W-m-2.<br><br>A reasonable attempt will be made to perform this test under ideal sky conditions; however, if ideal weather is not anticipated because of seasonal changes, the test will not be required for acceptance. |
| **Criteria:** | The string Voc should meet the criteria defined herein and in the associated materials. The string Isc should meet the criteria defined below:<br><br>The measured current should be within 5% of the expected Isc calculated using equation below:<br><br>$$I_{sc,expected} = n \cdot I_{sc,REF} \cdot \frac{G}{G_{REF}} \cdot 0.95 \qquad (1)$$<br><br>where<br><br>n        =        number of modules in parallel in test segment<br><br>Isc, expected        =        expected short-circuit current of the test segment, A<br><br>Isc, REF=        module short-circuit current at some specified reference conditions, A<br><br>G        =        measured plane of array irradiance, W-m-2<br><br>GREF        =        irradiance at some specified reference conditions, W-m-2<br><br>0.95        =        factor to account for soiling, misalignment, and other factors.<br><br>All I-V curves should be similar in shape (other than differences due to changes in irradiance or temperature).<br><br>This test will not be required if normal light conditions are not available during the Acceptance Test Period. |
| **Comments:** | If results show anomalies, including fill factor, voltages, or currents outside expected limits or humps on the curve, then investigate for bypass diode conduction, out-of-tolerance module performance, or other possible problems. Rectify any flaws and re-test. |

**Module Flash Test Analysis**

Subcontractor will assemble a list of all module flash test results from the PV module manufacturer(s) and calculate the total installed DC capacity of the system by summing the measured power output of each module at Standard Test Conditions (STC) as reported in the flash test results. The list and calculation shall be submitted to the customer in CD-ROM format. At its discretion, Subcontractor may confirm the flash test results of the manufacturer(s) by testing a sample of modules using the Sandia National Laboratories PV Characterization Method set forth in Sandia Report SAND2004-3535 (Unlimited Release August 2004). The Sandia Test may be performed at the site.

EXHIBIT B

# MARTIFER
## SOLAR

### EXHIBIT D

### PAYMENT APPLICATION

| TO: **MARTIFER** SOLAR | THIS TAB IS THE INVOICE - THERE ARE TWO TABS - WRITE IN SHADED AREAS ONLY | | | |
|---|---|---|---|---|
| 2040 Armacost Ave, 2nd Floor Los Angeles, CA 90025 310-820-7080 310-820-7090 FAX  **Invoice #:** Email Excel or PDF to ap@martifersolarusa.com | From: | Solar Optimum Inc. 1010 North Central Avenue, Suite 530 Glendale, CA 91202 | | |
| | Tel: 818.804.3122 | | Fax: | 818.804.3123 |
| Subcontract Number: 230 | Job Name: | Chatsmouth LLC | | |
| Job Number(s): US1.9096 | Job Address: 840 N. Owensmouth Ave., Chatsworth, CA 9131 | | | |
| Date of Application: | For Period Ending: | | | |

| | % COMPLETE THIS BILLING | TOTAL % COMPLETE | TOTAL BILLED |
|---|---|---|---|
| ORIGINAL SUBCONTRACT AMOUNT: $ 322,618.00 | 0.0% | 0.0% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| C.O. # | 0 | $ - | #DIV/0! | 0.00% $ | - |
| TOTAL C.O. AMOUNT $ - | | TOTAL COMPLETE $ | - |

| Please note: Any retainage stipulated in the subcontract will be withheld from this invoice. | Total Previous Applications | $ - |
| | CURRENT BILLING | $ - |

The undersigned hereby represents and warrants that it has paid all Subcontractors and Suppliers in full except for those indicated below and that it has paid in full for all labor and has made all contributions as were required to be made on account of the employment of such labor, and hereby agrees to indemnify and hold Martifer Solar USA, the Owner, the project, the work of improvement and the real property free and harmless from any and all claims of liens arising from work carried out or material supplied under their Subcontract Agreement or Purchased Order during the period above mentioned, including but not limited to claims which may arise from the requirements of the project regarding the payment of prevailing wages, if any, when and if they are made and to defend them against all of such claims. Any person executing this document on behalf of the undersigned expressly warrants, under penalty of perjury, that they are authorized to do so. This document has been made and executed under penalty of perjury in:

| SUBCONTRACTOR/SUPPLIER: | Signature/Name: | |
|---|---|---|
| | Date: | Title: |

THE FOLLOWING SUBCONTRACTORS AND SUPPLIERS SHALL BE PAID BY JOINT CHECK

Executed Martifer-approved Conditional Releases MUST be attached for unpaid subcontractor/suppliers. Executed Martifer-approved Unconditional Releases MUST be attached for those subcontractors/suppliers which have been paid in full.

