BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       mmoore@foxrothschild.com
*Counsel for Martifer Aurora Solar, LLC
and Martifer Solar USA, Inc.*

Electronically Filed May 20, 2014

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER AURORA SOLAR, LLC, a Nevada limited liability company,<br><br>☐ Affects Martifer Aurora Solar, LLC<br>☐ Affects Martifer Solar USA, Inc.<br>☒ Affects all Debtors | Case Nos. BK-S-14-10355-abl and BK-S-14-10357-abl<br><br>Jointly Administered under Case No. BK-S-14-10355-abl<br><br>Chapter 11<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A) AND 1121(D), FED. R. BANKR. PROCEDURE 9014 AND LOCAL RULE 9014 FOR AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A PLAN AND TO SOLICIT ACCEPTANCES THERETO**<br><br>Hearing Date:  OST PENDING<br>Hearing Time:  OST PENDING |

Martifer Solar USA, Inc. and Martifer Aurora Solar, LLC, (together, the "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105(a) and 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rule 9014 of

ACTIVE 25563319v2 05/20/2014                    1

the Federal Rules of Bankruptcy Procedure and Local Rule 9014, extending the periods during which only the Debtors may file a chapter 11 plan (the "Exclusive Filing Period") and solicit acceptances thereto (the "Exclusive Solicitation Period", together with the Exclusive Filing Periods, the "Exclusivity Periods"). This Motion is made and based upon the following memorandum of points and authorities, the Declarations of Michael Tucker (the "Tucker Declaration") and Christopher LeWand (the "LeWand Declaration") filed in support of the Motion, the papers and pleadings on file with the Court in these Chapter 11 Cases, and any oral arguments the Court may entertain at the hearing on the Motion.

Dated this 20th day of May, 2014.

**FOX ROTHSCHILD LLP**

By  *s/ Brett A. Axelrod*
    BRETT A. AXELROD (NV Bar No. 5859)
    MICAELA RUSTIA MOORE (NV Bar No. 9676)
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*Counsel for Martifer Aurora Solar, LLC
and Martifer Solar USA, Inc.*

## I.

## JURISDICTION AND RELIEF REQUESTED

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 11 U.S.C. §§ 1408 and 1409.

2. Pursuant to Bankruptcy Code 1121(b), the Debtors' initial Exclusive Filing Period is set to expire on May 21, 2014 and their Exclusive Solicitation Period is set to expire on July 20, 2014. By this Motion, the Debtors seek to extend each of the Exclusivity Periods for 90 days for the reasons set forth herein. Accordingly, the Debtors request extension of the Exclusive Filing Period to August 19, 2014 and extension of the Exclusive Solicitation Period to October 20, 2014, in each case without prejudice to the Debtors' right to seek further extensions if circumstances in these Chapter 11 Cases warrant.

3. No prior request for the relief requested in this Motion has been made.

## II.

## BACKGROUND

**A.     The Chapter 11 Cases.**

4.     On January 21, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.     Debtors are continuing in possession of their property and are operating and managing their businesses as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. See generally Chapter 11 Cases Dockets.

6.     Pursuant to this Court's order, the Chapter 11 Cases are being jointly administered for procedural purposes.

7.     On February 14, 2014, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

8.     On February 20, 2014, Debtors filed their Schedules and Statement of Financial Affairs.

9.     The factual background relating to Debtors businesses and the events leading up to commencement of the Chapter 11 Cases is set forth in detail in the Omnibus Declarations of Klaus Bernhart in Support of First Day Motions [Aurora Dkt ##15, 40] and the Omnibus Declarations of Klaus Bernhart in Support of First Day Motions [Martifer USA Dkt ##15, 40] (together, the "Omnibus Declarations"), which are incorporated herein by this reference.

**B.     The Debtors' Creditors and Other Parties Have Demanded Significant Attention from the Debtors.**

10.     The Debtors have devoted a substantial amount of time addressing objections to virtually every step the Debtors have taken to administer these Chapter 11 Cases in an orderly, consensual manner and to make progress toward a confirmable, and hopefully consensual, chapter 11 plan.  See Tucker Declaration ¶ 4.

11.     Creditors have objected to many of Debtors' first day motions, such as the use of cash collateral and authority to enter into debtor-in-possession financing, with entry of final orders still pending.  See Tucker Declaration ¶ 5.

ACTIVE 25563319v2 05/20/2014                    3

12. Objections were also lodged to other motions, including Debtors' motion to approve the settlement agreement with Alternative Energy Financing, LLC ("AEF Settlement Agreement"). Debtors' secured lender, Cathay Bank, filed an adversary proceeding which seeks relief concerning a controversy existing between Cathay Bank and the defendants named in the complaint on their respective rights in connection with the AEF Settlement Agreement. See Tucker Declaration ¶ 6.

