Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Brian Blankenship
Nevada Bar No. 11522
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for Martifer Solar, Inc.

E-Filed: June 18, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARTIFER AURORA SOLAR LLC, a Nevada limited liability company,<br><br>MARTIFER SOLAR USA, INC., a Nevada corporation,<br><br>          Debtors. | Case No. 14-10355-ABL<br><br>Chapter 11<br><br>Jointly Administered with:<br>Case No.: 14-10357-ABL |
| MARTIFER SOLAR INC., a Nevada corporation, and Martifer Aurora Solar, LLC, a Nevada limited liability company,<br><br>          Plaintiffs,<br><br>vs.<br><br>Martifer Solar USA, Inc., a California corporation, and Martifer Aurora Solar, LLC, a Nevada limited liability company,<br><br>          Defendants. | Adv. No.:<br><br>**ADVERSARY COMPLAINT** |

Martifer Solar, Inc., ("**MSI**") the parent company of the above-captioned debtors and debtors in possession, by and through their attorneys of record, the Schwartz Law Firm, hereby file this Adversary Complaint against Martifer Solar USA, Inc. and Martifer Aurora Solar,

1

LLC ("the **Debtors**") and alleges the following:

## THE PARTIES

1. At all times relevant to this case, Martifer Solar, Inc. was and is a Delaware corporation authorized to transact business in the state of California with its principal place of business in the County of Los Angeles.

2. At all times relevant to this case, Martifer Solar USA, Inc. is a California corporation authorized to transact business in the State of California with its principal place of business in the County of Los Angeles.

3. At all times relevant to this case, Martifer Aurora Solar, LLC was and is a Nevada limited liability corporation with its principal place of business in the County of Los Angeles.

## JURISDICTION AND VENUE

4. On January 21, 2014 (the "**Petition Date**"), the Debtors filed voluntary petitions (the "**Petition**") for relief in the United States Bankruptcy Court in the District of Nevada under Chapter 11 of the United States Bankruptcy Code [Doc. No. 1]. The Debtors' Chapter 11 case is currently pending before this Court.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 547. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. Venue is appropriate in this District pursuant to 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

7. MSI is the direct parent company of the Debtors and owns roughly 99% of MSI USA's equity.

8. The Debtors are solar engineering contractors to major construction companies. The Debtors' current construction portfolio consists of fourteen (14) commercial projects.

9. The Debtors have a pending utility scale project located in California. The California project consists of four (4) projects, all roof top installations on commercial buildings at CBS studios.

### THE CATHAY LOAN

10. On November 15, 2012, Cathay Bank ("**Cathay**") originated a working-line of credit for the benefit of the Debtors, allowing them to draw up to a maximum principal amount of $12 million (the "**Loan**").

11. The Loan is evidenced in part by a "Promissory Note" (the "**Note**") and a "**Business Loan Agreement** (Asset Based)" (collectively referred to herein as the "**Loan Agreement**"), both dated as of November 15, 2012.

12. The Loan is generally secured by (i) Martifer USA's personal property described in that certain "Commercial Security Agreement" dated as of November 15, 2012, executed by Martifer USA in favor of Cathay ("**CSA 1**"), and (ii) Aurora's personal property described in that certain "Commercial Security Agreement" dated as of November 15, 2012, executed by Aurora in favor of Cathay ("**CSA 2**" and together with **CSA 1**, the "**CSA**").

13. The Note obligates the Debtors to pay all outstanding principal plus all accrued unpaid interest due under the Loan by November 30, 2013.

14. The Note also provides that the Debtors shall make regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 31, 2012, with all subsequent interest payments to be due on the same day of each month after that.

**THE MSI GUARANTY**

15. MSI executed a "Commercial Guaranty" ("**Guaranty**") dated as of November 15, 2012 in favor of Cathay, guaranteeing the indebtedness of the Debtors owing to Cathay as described therein.