| Name: | Amount: |
|---|---|
| Name: | Amount: |
| Name: | Amount: |

| FOR MARTIFER USE ONLY | | |
|---|---|---|
| Job No. | Releases: | Adjustments: |
| Sub No. | P.W.: | Amount Payable |
| P/M | Insurance: | Check No. | Check Amount: |

Document Revised 03/27/2013          Email BOTH TABS via Excel or PDF to ap@martifersolarusa.com

### EXHIBIT B



# MARTIFER
## SOLAR

**EXHIBIT E**

**SCHEDULE OF VALUES**



EXHIBIT B



**EXHIBIT F**

**SUBCONTRACTOR REQUEST FOR CHANGE ORDER**

| DATE: | SUBCONTRACTOR: | | REQUEST # |
|---|---|---|---|

| PROJECT NAME: | | CONTRACT DATE: |
|---|---|---|

SITE ADDRESS:

REASON FOR CHANGE:

| Description | Cost |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total Cost of Changes:** | |

*PLEASE PROVIDE BACKUP DOCUMENTATION AS NECESSARY*

| REQUESTED CHANGE TO COMPLETION DEADLINE | |
|---|---|
| *(Please check appropriate box)* | |
| ☐ | This Change Order shall **NOT** affect the Completion Deadline. |
| ☐ | This Change Order WILL affect the Completion Deadline The Revised Date is: |

| REQUESTED BY: | |
|---|---|
| PRINTED NAME | |
| TITLE | |
| DATE | |

EXHIBIT B

# MARTIFER
## SOLAR

**EXHIBIT G**

**INSURANCE**

---

**INSURANCE**

Subcontractor shall secure and maintain the following insurance coverages:

Commercial General Liability

Limits of Liability:

$2,000,000. General Aggregate

$2,000,000. Products/Completed Operations Aggregate

$1,000,000. Personal & Advertising Injury Limit

$1,000,000. Per Occurrence

Endorsements issued in favor to Martifer:

- Additional Insured
- Coverage afforded Client shall be Primary and non-contributing to any other insurance maintained by Martifer
- Thirty (30) days notice of cancellation, except ten (10) days for non-payment of premium.

Automobile Liability:

Limits of Liability:

$1,000,000. per accident.

Workers' Compensation:

Limits of Liability:

Statutory

Employers' Liability:

Limits of Liability:

$1,000,000. per occurrence

Umbrella/Excess Liability:

$5,000,000. Aggregate

Excess over Primary Limits of Liability required for Commercial General Liability, Automobile Liability and Employers' Liability.

Professional Liability:

Limits of Liability:

$1,000,000. each claim

$2,000,000. aggregate

> **Certificate Holder Box:**
> Martifer Solar USA, Inc.
> 2040 Armacost Avenue, 2nd Floor
> Los Angeles, CA 90025

**ADDITIONAL INSUREDS to be listed as:**

Martifer Solar USA, Inc. its officers, directors and employees; Chatsmouth LLC; The Kapadia Family Trust Dated 10/2/90

---

EXHIBIT B



**EXHIBIT H**

**REQUEST FOR LOWER-TIER SUBCONTRACTOR**

| DATE: | | SUBCONTRACTOR: | | | REQUEST # | |
|---|---|---|---|---|---|---|
| PROJECT NAME | | | SUBCONTRACT EXECUTION DATE | | | |
| SITE ADDRESS | | | | | | |

| NAME OF LOWER-TIER SUBCONTRACTOR | |
|---|---|
| ADDRESS | |

| CITY | | STATE | | ZIP | |
|---|---|---|---|---|---|
| CONTACT NAME | | | PHONE # | | |

| PERCENTAGE OF SUBCONTRACTOR'S SCOPE OR WORK BEING COMPLETED BY LOWER-TIER SUBCONTRACTOR | % |
|---|---|

| SUMMARY OF LOWER-TIER SUBCONTRACTOR'S SCOPE OF WORK | |
|---|---|

| BUSINESS TYPE: | ☐ Corporation   ☐ LLC   ☐ LLP   ☐ Partnership   ☐ Sole Proprietor   ☐ Other _____ |
|---|---|

| FORMED UNDER THE LAWS OF THE FOLLOWING STATE: | | BUSINESS ENTITY ID# | |
|---|---|---|---|
| IS LOWER-TIER SUBCONTRACTOR IS REGISTERED TO DO BUSINESS IN PROJECT'S STATE? ☐ Yes   ☐ No | | BUSINESS ENTITY ID# | |

| CONTRACTOR'S LICENSE # (If applicable) | | STATE | |
|---|---|---|---|
| OTHER RELEVANT LICENSE(S) | | | |

| LOWER-TIER SUBCONTRATOR WILL BE PROVIDING INSURANCE WHICH IS IDENTICAL TO SUBCONTRACTOR'S INSURANCE REQUIREMENT UNDER THE SUBCONTRACT BETWEEN SUBCONTRACTOR AND MARTIFER SOLAR USA, INC.   ☐ YES   ☐ NO   Please provide a copy of the insurance certificate once received. |
|---|