13. Cathay Bank, criticized, among other things, Debtors' management, culminating in the filing of a motion for appointment of a trustee. Debtors spent considerable time reviewing and preparing a response and discovery to that motion, which was recently withdrawn by Cathay Bank. The internal governance issues with the Debtors' former officers resulted in the appointment of FTI as chief restructuring officer. Debtors experienced a management upheaval with the abrupt resignation of the CFO and CEO. In addition to those departures, several key employees have since left Debtors thus there are few remaining employees who have the institutional knowledge about these Debtors. In order to incentivize the remaining employees to assist Debtors with the sale and plan process, Debtors formulated an incentive plan, which initially faced vigorous opposition. These skirmishes and issues have distracted not only the Debtors, but other key constituents, from giving full attention to the formulation and pursuit of a chapter 11 plan. See Tucker Declaration ¶ 7.

**C.    Debtors' Post-Petition Operations.**

14. Since the Petition Date, Debtors have continued to operated their businesses and pursue attractive project opportunities. In addition, Debtors have addressed the numerous administrative matters that are attendant with their transition into operating as Chapter 11 debtors. These matters include:

    a. Preparation and delivery of information requested by the Office of the United States Trustee.

    b. Preparation and filing of retention applications for professionals.

    c. Arranging for payment of prepetition employee wage claims and benefits.

    d. Preparation for the meeting creditors pursuant to section 341(a) of the Bankruptcy Code.

    e. Preparing the Schedules and Statement of Financial Affairs for each Debtor.

  f. Negotiation of debtor-in-possession financing.

  g. Negotiating stipulations with various major constituencies.

  h. Continuous formal and informal contacts with the major constituencies regarding settlement, sale and plan formulation.

See Tucker Declaration ¶ 8.

### D. Debtors are in Substantial Compliance with Reporting and Other Administrative Obligations and Making Efforts to Comply with Remaining Requirements.

15. On February 20, 2014, the Debtors each filed their schedules and statements of financial affairs (collectively, the "Schedules and SOFAs"). The foregoing was a complicated and time-consuming task. Martifer USA filed amendments to its Schedule D, F and H on February 27, 2014. Martifer USA filed amendments to Schedules F and H on May 20, 2014. The Debtors also prepared and filed the forms required by Bankruptcy Rule 2015.3. See Tucker Declaration ¶ 9.

16. The Debtors provided the Office of the United States Trustee with a multitude of information and documentation. The Debtors attended the initial debtor interview as well as the meeting of creditors pursuant to Bankruptcy Code section 341(a). See Tucker Declaration ¶ 10.

17. The Debtors are current in the payment of all administrative expenses and adequate protection payments. Finally, the Debtors have complied with requirements under the interim cash collateral order and amendments thereto. See Tucker Declaration ¶ 11.

### E. Debtors' Efforts to Negotiate and Formulate a Plan.

18. As reflected by the discussion of the Debtors' activities during the first few months of these Chapter 11 Cases and FTI's relatively recent engagement, most of the Debtors' resources have necessarily been devoted to ensuring a smooth transition to Chapter 11, ensuring the Debtors' access to financing, maintaining uninterrupted operations and evaluating its assets and liabilities. As a result, the Debtors have not yet had the opportunity to complete the evaluations which are necessary to the formulation of a plan, including:

  a. A review and analysis of Debtors' chapter 5 and other causes of action;

  b. An analysis of Debtors' executory contracts; and

ACTIVE 25563319v2 05/20/2014 5

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

c.  An analysis of claims against the Debtors.[1]

See Tucker Declaration ¶ 12.

19.  Since the Petition Date, Debtors' management and restructuring professionals have been in regular contact with senior executives and restructuring professionals representing Debtors' major constituencies. However, as noted above, the internal management issues within Debtors in the first months of these Chapter 11 Cases posed a significant distraction. See Tucker Declaration ¶ 13.

20.  In addition to telephonic contact, several face to face meetings have taken place and restructuring professionals have met numerous times. See Tucker Declaration ¶ 14.

21.  The Debtors also have been responding to creditor requests for a tremendous amount of financial and other information for plan negotiations. The Debtors' management and professionals have been preparing financial models and term sheets and they have engaged with creditor groups in plan discussions. See Tucker Declaration ¶ 15.