16. MSI agreed to pay Cathay the amount of all credit advanced to the Debtors, plus interest.

17. MSI executed the Guaranty on behalf of the Debtors with the understanding that MSI held subrogation rights to Cathay's loan in the event of the Debtors' default on the Loan.

18. The Guaranty expressly recognizes and ratifies MSI's subrogation rights.

19. Once Cathay's loan is paid in full, MSI steps into the shoes of Cathay and assumes all rights and interests held by Cathay against the Debtors.

**THE DEBTORS DEFAULT ON THE CATHAY LOAN**

20. In or about August 2013, Cathay discovered that the Debtors defaulted on their Loan obligations.

21. The Debtors failed to pay Cathay all amounts owed in connection with the Loan-Note on or before the November 30, 2013 maturity date.

22. As a result of the Existing Defaults, Cathay asserted that the outstanding indebtedness under the Loan Documents was immediately due and payable.

23. Immediately following the Debtors' default, Cathay made demand on MSI to pay the Loan pursuant to the Guaranty.

**THE DEBTORS' CBS ASSETS AND AEF SETTLEMENT**

24. Between about November 2011 and September 2012, Alternative Energy Financing LLC, a California limited liability company ("**AEF**"), entered into a series of

4

contracts (individually and collectively referred to as the "**AEF/CBS Contract**") with CBS Broadcasting Inc., a New York corporation ("**CBS**"), for installation of photovoltaic projects in six phases of construction (respectively designated in the AEF/CBS Contract as Phase I, Phase II, Phase III, phase IV, Phase V and Phase VI) on CBS' real property located at 4024 Radford Avenue, Studio City, California, and 7800 Beverly Boulevard, Los Angeles, California.

25. Phase II, Phase III, Phase IV, Phase V and Phase VI are individually and collectively referred to as the "**CBS Project**."

26. Pursuant to the AEF/CBS Contract, CBS, as lessor, entered into ground leases (collectively, "**the Ground Leases**") with AEF, as lessee, with respect to the real property upon which the CBS Project is located.

27. Pursuant to the AEF/CBS Contract, CBS assigned to AEF CBS' right to the following payments derived from the CBS Project: rebates (collectively, "**Rebates**") from the Los Angeles Department of Water and Power (the "**DWP**") and grants (collectively, "**Grants**") from the United States Treasury provided for under section 1603 of the America Recovery and Reinvestment Tax Act of 2009.

28. Pursuant to the AEF/CBS Contract, CBS agreed to pay AEF certain fees (collectively, "**Supplier Fees**") for ten (10) years based on the CBS Project's production of energy.

29. In connection with the AEF/CBS Contract, AEF entered into separate contracts (individually and collectively referred to as the "**AEF/Martifer Contract**") with Martifer USA pursuant to which Martifer USA agreed to construct each phase of the CBS Project in accordance with the specifications in the AEF/CBS Contract.

30. The AEF/Martifer Contract vests ownership of the CBS Project solar systems panels and peripheral infrastructure in AEF, and grants Martifer USA a first position security interest and lien on such panels and infrastructure to secure payment of monies owed to Martifer USA under the AEF/Martifer Contract.

31. In connection with the AEF/Martifer Contract and other contracts related to the CBS Project, Martifer USA also received one or more promissory notes or other promises for payment from AEF; Alternative Energy, Inc., a California corporation ("**AEI**"); Christopher Frye, an individual ("**Chris Frye**"); Catherine Chondropolous aka Catherine Frye, an individual ("**Catherine Frye**"); California Power-Save Inc., a California corporation ("**CPS**"); and Solar Karma LLC, a California limited liability company ("**Solar Karma**," and together with AEF, AEI, Chris Frye, Catherine Frye, and CPS, individually and collectively referred to as the "**Frye Parties**").

32. On or about September 17, 2013, AEF and Martifer USA entered into a Reassignment of Utility Rebates Agreement (the "**Reassignment Agreement**") pursuant to which AEF reassigned to Martifer USA all of AEF's right, title, and interest in and to the Rebates derived from Phase III, Phase IV and Phase V of the CBS Project.