Subcontractor warrants that this Lower-Tier Subcontractor will comply with all of the terms and conditions of the Subcontract, executed as of the above date, between Subcontractor and Martifer Solar USA, Inc.  Subcontractor warrants that this Lower-Tier Subcontractor has all the required authority, ability, skills, experience and capacity necessary to perform and shall diligently perform its work in a timely and professional manner in accordance with Industry Standards.

| REQUESTED BY: | | | |
|---|---|---|---|
| PRINTED NAME | | DATE: | |
| TITLE | | | |

*This request is not deemed approved unless executed by Martifer Solar USA SVP of Operations.  No Lower-Tier Subcontractor shall be onsite until this executed form is returned to Subcontractor and the corresponding insurance certificate has been received by Martifer Solar USA.*

| ACCEPTED AND APPROVED BY: | | | |
|---|---|---|---|
| SIGNATURE | | DATE | |
| PRINTED NAME | | TITLE | SVP of Operations |

EXHIBIT B



## EXHIBIT I

### CONDITIONAL WAIVER AND RELEASE UPON MILESTONE PAYMENT
California Civil Code §8132

---

**NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.**

---

Name of Claimant: _____
Name of Customer: Martifer Solar USA, Inc.
Job Location: _____
Owner: _____
Through Date: _____

This document waives and releases lien, stop payment notice and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or materials delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

Maker of Check: Martifer Solar USA, Inc.
Amount of Check: $ _____
Check Payable to: _____

**Exceptions:**
This document does not affect any of the following:
1. Retentions.
2. Extras for which the claimant has not received payment.
3. The following milestone payments for which the claimant has previously given a conditional waiver and release but has not received payment:
   Date(s) of waiver and release: _____
   Amount(s) of unpaid milestone payment(s): $ _____
4. Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and (B) the right to recover compensation for work not compensated by the payment.


Claimant's Signature: _____

Claimant's Name & Title: _____

Date of Signature: _____


EXHIBIT B



**EXHIBIT J**

**UNCONDITIONAL WAIVER AND RELEASE UPON FINAL PAYMENT**
California Civil Code §8138

NOTICE TO CLAIMANT: THIS DOCUMENT WAIVES AND RELEASES LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT BEEN PAID, USE A CONDITIONAL WAIVER AND RELEASE FORM.

Name of Claimant:        _____
Name of Customer:        Martifer Solar USA, Inc.
Job Location:            _____
Owner:                   _____

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for all labor and service provided, and equipment and material delivered, to the customer on this job. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. The claimant has been paid in full.

**Exceptions:**

This document does not affect any of the following:

Disputed claims for extras in the amount of: $ _____

Claimant's Signature:        _____

Claimant's Name & Title:     _____

Date of Signature:           _____

EXHIBIT B



EXHIBIT K

LETTER OF SUBSTANTIAL COMPLETION

| | |
|---|---|
| **DATE:** | |
| **SUBCONTRACTOR:** | |
| **PROJECT:** | |
| **SUBCONTRACT DATE:** | |

This letter is issued pursuant to Section 3.6 of the above mentioned Subcontract, by and between Martifer Solar USA, Inc., ("Martifer") and Subcontractor. Capitalized terms used but not defined herein have the meanings set forth in the Subcontract.

Subcontractor is hereby certifying that, as of the date of this letter, all of the conditions of Substantial Completion have been satisfied and all Work has been completed in accordance with the terms and conditions of the Subcontract.

Subcontractor:

Date:_____

Signature: _____

Printed Name: _____

Title: _____

Acknowledged and Confirmed
Martifer:

Date:_____

Signature: _____

Printed Name: _____

Title: _____

EXHIBIT L

EXHIBIT B



### LETTER OF FINAL COMPLETION

| DATE: | |
|---|---|
| SUBCONTRACTOR: | |
| PROJECT: | |
| SUBCONTRACT DATE: | |

This letter is issued pursuant to <u>Section 3.7</u> of the above mentioned Subcontract, by and between Martifer Solar USA, Inc., ("Martifer") and Subcontractor. Capitalized terms used but not defined herein have the meanings set forth in the Subcontract.

Subcontractor is hereby certifying that, as of the date of this letter, all of the conditions of Final Completion have been satisfied and all Work has been completed in accordance with the terms and conditions of the Subcontract.

<u>Subcontractor:</u>

Date:_____

Signature: _____

Printed Name: _____

Title: _____

<u>Acknowledged and Confirmed Martifer:</u>

Date:_____

Signature: _____

Printed Name: _____

Title: _____

EXHIBIT B



EXHIBIT C