22.  The process of negotiating a plan that is acceptable to the widest possible cross section of stakeholders is complicated by the Debtors' capital structure, which results in conflicting economic interests between the secured lender, Debtors' parent and unsecured creditors. Debtors have attempted to design a legal and financial structure for the reorganized Debtors that best preserves the interests of all constituencies and provides the reorganized Debtors with the best chance for future economic success. See Tucker Declaration ¶ 16.

23.  Since its engagement, FTI has concentrated its efforts on moving the Debtors towards a plan of reorganization and related disclosure statement. See Tucker Declaration ¶ 17.

24.  Debtors initially contemplated for the plan to provide for the sale of the Debtors' assets to a stalking horse bidder, with an auction of the Debtors' assets before the confirmation hearing on the Plan. See Tucker Declaration ¶ 18.

**F.    Sale Progress.**

25.  FTI prepared a solicitation "Teaser" and sent it out to about 280 parties on March

---

[1] Given that the Bar Date is not until after the initial 120 day exclusivity period, a full analysis cannot be accomplished until the Bar Date has passed and the universe of claims is known.

31, 2014 to actively solicit bids. An additional 20 parties have subsequently received the teaser, bringing the total to approximately 300 parties that have received it. See LeWand Declaration, ¶ 4.

26. Approximately one-fourth of the potential bidders are financial entities (investor groups interested in clean tech and/or distressed assets) and the remaining three-fourths are strategic entities (companies involved in the solar energy field). The target list was pulled from FTI's proprietary database that was compiled from conducting numerous other sale processes within the clean tech arena, and specifically in the solar energy field. See LeWand Declaration, ¶ 5.

27. The Debtors set up a Merrill Date Site, containing pertinent information concerning their assets and operations. FTI provided a non-disclosure agreement ("NDA") to parties interested in acquiring the Debtors' assets; upon signing the NDA, such parties were granted access to the Merrill Data Site. In addition, the Debtors' key employees have been available for discussions with interested parties. FTI has answered due diligence questions from numerous interest parties that have executed the NDA, along with assistance from the Debtors' key employees. See LeWand Declaration, ¶ 6.

28. FTI set May 15, 2014 as the deadline for the initial letters of intent ("LOIs") and has received four LOIs. See LeWand Declaration, ¶ 7.

29. Debtors are formulating the bidding procedures for an auction sale under section 363 instead of a plan, and are in the process of selecting their stalking horse bidder. See LeWand Declaration, ¶ 8; see Tucker Declaration, ¶ 19.

**G.    The Debtors Have Exercised Their Best Business Judgment and Satisfied Their Obligation to Act in the Best Interest of all Stakeholders in Seeking to Retain Exclusivity.**

30. The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property through the sale process. The decision to seek 90-day extensions were made by Debtors' management after consultation with its counsel and financial advisors and after giving due consideration to the interests of the creditors and the impact the extensions would have on the estates. After due deliberation, the Debtors determined that it was in the best interests of the Debtors and the estates that the Debtors continue to have the exclusive right to file a plan and solicit acceptances thereto. An orderly liquidation through chapter 11 will be more beneficial to the Debtors' creditors

1  than liquidation under chapter 7 as it will permit the Debtors' current management and professionals to
2  continue the process of selling the Debtors' assets.  By liquidating under chapter 11 rather than chapter
3  7, Debtors' estates will avoid additional unnecessary administrative expenses associated with a chapter
4  7 trustee.  In addition, Debtors' current management and professionals are intimately familiar with
5  Debtors' assets and are best positioned to continue the process of marketing and selling those assets
6  and winding down Debtors' businesses.  See Tucker Declaration ¶ 20.

7      31.     The relief sought in the Motion, represents valid business purposes and does not harm
8  any creditor nor prejudice any creditor's substantive rights in the Chapter 11 Cases (other than the
9  limited restrictions on filing or soliciting a plan).

## III.

## STATUTORY BASIS FOR RELIEF REQUESTED

Section 1121(d) of the Bankruptcy Code provides, in part:

> . . . on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

## IV.

## ARGUMENT

**A.   The Court has Discretion to Extend the Exclusivity Periods For "Cause".**

The decision to extend exclusivity for cause rests within the Court's discretion. In re Adelphia Communications Corp., 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006).  Although the Bankruptcy Code does not define "cause," legislative history and case law make it plain that "cause" is a flexible standard.  See H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191; see also United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Associates, Ltd.), 808 363, 372 n.15 (5th Cir. 1987).