33. On or about January 2, 2014, (i) Martifer USA, on the one hand, and the Frye Parties, on the other hand, entered into a Settlement Agreement with Mutual Releases ("**Settlement Agreement**") and (ii) Marifer USA, on the one hand, and Chris Frye and AEF, on the other hand entered into an Asset Purchase Agreement ("**APA**," and together with the Settlement Agreement and any other agreements entered into in connection with the Settlement Agreement, among other things, AEF assigned all of its rights in connection with the CBS Project, including AWF's rights under the AEF/CBS Contract, to Martifer USA.

34. Pursuant to the AEF/Martifer Settlement Agreement, and at the direction and for the benefit and convenience of Martifer USA, AEF transferred some or all of its rights in connection with the CBS Project to Studios Solar, LLC, a Delaware limited liability company ("**Studios Holding**"); Studios Solar 2, LLC, a Delaware limited liability company ("**Studios 2**"); Studios Solar 3, LLC, a Delaware limited liability company ("**Studios 3**"); Studios Solar 4, LLC, a Delaware limited liability company ("**Studios 4**"); and Studios Solar 5, LLC, a Delaware limited liability company ("**Studios 5**," and with Studios Holding, Studios 2, Studios 3, and Studios 4, individually and collectively referred to as the "**Studios Entities**").

35. Pursuant to the AEF/Martifer Settlement Agreement, Martifer USA (i) promised to pay AEF $300,000; (ii) granted AEF a security interest in the Grants to secure such payment; and (iii) released its rights to payment from, and security interests in certain property of, the Frye Parties, all of which payment rights and security interests were subject to the Liens.

36. Cathay alleges Martifer USA's entry into the AEF/Martifer Settlement Agreement was a further default under the Loan Documents.

37. Any losses caused by the Debtors' unilateral decision to enter into the Settlement Agreement will land at the feet of MSI pursuant to its Guarantee.

38. Any releases of Cathay's liens to the CBS assets before MSI's subrogation rights are preserved would leave MSI with what could be a zero recovery.

### CATHAY'S ADVERSARY COMPLAINT

39. On March 7, 2014, Cathay filed a Complaint for Declaratory Relief (the "**Complaint**") in the Bankruptcy Case, thereby commencing Adversary Proceeding No. 14-01036 (the "**Adversary Proceeding**").

7

40. The Complaint names as defendants the Debtors, the Committee, the Studios Entities, and the Frye Parties (individually and collectively referred to as the "**Adversary Proceeding Defendants**").

41. The Complaint seeks a declaratory judgment regarding the construction and interpretation of the AEF/Martifer Settlement Agreement, including but not limited to a determination of what assets and rights were transferred to Martifer USA and/or the Studios Entities pursuant to the AEF/Martifer Settlement Agreement.

42. The Complaint also seeks a declaratory judgment regarding the validity, priority and/or extent of the Liens with respect to, among other things; (i) assets and rights transferred to Martifer USA and/or the Studios Entities pursuant to the AEF/Martifer Settlement Agreement; (ii) the Rebates, Grants, and Supplier Fees, including without limitation the $977,946 Rebate check held by AEF for the benefit of Martifer USA; and (iii) all funds deposited into the CB&T Account, including but not limited to all funds on deposit in the CB&T Account on the Petition Date.

43. The rights and assets from the CBS Projects, rebate check, and the assets that the Debtors transferred into the California Bank & Trust Account(s) were and remain part of Cathay's collateral and subject to Cathay's perfected senior priority security interests.

44. MSI has a right to subrogate to Cathay's perfected security interests in all of the aforementioned assets.

45. MSI's payments to Cathay helped keep the Adversary Proceeding in neutral as these cases proceeded.

/ / /

/ / /

## THE CATHAY SUIT

46. On or about December 31, 2013, Cathay commenced a lawsuit (the "**Cathay Suit**") against the Debtors and MSI to, among other things, collect all purported outstanding indebtedness.