Bankruptcy courts typically examine several non-exclusive factors in determining whether there is "cause" to extend exclusivity, including:

(i)   the size and complexity of a debtor's case;

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(ii)   the necessity for sufficient time to permit a debtor to negotiate a plan of reorganization and prepare adequate information;

(iii)  the existence of good faith progress towards reorganization;

(iv)   the fact that a debtor is paying its bills as they become due;

(v)    whether a debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)   whether a debtor has made progress in negotiations with its creditors;

(vii)  the amount of time which has elapsed in the case;

(viii) whether a debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtors' reorganization demands; and

(ix)   whether an unresolved contingency exists.

In re Adelphia Communications Corp., 352 B.R. at 587 (listing all nine factors) (citing In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) ("Dow Corning")). The factors enumerated in Dow Corning are "standardly considered." In re Henry Mayo Newhall Memorial Hosp., 282 B.R. 444, 452 (9th Cir. B.A.P. 2002). Not all factors, however, are relevant to every case, and courts have found "cause" to extend exclusivity based on various combinations of these factors, as well as others. See, e.g., Rinehart v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give appropriate weight to each."); In re Express One Int'l, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding "cause" based on only four factors); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding "cause" based on only three factors).

In Henry Mayo, the Ninth Circuit Bankruptcy Appellate Panel affirmed a bankruptcy court's finding of "cause" based on the following:

> (1) a first extension; (2) in a complicated case; (3) that had not been pending for a long time, relative to its size and complexity; (4) in which the debtor did not appear to be proceeding in bad faith; (5) had improved operating revenues so that it was paying current expenses; (6) had shown a reasonable prospect for filing a viable plan; (7) was making satisfactory progress negotiating with key creditors; (8) did not appear to be seeking an extension of exclusivity to pressure creditors; and (9) was not depriving the creditors

committee of material or relevant information.

In re Henry Mayo, 282 B.R. at 452.

**B.    Cause Exists to Extend the Exclusivity Periods.**

    1.    The Size and Complexity of the Cases Warrant the Relief Requested.

Size and complexity of a Chapter 11 case is the most common ground upon which courts grant extensions of the exclusive periods.  See generally, In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods"); In re Express One, 194 B.R. at 100 (finding "cause" to extend exclusivity where case was sufficiently large and complex and debtor had been diligent in its attempts to reorganize).  These Chapter 11 Cases are large and complex, as evidenced by approximately $20 million in assets, $30 million in liabilities and hundreds of creditors and executory contracts, based on Debtors' Schedules and SOFA.  Indeed, this case has been dubbed a "mega" case by this District.[2]  As noted above, Debtors have thus far required extensive time to deal with numerous issues, evaluate their assets and liabilities, transition into Chapter 11, ensure their access to financing, and negotiate business terms with their creditors to ensure continued uninterrupted operations.

    **2.    Extension of the Exclusivity Periods Is Necessary to Enable the Debtors to Continue the Sale Process and Plan Negotiations.**

The exclusive periods afford a debtor a full and fair opportunity to propose a confirmable, and hopefully consensual, liquidating plan and solicit acceptances thereto without the deterioration and disruption caused by competing plans.  Here, the Debtors request a brief extension to conclude the sale process, as well as formulation, documentation and confirmation of a liquidating plan.  In light of the strides already accomplished by the Debtors, and the active participation of the various constituencies in the sale process and negotiations, the request is reasonable and appropriate under the circumstances of these Chapter 11 Cases.  See, In re Ames Dep't Stores Inc., 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25,

---

[2] See http://www.nvb.uscourts.gov/case-info/mega-cases/.

ACTIVE 25563319v2 05/20/2014                    10

1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors"); In re SageCrest II, LLC, 2010 WL 1981041 (Bankr. D. Conn. May 18, 2010) (exclusivity periods extended twice to allow debtors opportunity to propose consensual plan for liquidation of all assets).

The initial 120-day exclusivity period was an insufficient amount of time for the Debtors to stabilize their operations, address myriad case administration issues and develop, negotiate, reach agreement with creditors on a plan and draft a disclosure statement and conclude the sale process considering all the challenges faced by Debtors since the Petition Date. See In re Amko Plastics, Inc., 197 B.R. 74 (Bankr, S.D. Ohio 1996) (finding "cause" to extend exclusivity where insufficient time had passed for debtor to negotiate realistically with creditors).

**3.     The Debtors Have Made Good Faith Progress Towards Selling its Assets and Formulation of a Plan.**

While the Debtors have made substantial progress in laying the groundwork for its sale process, they still must, among other things, negotiate the terms of a liquidating plan with their creditor constituents. The Debtors have kept in sight the need to deal with all of the parties in interest in these Chapter 11 Cases. The Debtors and their professionals are in regular contact with all the constituencies regarding the major substantive and administrative matters in these Chapter 11 Cases.