47. The Cathay Suit is pending before the Superior Court of California, County of Los Angeles, West District, bearing Case No. SC121853, and is captioned as *"Cathay Bank, a California banking corporation v. Martifer Solar USA, Inc., a California corporation; Martifer Aurora Solar, LLC, a Nevada limited liability company; Martifer Solar, Inc., a Delaware corporation; and Martifer Solar, S.A., a Portuguese corporation."*

48. The Cathay suit, currently suspended, is set to resume on June 23, 2014.

## CHAPTER 11 BANKRUPTCY

49. On January 21, 2014, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

50. Under Chapter 11, the Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

51. The Debtors' Chapter 11 Cases are being jointly administered and an Official Committee of Unsecured Creditors (the "**Committee**") has been appointed and retained counsel.

52. The Cathay Suit remains pending before the California Superior Court, but has been stayed with respect to Cathay's claims against the Debtors pursuant to section 362(a) of the Bankruptcy Code.

/ / /

### DIP FINANCING AND POST-PETITION PAYMENTS FROM MSI TO DEBTORS

53. In February 2014, MSI entered into a Debtor in Possession Financing Agreement ("**DIP Agreement**") wherein MSI agreed to provide the Debtors with emergency monetary advances up to an aggregate of $5,000,000, secured by a junior lien on the Debtors' assets.

54. It is undisputed that without MSI's DIP financing, the Debtors would have shut down operations and liquidated all assets.

### MSI EQUITABLY AGREES TO A CARVE-OUT FOR PROFESSIONAL FEES TO BE PAID TO THE DEBTORS AHEAD OF THE DIP AGREEMENT

55. In the DIP Agreement, MSI equitably agreed to a "carve-out" of approximately $2,000,000 to pay the fees and expenses of the Debtors' professionals.

56. MSI expressly agreed to the carve-out in order to facilitate a fair process and reorganization for the Debtors.

57. MSI equitably agreed to the carve-out without any suspicion the Debtors would engineer a sale process to strip MSI of its subrogation rights if the sale of the Debtors' assets could not completely satisfy the carve-out.

### THE DEBTORS EXPRESSLY ACKNOWLEDGE MSI'S SUBROGATION RIGHTS

58. As of the Petition Date, the Debtors owed Cathay approximately $6.3 million.

59. The Debtors expressly acknowledged in their Motion for Sale that MSI made all post-petition payments, allowing Debtors to proceed through Chapter 11 without excessive litigation.

60. On May 21, 2014, MSI filed its Subrogation Claim in the amount of $2,400,000 in each of the Debtors' cases.

61. The Debtors objected to MSI's Subrogation Claim on or about June 5, 2014.

## SALE OF DEBTORS' ASSETS TO BAYWA

62. As of June 2014, the Debtors reached an agreement for the sale of substantially all of their key assets with BayWa.

63. In exchange for the Debtors' assets, BayWa will pay a purchase price of $5,785,000, with an additional $1,800,000 to be delivered at closing and put into escrow upon the satisfaction by the Debtors of certain conditions related to the CBS projects.

64. The parties also modified the agreement to leave out certain excluded assets.

65. Following the sale, the Debtors intend to pay Cathay the outstanding loan amount owed to it in full, but bypass MSI's subrogation rights by insisting Cathay issue releases contemporaneously with the closing.

## DEBTORS' REFUSAL TO ACKNOWLEDGE MSI'S SUBROGATION RIGHTS IN THE SALE TO BAYWA

66. The Debtors now intend to sell their assets to BayWa, pay off the remainder of Cathay's loan, and obtain full releases from Cathay against all of Cathay's rights and claims against the Debtors, free and clear of MSI's subrogation rights.

67. The Debtors engineered a sale process to strip MSI of its subrogation rights in order to ensure the Debtors' carve-out gets paid in full.