As the foregoing demonstrates, Debtors have been focused on administering their estates and complying with the statutory obligations in anticipation of submitting a plan that will garner creditor support and provide for an orderly liquidation. The Debtors' request to extend the Exclusivity Periods is clearly intended to facilitate an orderly, efficient and cost-effective process for the benefit of all creditors. See In re McLean Indus., Inc., 87 B.R. at 830 (Bankr. S.D.N.Y. 1987) (stating courts may assess conduct during case to determine whether debtor's motives for seeking extension of exclusivity are proper). Accordingly, an extension of the Exclusivity Periods is warranted. see, e.g., In re Homestead Partners, Ltd., 197 B.R, 706, 720 (Bankr. N.D. Ga. 1996) (finding "cause" to extend exclusivity where substantial progress towards plan had been made and complex legal issues have occupied much of the debtor's plan-making opportunities).

### 4. Debtors Are Functioning Fully as Debtors in Possession.

The Debtors are active and effective debtors in possession entitled to retain control over the liquidation process. The administration of the Chapter 11 Cases is proceeding efficiently. The Debtors and their professionals have spent considerable time negotiating debtor in possession financing and obtaining the use of cash collateral, both of which are still pending entry of a final order. Debtors have also had to deal with management issues and the departure of several key employees. As a result, the Debtors cannot be faulted if some of the time that would otherwise have been spent working on the plan, was diverted to other pressing issues. In re United Press Int'l. Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (extending exclusivity and citing, among other factors, the diversion of debtor's energies to the need for use of cash collateral which was dealt with promptly and skillfully); In re Newark Airport/Hotel L.P., 156 B.R. at 444 (Bankr. D.N.J. 1993) (finding "cause" to extend exclusivity where plan negotiations were slowed by, among other things, protracted cash collateral dispute).

The Debtors are paying their bills as they come due and Debtors' creditors continue to be adequately protected; another factor that militates in favor of granting the relief requested. See In re Hoffinger Indus., 292 B.R. at 644 (affirming extension of exclusivity based, in part, on evidence that debtor "is paying its postpetition expenses as they become due and adequate cash and lines of credit are in place to pay administrative claims in the future").

### 5. Debtors First Request for Extension

This is the Debtors' first request for an extension of the Exclusivity Periods and is made less than four months after the Petition Date. 11 U.S.C. § 1121(b). The Debtors are not seeking extensions to delay the liquidation or pressure the creditors to accede to a plan they find unacceptable. To the contrary, Debtors seek the extensions to provide the Debtors with time to finish its sale process and reach a consensus on a confirmable plan of liquidation. The Debtors earnestness in this regard cannot be challenged. Thus, at this early stage of the Chapter 11 Cases, an extension of the Exclusivity Periods will not harm or prejudice any party in interest. Finally, no other party has expressed an interest in terminating the Debtors' exclusivity rights or in proposing or pursuing a competing plan.

In <u>Henry Mayo</u>, the Bankruptcy Appellate Panel noted that "a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case toward a fair and equitable resolution." <u>Henry Mayo</u>, 282 B.R. at 453, <u>citing</u> <u>Dow Corning</u>, 208 B.R. at 670.

The Debtors are in the best position to resolve numerous competing interests because only the Debtors have a fiduciary duty to act in the best interests of the bankruptcy estate and all of its various stakeholders. Thus, the extension of the Exclusivity Periods will provide stability to the Debtors' businesses and the liquidation process.

**6.    Unresolved Contingencies Exist.**

There are unresolved contingencies which must be resolved in order to formulate the Debtors' plan. In order to formulate their plan, the Debtors must know the universe of claims asserted against them. Until the Bar Date for these Chapter 11 Cases pass, Debtors cannot know and cannot reasonably determine the universe of claims existing against the Debtors.

Further, Debtors are still in the midst of their sale process and whether a successful asset sale can be effectuated.

## V.

## CONCLUSION

For all of the foregoing reasons, the Debtors respectfully request that the Court extend the Exclusive Filing Period through August 19, 2014 and extend the Exclusive Solicitation Period through October 20, 2014. The Debtors also respectfully request that the Court preserve the Debtors' right to seek further extensions of the Exclusivity Periods and grant such other relief as the Court deems just and proper.

Dated this 20th day of May, 2014.

**FOX ROTHSCHILD LLP**

By   *s/ Brett A. Axelrod*
    BRETT A. AXELROD (NV Bar No. 5859)
    MICAELA RUSTIA MOORE (NV Bar No. 9676)
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*Counsel for Martifer Aurora Solar, LLC
and Martifer Solar USA, Inc.*