68. The Debtors seek to accomplish the sale of all assets and closing without paying MSI any amount of the sale proceeds.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

69. MSI repeats and realleges the foregoing paragraphs of its Complaint as though fully set forth herein.

70. An actual justiciable controversy exists between MSI and the Debtors concerning MSI's subrogation rights as a secured creditor against the Debtors within the meaning of 28 U.S.C. §2201.

71. MSI has a specific right of subrogation for all amounts paid directly to Cathay on behalf of the Debtors.

72. A judicial determination is necessary and appropriate to resolve the conflicting claims and positions of the parties.

73. MSI is entitled to a declaratory judgment that it possesses the legal right to subrogation under 28 U.S.C. § 509 and Cal. Civ. Code §2847-2849 respectively.

74. MSI is entitled to a declaratory judgment that it possesses the legal right to subrogation under the doctrine of equitable subrogation.

75. MSI provided the Debtors with emergency monetary advances up to an aggregate of $5,000,000.

76. MSI seeks a Declaration from this Court that it is subrogated to all rights, liens, claims, and liabilities held by Cathay whom it paid on behalf of Debtors pursuant to 28 U.S.C. § 509 and Cal. Civ. Code §2847-2849 and the doctrine of equitable subrogation respectively.

## **SECOND CLAIM FOR RELIEF**
### **(Preliminary and Permanent Injunctive Relief)**

77. MSI repeats and realleges the foregoing paragraphs of its Complaint as though fully set forth herein.

78. MSI is entitled to injunctive relief to maintain the status quo.

79. Save the payment of Cathay in full, MSI is entitled to enjoin the distributions from the sale of all the Debtors' assets, free and clear of all Cathay's liens, claims, and

encumbrances, until such time that the Court may adjudicate whether MSI's subrogation rights are preserved.

80. The release of all liens and claims from Cathay to Debtors following the sale of all assets to BayWa will terminate MSI's right to subrogation.

81. MSI has a probability of success on the merits because it holds the right to subrogation pursuant to 28 U.S.C. § 509 and Cal. Civ. Code §2847-2849 and the doctrine of equitable subrogation respectively.

82. MSI will suffer irreparable harm upon the release of all liens and claims from Cathay to Debtors following the sale of all assets to BayWa because MSI will lose its subrogation rights.

83. The balance of hardships tips in favor of MSI because Debtors will receive a windfall if injunctive relief is not granted while MSI will lose all subrogation rights despite assuming all of Debtors' liabilities to Cathay.

84. The public interest favors an injunction and successful, equitable reorganizations.

85. MSI is entitled to a temporary and permanent restraining order enjoining the distributions from the sale of all the Debtors' assets, free and clear of all Cathay's liens, claims, and encumbrances, until such time that the Court may adjudicate whether MSI's subrogation rights are preserved.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

86. MSI repeats and realleges the foregoing paragraphs of its Complaint as though fully set forth herein.

13

87. MSI conferred a benefit upon Debtors by performing in furtherance of the Agreement.

88. While enjoying the benefits of MSI's post-petition payments to Cathay and DIP financing, Debtors now seek to thwart MSI's subrogation rights.

89. To the extent that the Debtors enjoyed the benefits of MSI's post-petition payments to Cathay and DIP financing, the Debtors have been unjustly enriched.

90. As a direct and proximate result of Debtors' unjust enrichment, MSI has suffered damages.

## **PRAYER**

WHEREFORE, the Debtor respectfully requests judgment from the Court as follows:

1. For declaratory relief as requested;

2. For temporary and permanent injunctions;

3. For reasonable attorneys' fees and costs; and

4. Any other relief that the Court deems just and proper.

Dated: June 18, 2014

/s/ Samuel A. Schwartz, Esq.
Samuel A. Schwartz, Esq.,
Nevada Bar No. 10985
Brian Blankenship, Esq.,
Nevada Bar No. 11522
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for Martifer Solar, Inc.